**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  06-cv-___

**CROCS, INC**.

Plaintiff,

v.

**ACME EX-IM, INC**.
**AUSTRALIA UNLIMITED, INC.**
**CHENG'S ENTERPRISES, INC.**
**COLLECTIVE LICENSING INTERNATIONAL, LLC**
**D. MYERS & SONS, INC.**
**DOUBLE DIAMOND DISTRIBUTION, LTD.,**
**EFFERVESCENT, INC.,**
**GEN-X SPORTS, INC.**
**HOLEY SOLES HOLDINGS, LTD.**
**INTER-PACIFIC TRADING CORPORATION**
**SHAKA HOLDINGS, INC.**
**DOES 1-10**

Defendants,

---

**COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT
AND UNFAIR COMPETITION**

---

Plaintiff, Crocs, Inc., through its undersigned counsel at Faegre & Benson, LLP, states

the following Complaint against Defendants Acme EX-IM, Australia Unlimited, Inc., Cheng's

Enterprises, Inc., Collective Licensing International, LLC, D. Myers & Sons, Inc., Double

Diamond Distribution, Ltd., Effervescent, Inc., Gen-X Sports, Inc., Holey Soles Holdings, Ltd.,

Inter-Pacific Trading Corporation, Shaka Holdings, Inc., and DOE companies 1 through 10,

collectively "Defendants," as follows:

## THE PARTIES

1.     Crocs, Inc. ("Crocs") is a Delaware corporation having its principal place of

business at 6273 Monarch Park Place, Niwot, Colorado 80503.

2. On information and belief, Acme EX-IM a Hawaii corporation, with its principal place of business at 501 Sumner Street, Suite 613, Honolulu, Hawaii 96827.

3. On information and belief, Australia Unlimited, Inc. ("Australia Unlimited") is a Washington corporation with its principal place of business at 2638 E. Marginal Way, S. Seattle, Washington 98134.

4. On information and belief, Cheng's Enterprises, Inc. ("Cheng's"), is a New Jersey corporation with its principal place of business at 68 Broad Street, Carlstadt, New Jersey 07072.

5. On information and belief, Collective Licensing International, LLC ("Collective Licensing") is a Colorado limited liability company with its principal place of business at 800 Englewood Parkway, Englewood, Colorado 80110.

6. On information and belief, D. Myers & Sons, Inc. ("D. Myers"), is a Maryland corporation with its principal place of business at 2020 Sherwood Avenue, Baltimore, Maryland 21218.

7. On information and belief Double Diamond Distribution, Ltd., ("DDD") is a Canadian corporation with is principal place of business at 3715A Thatcher Avenue, Saskatoon, SK, Canada S7R 1B8.

8. On information and belief, Effervescent, Inc. ("Effervescent") is a Delaware corporation with its principal place of business at 24 Scott Road, Fitchburg, Massachusetts 01420.

9. On information and belief, Gen-X Sports, Inc. ("Gen-X"), is a Delaware corporation with its principal place of business at 25 Vanley Crescent, Toronto, Canada M3J 2B7.

10.     On information and belief, Holey Soles Holdings, Ltd. ("Holey Soles"), is a Canadian federally incorporated company which is provincially registered in British Columbia. Holey Soles' principal place of business is 1628 West 75th Avenue, Vancouver, Canada V6P 6G2.

11.     On information and belief, Inter-Pacific Trading Corporation ("Inter-Pacific") is a California corporation with its principal place of business at 2257 Colby Avenue, Los Angeles, California 90064.

12.     On information and belief, Shaka Holdings, Inc. ("Shaka") is a Hawaii corporation with its principal place of business at 77-6360 Halewai Place, Kailua Kona, Hawaii 96704.

13.     On information and belief, DOES are other manufacturers, corporate entities, sellers or importers whose identity Crocs has not yet ascertained.  Crocs is working with diligence to identify DOES 1 through 10 and intends to add them as Defendants as soon as possible.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 1367.  This case presents federal questions arising under the Patent Act , 35 U.S.C. §§ 1, et seq. and under the Lanham Act, 15 U.S.C. § 1051, et seq.

15.     On information and belief, Defendants knowingly and purposefully import infringing products, as described below, that are distributed throughout the United States, including into the State of Colorado.

-3-

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d) and 28 U.S.C. § 1400(b).

## GENERAL ALLEGATIONS

17.     Crocs is a rapidly growing designer, manufacturer and marketer of Crocs-branded footwear for men, women and children, which incorporate Crocs's proprietary closed-cell resin material, Croslite$^{TM}$ – a substantial innovation in footwear comfort and functionality.  This proprietary material enables Crocs to produce soft and lightweight, non-marking, slip and odor-resistant shoes, which are ideal for casual wear and recreational uses such as boating, hiking, fishing and gardening.  Currently, Crocs offers 11 different models in up to 18 colors.  Crocs expects to offer 20 different models by the end of the year.

18.     Crocs was formed in July 2002, when its founders decided to market an innovative shoe developed and manufactured by Foam Creations, Inc.  In November 2002, Crocs introduced its first model, originally intended as a boating or outdoor shoe; however, by 2003, Crocs brand footwear were universally accepted as all purpose footwear for comfort and fashion.  In 2003-2004, Crocs expanded its product line, acquired Foam Creations, and added warehouses and shipping programs for speedy assembly and delivery.

19.     Crocs's footwear is sold through a wide range of distribution channels, including department stores, specialty footwear stores, sporting good and outdoor retailers.  Crocs brand footwear are also sold through a variety of specialty channels, including gift shops, uniform suppliers, independent bicycle dealers, specialty food retailers, and health and beauty stores.  Crocs distributes its products through over 6,500 store locations domestically and in over 40

countries worldwide.  In addition, Crocs sells its footwear through its websites, www.crocs.com and www.crocsrx.com, and in kiosks in shopping malls throughout the country.

20.     In the past three years, Crocs's sales have increased dramatically.  Crocs recorded $1.2 million in revenues in 2003, which grew to $13.5 million in 2004.  In 2005, Crocs recorded over $108 million in revenues from sales of its footwear.

## CROCS'S PATENT AND TRADE DRESS

### THE '858 PATENT

21.     On February 7, 2006, the U.S. Patent and Trademark Office duly, properly and legally issued U.S. Patent No. 6,993,858 B2, entitled "Breathable Footwear Pieces," with Crocs as the assignee.  A copy of the '858 Patent is submitted with this Complaint as Exhibit 1.

22.     The '858 Patent claims various footwear pieces.  The claimed invention consists of comfortable footwear that is compatible with various work environments, such as a hospital setting, which may require secure and waterproof footwear.  In some cases, the footwear pieces are molded from a lofted material.  In some embodiments, the shoes also include liquid conductors formed around ventilators or openings that disperse liquids away from the individual's feet.  The '858 discloses several embodiments of the claimed invention, including models that contain liquid conductors on the upper portion of the base section, and others that include a solid base section to protect the feet from direct contact with spilled liquids, for example.  Other embodiments include models with an adjustable strap and/or open-toe.

23.     The '858 Patent contains two independent claims.  Claim 1 recites a footwear piece comprising a base section that is formed as a single part manufactured from a moldable foam material; a pivoting strap section formed of moldable foam material that is attached to opposite ends of the upper base section and is held in place by frictional forces at the contact

points; an open rear region; and an upper region that forms a toe region which follows the contour of a human foot.  Claim 2 additionally claims a decorative pattern of bumps in the upper opening perimeter; a plurality of ventilators in the substantially vertical and horizontal portions; and a sole that includes tread patterns and a foot base including a raised pattern.

## THE '789 PATENT

24.     On March 28, 2006, the U.S. Patent and Trademark Office duly, properly and legally issued U.S. Patent No. D 517,789, entitled "Footwear," with Crocs as the assignee.  A copy of the '789 Patent is submitted with this Complaint as Exhibit 2.

25.     The '789 Patent claims an ornamental design for footwear as shown and described in the following figures:



FIG.1

FIG.4

FIG.5

FIG.2

FIG.6

FIG.3

FIG.7

## CROCS'S TRADE DRESS

26.     Crocs's footwear, accessories, displays and associated marketing and sales materials share an overall unique look and feel that serves to identify Crocs, as their point of origin.   The "Crocs Trade Dress" consists of the image and overall appearance of Crocs-brand footwear.   In particular, Crocs shoes are typically characterized as colorful foam clogs with a sporty European design.   They have a distinctively quirky clog-like appearance, which could also be characterized as friendly, vibrant, fun and bubbly.   The distinctively gentle slope of the upper gives the shoe a unique, recognizable outline.

27.     In addition to its overall look and feel, the Crocs Trade Dress also includes one or more of the following specific elements:

(a)     A decorative strip or band along the upper opening perimeter, which may include a scallop pattern and/or raised bumps;

(b)     A strip along the vertical portion of the upper running between the points of attachment of the strap, the strip running along the forefoot and toe regions;

(c)     A lower strip paralleling the upper strip and separated from it by a line, the lower strip circumnavigating the entire shoe and gently rising toward the heel;

(d)     A distinctive tread pattern;

(e)     A distinctive pattern of holes on the horizontal portion of the upper;

(f)     A distinctive pattern of holes on the vertical portion of the upper;

(g)     A pattern of raised nubs in the footbed;

(h)     Characteristic black or black and white strap connectors;

(i)     A distinctive one-color design; and

(j)     A distinctive tread on the bottom of the shoe.



28.     The Crocs Trade Dress is non-functional and serves to distinguish Crocs's shoes from competitive products.  The Crocs Trade Dress is ornamental and has no utilitarian advantage.  Furthermore, the virtually infinite number of different footwear styles in existence today and throughout the past, evidence the unique nature of the Crocs Trade Dress and demonstrate that other styles are available to competing footwear manufacturers.

29.     Crocs intentionally created its trade dress to distinguish its footwear from any other footwear and to indicate Crocs as its sole point of origin.  In fact, the Crocs Trade Dress plays a central role in Crocs's business strategy; its prospectus affirmatively states that  "[w]e seek to differentiate the crocs brand and our product offerings by focusing on several core strategies. Our principal strategies are to: [1] *Continue to highlight the unique characteristics of* **crocs** *footwear.* . . .  [W]e believe our fun styles are an important element of our products and our brand image."  On information and belief, no other manufacturer had used the Crocs Trade Dress prior to its introduction into and success in the market by Crocs.

30.     As mentioned above, Crocs sells its footwear through a wide range of distribution channels, including specialty stores such as Barnes & Noble, sporting good and outdoor retailers such as REI, department stores such as Dillard's, Nordstrom and e-tail or catalog sources such as Bloomingdale's.  Crocs are also sold through a variety of specialty channels, including gift shops, uniform suppliers, independent bicycle dealers, specialty food retailers, and health and beauty stores.  Crocs distributes its products through over 6,500 store locations domestically, and in over 40 countries worldwide.  In addition, Crocs sells its footwear through its website and in kiosks in shopping malls throughout the United States.  Crocs's sales and marketing efforts center around the presentation of its footwear products whose unique appearance showcases the Crocs brand and Crocs Trade Dress.

31.     Last year alone Crocs sold over six million pairs of footwear amounting to $108 million in sales worldwide.  Crocs also spent nearly $250,000 directly on promotion of the Crocs Trade Dress and over $1.8 million on total marketing.  This dramatic increase over previous years evidences the popularity and appeal enjoyed by Crocs's footwear.

32.     Crocs was recently recognized as "Brand of the Year" by *Footwear News*, a leading industry publication.  Crocs was also awarded the 2005 "Item of the Year" by *Footwear Plus* magazine, which called Crocs brand footwear the "'It' item of 2005."  Also in 2005, Crocs won the "IQ Award" from the Boulder County Business Report, which seeks truly innovative products.

33.     Due to the inherent distinctiveness of the Crocs Trade Dress, as well as the extensive sales, advertising and promotion making use of it, Crocs's footwear has become well known throughout the United States as originating from Crocs.

34.     The widespread and unauthorized imitation of the Crocs Trade Dress by the proposed defendants in order to trade on Crocs's goodwill and success, as well as the resulting high volume of infringing sales, are also strong evidence that the Crocs Trade Dress has acquired secondary meaning.

## DEFENDANT'S INFRINGING ACTIVITIES

**DEFENDANT ACME EX-IM, INC.**

35.     On information and belief, Acme EX-IM imports, exports and distributes footwear, including the Pali Clogs, throughout the United States.

36.     On information and belief, Pali Clogs are manufactured in Taiwan and imported for sale in the U.S.

37.     Acme EX-IM's Pali Clogs infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT AUSTRALIA UNLIMITED, INC.**

38.     On information and belief, Australia Unlimited is the manufacturer and distributor of NothinZ brand shoes, including the NothinZ clogs.

39.     On information and belief, the NothinZ clogs are manufactured in China and sold throughout the world, including in the United States.

40.     On information and belief, NothinZ shoes are sold through its website, www.nothinz.com, which provides a link to "authorized online dealers," www.slipperstore.com and www.ShoeBuy.com.

41.     Australia Unlimited's footwear infringes claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT CHENG'S ENTERPRISES INC.**

42.     On information and belief, Cheng's imports, exports and distributes footwear under the name Easy USA, including the Eva Clogs and/or Easy Clogs, throughout the United States.

43.     On information and belief, Eva Clogs and/or Easy Clogs are manufactured in China and imported for sale in the U.S.

44.     Cheng's Eva Clogs and/or Easy Clogs infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT COLLECTIVE LICENSING INTERNATIONAL, LLC**

45.     On information and belief, Collective Licensing manufactures, imports and distributes footwear, including the Airwalk shoes, throughout the United States.

46.     On information and belief, Airwalk shoes are manufactured in China and imported for sale in the U.S.

47.     Collective Licensing's Airwalk shoes infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT D. MYERS & SONS, INC.**

48.     On information and belief, D. Myers imports and distributes footwear, including the Gators footwear and Veg footwear, throughout the United States.

49.     On information and belief, Gators footwear and Veg footwear are manufactured in China and imported for sale in the U.S.

50.     D. Myers' Gators footwear and Veg footwear infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

## DEFENDANT DOUBLE DIAMOND DISTRIBUTION LTD.

51.     On information and belief, DDD manufactures, distributes, markets and sells a line of footwear called Dawgs Clogs.

52.     On information and belief, Dawgs Clogs are manufactured in China and imported for sale into the U.S.  On information and belief, Dawgs Clogs can be purchased through its website, www.dawgsclogs.com.

53.     DDD's Dawgs Clogs footwear infringes claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

## DEFENDANT EFFERVESCENT INC.

54.     On information and belief, Effervescent manufactures, distributes, markets and sells a line of footwear called Waldies worldwide, including in the U.S.  On information and belief, Effervescent also sells its Waldies footwear through its website, www.waldies.net.

55.     On information and belief, Waldies footwear are manufactured in China and imported for sale in the U.S.

56.     Effervescent's Waldies footwear infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT GEN-X SPORTS INC.**

57.     On information and belief, Gen-X manufactures, distributes, and markets a line of sportswear, including its Komodo sandals.  On information and belief, Gen-X markets and sells its products worldwide, including in the U.S.

58.     On information and belief, Gen-X's line of Komodo sandals are manufactured in China and imported for sale in the U.S.

59.     Gen-X's footwear infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress

**DEFENDANT HOLEY SOLES HOLDINGS LTD.**

60.     On information and belief, Holey Soles is a developer, manufacturer, and distributor of injection molded footwear, including its Explorer model.

61.     On information and belief, Holey Soles footwear is manufactured in China. According to its website, www.holeysoles.com, "The original product that was available on the market was made by a Canadian manufacturer. . . . A few years ago, Holey Soles created their own models and started producing in China. We visit the factory regularly and are constantly improving our processes."

62.     On information and belief, Holey Soles sells its footwear throughout the world, including in the United States.   On information and belief, Holey Soles offers its footwear for sale through its website, www.holeysoles.com, where consumers can place an order via e-mail or phone.

63.     Holey Soles footwear infringes claims 1 and 2 of the '858 Patent , the '789 Patent and the Crocs Trade Dress.

**DEFENDANT INTER-PACIFIC TRADING CORPORATION**

64.     On information and belief, Inter-Pacific is the manufacturer and distributor of footwear, including its "Sunsurfer" models.

65.     On information and belief, Inter-Pacific's Sunsurfer shoes are manufactured in China and sold throughout the world, including in the United States.

66.     Inter-Pacific's footwear infringes claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANT SHAKA HOLDINGS, INC.**

67.     On information and belief, Shaka manufactures, distributes, markets and sells its line of footwear.

68.     On information and belief, Shaka shoes are manufactured in China and imported for sale in the U.S.  On information and belief, Shaka offers its footwear for sale through its website, www.shakashoes.com, where consumers can place an order via e-mail or phone.

69.     Shaka Shoes infringe claims 1 and 2 of the '858 Patent, the '789 Patent and the Crocs Trade Dress.

**DEFENDANTS DOES 1 THROUGH 10**

70.     In addition to the defendants named above, Crocs intends to name as defendants the manufacturers of certain other footwear which Crocs has purchased in the United States when the identity of those manufacturers becomes known.

71.     Crocs has purchased footwear sold at Wal-Mart under the name No Boundaries or NoBo (the "NoBo footwear") in the U.S.  On information and belief, the NoBo footwear is manufactured in China and imported for sale in the U.S.

72.     The NoBo footwear infringes claims 1 and 2 of the '858 patent, the '789 patent and the Crocs Trade Dress.

73.     Crocs purchased footwear sold at Sears and Famous Footwear under the name Bare Traps (the "Bare Traps" footwear) in the U.S.  On information and belief, the Bare Traps footwear is manufactured in China and imported for sale in the U.S.

74.     The Bare Traps footwear infringes claims 1 and 2 of the '858 patent, the '789 patent and the Crocs Trade Dress.

75.     Crocs purchased footwear sold at Shoe Carnival under the name Aqua Ducks (the "Aqua Ducks" footwear) in the U.S.  On information and belief, the Aqua Ducks footwear is manufactured in China and imported for sale in the U.S.

76.     The Aqua Ducks footwear infringes the '789 patent and the Crocs Trade Dress.

77.     Crocs purchased footwear sold at K-Mart under the name Sohos (the "Soho" footwear) in the U.S.  On information and belief, the Soho footwear is manufactured in China and imported for sale in the U.S.

78.     The Soho footwear infringes the '789 patent and the Crocs Trade Dress.

79.     Crocs purchased footwear sold at Walgreens under the name SCOGS (the "SCOGS footwear") in the U.S.

80.     The SCOGS footwear infringes claims 1 and 2 of the '858 patent, the '789 patent and the Crocs Trade Dress.

81.     Crocs purchased footwear sold at Peak Concepts at the Denver International Airport under no particular name in the U.S. (the "DIA footwear").  On information and belief, the DIA footwear is manufactured in China and imported for sale in the U.S.

82.     The DIA footwear infringes the '789 patent and the Crocs Trade Dress.

83.     In addition to the unnamed manufacturers referenced above, Crocs intends to name as defendants the manufacturers of certain other foam-clog footwear, who distribute their footwear throughout the United States, when the identity of those manufacturers becomes known.


<u>COUNT I</u>

**INFRINGEMENT OF THE '858 PATENT**

84.     Crocs hereby incorporates by reference the foregoing paragraphs.

85.     Defendants infringe claims 1 and 2 of the '858 Patent with certain products manufactured, offered for sale, or sold within the United States, or imported into the United States, including but not limited to: Acme EX-IM's Pali Clogs, Australia Unlimited's NothinZ, Inter-Pacific's Sunsurfer®, Holey Soles's Explorer, Effervescent's Waldies, D. Myers & Sons's Gators and Veg, Gen-X Sports's Komodos, Collective Licensing's Airwalk shoes, Cheng's Eva Clogs and/or Easy Clogs, Shaka Shoes by Shaka, and DDD's Dawgs Clogs.  In addition, the NoBo, Bare Traps, and SCOGS footwear also infringe claims 1 and 2 of the '858 patent.

86.     Defendants' patent infringement is willful, in bad faith and continuing, and Plaintiff has no adequate remedy at law for such infringement.

## COUNT II

### INFRINGEMENT OF THE '789 PATENT

87.      Crocs hereby incorporates by reference the foregoing paragraphs.

88.      Defendants infringe the '789 Patent with certain products manufactured, offered for sale, or sold within the United States, or imported into the United States, including but not limited to: Acme EX-IM's Pali Clogs, Australia Unlimited's NothinZ, Inter-Pacific's Sunsurfer®, Holey Soles's Explorer, Effervescent's Waldies, D. Myers & Sons's Gators and Veg, Gen-X Sports's Komodos, Collective Licensing's Airwalk shoes, Cheng's Eva Clogs and/or Easy Clogs, Shaka Shoes by Shaka, and DDD's Dawgs Clogs.  In addition, the NoBo, Bare Traps, Soho, SCOGS, and DIA footwear also infringe the '789 patent.

89.      Defendants' patent infringement is willful, in bad faith and continuing, and Plaintiff has no adequate remedy at law for such infringement.

## COUNT III

### TRADE DRESS INFRINGEMENT

90.      Crocs hereby incorporates by reference the foregoing paragraphs.

91.      Defendants market, import and/or sell footwear that infringes the Crocs Trade Dress under the names:  Pali Clogs by Acme EX-IM; NothinZ footwear by Australia Unlimited; Sunsurfer footwear by Inter-Pacific; Gators and Veg footwear by D. Myers; Waldies by Effervescent; Explorer footwear by Holey Soles; Komodo footwear by Gen-X; Airwalk footwear by Collective Licensing; Cheng's Easy Clogs and/or Eva Clogs; Shaka Shoes by Shaka; and Dawgs Clogs by DDD.  Additionally, the NoBo,  Bear Traps, Aqua Ducks, Soho, SCOGS, and DIA footwear also infringe the Crocs Trade Dress.  In addition, with respect to the Doe

Companies' NoBo, Soho, and Bare Traps footwear, their intentional copying is further evidenced by insufficient and trivial efforts to design around Crocs's patents by implementing superficial and crude post-design modifications.

92.     Defendants' footwear, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such footwear with Crocs Trade Dress, or as to the origin, sponsorship, or approval of Defendants' footwear by Crocs in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

93.     On information and belief, Defendants copied the Crocs Trade Dress with the intent to trade on the goodwill developed by Crocs in establishing the Crocs Trade Dress. Defendants' intentional copying is further evidenced by the degree of similarity between the products. Furthermore, with respect to defendants D. Meyers and Gen-X, their intentional copying is further evidenced by their use of confusingly similar designations (*e.g.*, Gators and Komodos) and D. Meyers' attempt to sell multiple products from Crocs's products line. Intentional copying by Shaka Shoes is also evidenced by attempts to pass off their products as Crocs through the use of the Crocs name on their website.

94.     Crocs has not authorized, licensed or otherwise permitted Defendants to use the Crocs Trade Dress. Therefore, Defendants' unfair acts were committed in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

95.     Because the Defendants' imitation footwear are confusingly similar to the Crocs Trade Dress, they are likely to cause consumer confusion. Such consumer confusion has threatened and caused, and will continue to threaten and cause, substantial injury to Crocs.

## COUNT IV

### VIOLATION OF COLORADO CONSUMER PROTECTION ACT

96.     Crocs hereby incorporates by reference the foregoing paragraphs.

97.     Defendants have displayed, distributed, sold and use merchandise that that infringes the Crocs Trade Dress and constitutes a false representation of origin, sponsorship or affiliation.  Such conduct constitutes deceptive trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 et. seq.

98.     Defendants' deceptive trade practices occurred in the course of Defendants' business.

99.     Defendants' deceptive trade practices significantly impacted on actual and potential consumers of the Defendants' goods.

100.     Defendants have engaged in these deceptive trade practices willfully and with a bad faith intent to injure Crocs.

101.     Crocs has sustained, and will continue to sustain, substantial injuries, loss and damage to its business by reason of the deceptive trade practices of Defendants.

102.     On information and belief, unless restrained and enjoined, Defendants will continue to engage in prohibited deceptive trade practices that injure Crocs and thereby cause irreparable damage to Crocs, as it would be unreasonably difficult to ascertain the amount of compensation which could afford Crocs adequate relief for such continuing infringement.  Crocs has no adequate remedy at law.

## COUNT V

### COMMON LAW UNFAIR COMPETITION

103.     Crocs hereby incorporates by reference the foregoing paragraphs.

104.    Defendants have displayed, distributed, sold and used merchandise that that infringes the Crocs Trade Dress, thereby taking advantage of the good will and business reputation of Crocs by unfair means.  These activities constitute unfair competition.

105.    Defendants have engaged in unfair competition willfully and with a bad faith intent to injure Crocs.

106.    Crocs has sustained, and will continue to sustain, substantial injuries, loss and damage to its business by reason of the unfair competition of Defendants.

107.    On information and belief, unless restrained and enjoined, Defendants will continue to engage in unfair competition that injures Crocs and thereby causes irreparable damage to Crocs, as it would be unreasonably difficult to ascertain the amount of compensation which could afford Crocs adequate relief for such continuing infringement.  Crocs has no adequate remedy at law.

## JURY DEMAND

Crocs demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Crocs requests that this Court enter judgment in its favor and for relief against Defendants, and each of them, as follows:

A.      That Defendants be immediately and preliminary enjoined from all further manufacturing, use, marketing, distribution, sale, offers to sell, and importation of any shoes that infringe the '858 Patent, the '789 Patent and/or the Crocs Trade Dress;

B.      That Crocs be awarded its actual damages in an amount according to proof;

C.     That Defendants' infringement and other wrongful acts herein alleged be determined deliberate, willful, and in conscious disregard of Crocs's rights pursuant to 15 U.S.C. §§ 1117 and 1125(a), 35 U.S.C. § 284 and at common law;

D.     That Defendants be required to account to Crocs for any and all gross and net sales, revenues, and profits received or derived by Defendants from the manufacture, marketing, sale, offering for sale, and/or distribution of products or services bearing or using any copy or colorable imitation of the Crocs Trade Dress;

E.     That Crocs be awarded Defendants' profits after an accounting;

F.     That as a result of Defendants' willful and malicious conduct, the Court award Crocs its actual damages resulting from Defendants' unfair competition;

G.     That Crocs be awarded treble or punitive damages, as applicable, against Defendants;

H.     That the Court award Crocs pre-judgment and post-judgment interest as allowed by law;

I.     That the Court enter a permanent injunction barring Defendants and their officers, employees, agents, representatives, successors, subsidiaries and affiliates from using or reproducing any copy or colorable imitation of the Crocs's Trade Dress and further directing that Defendants destroy all materials bearing or using any copy or colorable imitation of the Crocs's Trade Dress;

J.     That Crocs be awarded all of its litigation expenses, including without limitation, its reasonable attorney's fees and costs; and,

K.     That the Court order such other relief as it deems proper and just.

Dated:  April 3, 2006


                                               s/ Natalie Hanlon-Leh

Natalie Hanlon-Leh
Steven D. Zansberg
Matt Stump
FAEGRE & BENSON, LLP
D.C. Box 21
1700 Lincoln Street, Suite 3200
Denver, Colorado 80203
Telephone:  (303) 607-3500
Email:  NHanlon-Leh@faegre.com
        SZansberg@faegre.com
        MStump@faegre.com

Attorneys for Plaintiff
CROCS, INC.

DNVR1:60339266.05