IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00605-PAB-BNB

CROCS, INC.,

Plaintiff,

v.

CHENGS ENTERPRISES, INC. et al.,

Defendants.

---

**DEFENDANTS DOUBLE DIAMOND DISTRIBUTION, LTD., USA DAWGS, INC. AND EFFERVESCENT, INC'S MOTION TO STAY THE PROCEEDINGS PENDING *INTER PARTES* REEXAMINATIONS**

---

Double Diamond Distribution, Ltd. ("Double Diamond"), U.S.A. Dawgs, Inc. ("USA Dawgs") and Effervescent, Inc. ("Effervescent"), through counsel, hereby submit their motion to stay the proceedings pending *inter partes* reexamination of the patents-in-suit.

Pursuant to **D.C.COLO.LCivR 7.1(A)**, the undersigned has conferred with Counsel for Plaintiff by phone and email regarding this motion. Plaintiff objects to the requested relief.

## I.   INTRODUCTION

Defendant Double Diamond has filed a request for *inter partes* reexamination with the United States Patent and Trademark Office (USPTO) with respect to Crocs U.S. Patent No. 6,993,858 B2 ("the '858 patent"). The request was submitted on August 3, 2012, and has been issued Reexam Control Number 95/002,064 by the USPTO. Defendant USA Dawgs has filed a request for *inter partes* reexamination with the United States Patent and Trademark Office

(USPTO) with respect to Crocs U.S. Patent No. D 517, 789 ("the '789 patent"). The request was filed August 24, 2012 and has been issued Reexam Control Number 95/002,100.

All of the claims in this action relate to the '858 patent or the '789 patent.  The *inter partes* reexaminations will simplify, or outright resolve, the issues in this case.

Crocs will not be harmed by a stay allowing the USPTO to consider the highly relevant prior art that Double Diamond has identified.  Crocs has already been granted an exclusion order by the United States International Trade Commission (the "ITC") prohibiting any party from importing shoes that include those in dispute here.  None of the Defendants currently import or sell the accused infringing product in the United States.

Crocs did not disclose, and the USPTO did not consider, several prior art patents that disclose patentee's claims.  Indeed, the prosecution history of the patents-in-suit conspicuously lacks any mention of prior art known to the patentee, including the prior existence and sale of the clog shoe designed by Ettore Battiston from which the entire patented design was copied (with the mere addition of a common pivoting strap), or the prior sales of the Aqua Clog, which, minus a heel strap, is the very same shoe that Crocs claims to have invented several years later. Combined with other art that was previously not considered, the USPTO will undoubtedly look closely at the patentee's claims.  Since the *inter partes* reexamination requests covers both the '858 patent, as well as the '789 patent, such a reexamination will simplify issues in this case, if not eliminate the case completely.

In 2006, this case was administratively closed when Crocs decided to pursue its rights at the ITC instead of this Court. The case has only recently been re-opened.  No discovery has commenced and no substantive motion practice has occurred. A stay of proceedings at this

juncture to permit the USPTO to reconsider the validity of the patent claims in light of the prior art is in the best interest of the Court and the parties. At a minimum, Defendants request that the Court stay this litigation at least until such time as the USPTO has had a chance to consider and either accept or deny the pending requests for reexamination.

## II.     PROCEDURAL BACKGROUND

### A.     The Filing and Reopening of the Present Action.

On April 3, 2006, Plaintiff Crocs, Inc. ("Crocs") brought this action against Defendants Double Diamond Distribution, Ltd., Effervescent, Inc. and other defendants, alleging infringement of the patents-in-suit.  On May 16, 2006, at Crocs request, the Court administratively closed the instant case due to the pendency of an investigation before the ITC, under Section 337 of the Tariff Act of 1930.

On July 15, 2011, the ITC issued a Final Commission Determination including a general exclusion order and a cease and desist order.  On April 27, 2012, Crocs filed a Motion to Lift Stay and Transfer Record in the case at bar.  The Court granted that motion on May 9, 2012.

On August 6, 2012, this court granted Crocs' motion to amend its complaint to add USA Dawgs, Inc. as a defendant.  USA Dawgs has timely filed its answer, affirmative defenses and counterclaims contemporaneously with this motion.

### B.     The ITC Determination does not preclude invalidity defenses to  the patent-related claims or issues in this case.

The United States district courts have original and exclusive jurisdiction over patent infringement cases. 28 U.S.C. §1338(a).  While the ITC has been granted certain powers over import trade (which necessarily implicated patent issues in some cases), the jurisdiction is limited, and excludes, among others, the power to award damages for infringement.  Hence, "…

the ITC's determinations regarding patent issues should be given no *res judicata* or collateral estoppel effect." *Texas Instruments, Inc. v United States Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988)(quoted in *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996)). See also, *Corning Glass Works v. United States Int'l Trade Comm'n*, 79 F.2d 1559, 1570 n.12 (Fed Cir. 1986)(stating that the legislative history of the Trade Reform Act of 1974 supports the determination that ITC decisions on patent matters lack preclusive effect).  While a district court may not ignore precedent from the Federal Circuit, "ITC decisions are not binding on district courts in subsequent cases brought before them." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-69 (Fed. Cir. 1996).  Moreover, appellate treatment of ITC decisions by the Federal Circuit also lacks preclusive effect.  *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987)("[O]ur appellate treatment of decisions of the Commission does not estop fresh consideration by other tribunals.").  While such findings have persuasive value, they do not receive any deferential treatment nor do they have a preclusive effect on any findings and opinions rendered by this Court.  *Texas Instruments, Inc.*, 90 F.3d at 1568.

   **C.   Requests for *Inter partes* Reexamination.**

   Because Crocs was successful at obtaining a general exclusion order and a cease and desist order in July 2011, and this action was administratively closed, Double Diamond reasonably believed that Crocs had abandoned the instant litigation. Immediately upon understanding that Crocs intended to again pursue claims of infringement, Double Diamond evaluated the strengths and weaknesses of Crocs claims and undertook a prior art search with respect to the claims of the two patents-in-suit.  Double Diamond and USA Dawgs recently

located several pieces of prior art that invalidate Croc's claims and raise substantial new questions of patentability not considered during the original prosecution of the patents-in-suit and diligently drafted the *inter partes* reexamination petitions, which were filed August 3, 2012, and August 24, 2012 respectively. See Attached Exhibit "1" Double Diamond request for *inter partes* reexamination of Crocs '858 patent and, Exhibit "2" USA Dawgs request for *inter partes* reexamination of Crocs '789 patent.

### 1.    Summary of the *inter partes* reexamination procedure.

Any challenger may request an *inter partes* reexamination at any time during the enforceable life of the patent.  See 35 U.S.C. § 302.  The initial step in an *inter partes* reexamination is for the challenger to file a written request seeking such reexamination. *See* 35 U.S.C. § 311. Not later than three months after the filing of the request, the USPTO must determine whether to grant the request for reexamination. 35 U.S.C. § 312. Upon completion of the reexamination process, the USPTO will issue a certificate canceling any claim of the patent finally determined to be unpatentable, and confirming any claim of the patent determined to be patentable." 35 U.S.C. § 307(a).

In this case, therefore, the USPTO must decide Double Diamond's request to reexamine the '858 patent not later than November 3, 2012, and USA Dawgs request to reexamine the '789 patent not later than, November 24, 2012.  Recent statistics from the USPTO, however, suggest that the USPTO will issue an order accepting or denying the request for reexamination, on average, in approximately 60 days. Once accepted, the USPTO is required to reexamine with "special dispatch." *See* 35 U.S.C. § 305.

The likely result is that the request will be granted. In fact, since fiscal year 2000, when the USPTO began *inter partes* reexaminations, through June 30, 2012, the USPTO has granted 94% of the total requests.  Consistent with those historical statistics, the USPTO has also granted 94% of *inter partes* reexamination requests in fiscal year 2012, year to date.

*Inter partes* reexaminations also typically lead to cancellation or amendment of patent claims.  The most recent statistics show in *inter partes* reexaminations, 89% of all reexaminations result in cancelled or modified claims (42% cancelled or disclaimed all claims, 47% changed the claims, and only 11% confirmed all claims).

**2.      The new prior art cited in the reexamination requests.**

As more thoroughly set out in each of the reexamination requests, attached hereto as Exhibits "A" and "B", both of the claims of the '858 patent are invalid in view of the prior art, and the '789 patent is invalid in view of the prior art.  The reexamination requests identify seventeen primary and secondary references, that alone, or in combination, disclose all of the elements of the claimed invention.  The references identified are:

UK Patent Application GB 2,322,286 ("GB  '286")

UK Patent GB 1,166,585 ("GB '585")

IT Patent Number IT00245068 (PD98U000068; "IT' '068)

U.S. Patent Number 3,336,683 to Schellkopf ("Schellkopf '683")

U.S. Patent Number 3,570,147 to Chiu ("Chiu '147")

U.S. Patent Number 4,300,256 to Laganas ("Laganas '256)

U.S. Patent Number 4,327,503 to Johnson ("Johnson  '503)

U.S. Patent Number 6,115,941 to Ellis III ("Ellis  '941")

U.S. Patent Number 6,237,249 to Aguerre ("Aguerre '249")

U.S. Patent Number 4,476,600 to Seidel ("Seidel '600")

U.S. Patent Number D247,527 to Foldes ("Foldes '527")

U.S. Patent Number D364,728 to Nozu et al. ("Nozu '728 (Ex. 14)")

U.S. Patent Number D377,411 to Murray ("Murray '411  (Ex. 15)")

U.S. Patent Number D416,667 to Lamstein ("Lamstein '667")

Fotoshoe 30 Anno XXXIV N. 6 2002 Expo Riva Schuh #4 (Fotoshoe XXXIV)

Fotoshoe 30 Anno XXXII N. 10 2000 Silber (Fotoshoe XXXII)

Softmoc Sales Literature dated September 11, 2012 (Softmoc)

Considering the similarities between the asserted claims and the prior art presented in the reexamination request, it is highly likely that the USPTO will grant the request and ultimately reject the asserted claims. Accordingly, it would be duplicative and inefficient to proceed in this litigation when the *inter partes* reexamination requests relate to the entirety of the patents-in-suit, and the outcome of the reexamination will affect this case and must be used by the Court to properly construe the claims, if any claims survive.

## III.   THE COURT SHOULD STAY THIS LITIGATION PENDING *INTER PARTES* REEXAMINATION OF THE PATENTS-IN-SUIT.

### A.   Courts Apply a "Liberal Policy" of Granting Stays Pending Reexamination.

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citations omitted).  Courts generally recognize that "there is a liberal policy in favor of granting motions to stay proceedings pending the

outcome of USPTO reexamination proceedings." *Icon Health & Fitness, Inc. v. Park City Entertainment, Inc*., 2011 WL 5239733 (D. Utah, Nov. 1, 2011).

This Court has favored imposing a stay when a patent reexamination has been filed. Granting a motion to stay "is the norm in cases where a reexamination proceeding is pending in the USPTO. *Genetic Technologies Ltd. v. Agilent Technologies, Inc*., 2011 WL 5024839 (D. Colo. 2011) (*citing EdiSync Sys., Inc. v. Centra Software, Inc.,* 2009 WL 3698520 (D .Colo. 2009) (applying four-factor test and granting motion to stay pending outcome of patent reexamination proceedings)); *eSoft, Inc. v. Blue Coat Sys., Inc*., 505 F.Supp.2d 784 (D.Colo. 2007) (same); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc*.,2006 WL 1897165 (D.Colo. July 11, 2006) (same).

This Court has recognized that the USPTO patent reexamination process was intended to shift the burden of reexamination of patent validity from the courts to the USPTO. *eSoft*, at 786 (*citing Canady v. Erbe Elektromedizin GmbH*, 271 F.Supp.2d 64, 78 (D.D.C.2002)). Courts have observed that "the reexamination process was enacted by Congress to provide certainty in the validity of patent rights and to provide a faster, less expensive remedy than litigation when the validity of a patent is at issue." *Spectros Corp. v. Thermo Fisher Scientific, Inc.*, No. 09-1996, 2010 WL 338093, at *3 (N.D. Cal. Jan. 20,2010).

> **B.    All of the Relevant Factors Favor a Stay in This Case.**

In determining whether to grant a stay of proceedings pending reexamination, courts routinely consider four factors: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage

for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court. *eSoft, Inc. v. Blue Coat Systems, Inc.* 505 F.Supp.2d 784, at 787 (D. Colo. 2007) (*citing Broadcast Innovation*, 2006 WL 1897165 at *4); *Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.*, 2004 WL 422697, 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill. 2004); *Nexmed Holdings, Inc. v. Block Inv., Inc.*, 2006 WL 149044, at *1 (D. Utah Jan. 19, 2006). The Court in *eSoft* also noted that "Courts frequently collapse the first and fourth factors" issue simplification and reduction of burden. *See eSoft*, at 787.

   1.   **A stay will simplify the issues for trial and reduce the burden on the parties and the court.**

The first factor examines whether a stay will simplify the issues in question and trial of the case. The Federal Circuit has explained that a major "'purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).'" *Yodlee, Inc.,* 2009 WL 112857 at *5 (citations omitted) (citing *eSoft, Inc.*, 505 F. Supp. 2d at 787 (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983))).

As a result, even if the USPTO were to leave all claims of the '858 patent unchanged (an 11% likelihood according to recent statistics), a stay would be warranted because the Court would benefit from the USPTO's expert analysis of the claims and the prosecution history produced during the reexamination proceeding. The Court has recognized that:

> reexamination proceedings will eliminate, narrow, or clarify the disputed issues in [] litigation. Any claims that are cancelled during the reexamination will not need to be litigated and those claims that survive reexamination may be amended. A stay would

also prevent resources from being expended on invalid or amended claims.

*Icon Health & Fitness, Inc. v. Park City Entertainment, Inc.*, 2011 WL 5239733 (D. Utah 2011).

Here, *inter partes* reexamination requests have been submitted for both of the patents-in-suit, which will likely narrow or even eliminate the issues in this case. Also, significantly, by filing for *inter partes* reexamination, Double Diamond and USA Dawgs have each subjected themselves to the estoppel provided by 35 U.S.C. § 315(c) with respect to the issues raised before the USPTO:

> (c) CIVIL ACTION. A third-party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the *inter partes* reexamination proceedings. This subsection does not prevent the assertion of invalidity based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings.

Accordingly, the results of the reexamination proceedings are final and binding on Double Diamond and USA Dawgs with respect to these matters, and the reexamination, will, at a minimum, eliminate the need for proceedings involving invalidity based on prior art cited in the request.

Related to the first factor, the fourth factor evaluates whether the reexamination would reduce the burden of litigation on the parties and the court. If any of the claim from Crocs' '858 or '789 patents survive reexamination, then this Court will have an expert opinion supporting Crocs' claims. If on the other hand, reexamination leads to the cancellation or modification of either or both of the patents-in-suit, then Crocs' case, and the issues remaining for litigation will

be severely narrowed.  Moreover, a stay of the instant matter will preclude inefficiencies and the unnecessary time, expense and judicial resources that would be created by any potential inconsistencies between determinations by this court and the USPTO concerning the validity of the '858 patent or the '789 patent.  Thus, the first factor, issue clarification and simplification, and the fourth factor, reduction of burden of litigation for the parties and for the Court, weigh heavily in favor of deferral to the expertise of the USPTO and a stay of these proceedings.

> **2.    This case is in the earliest stage - discovery is not started and a trial date has not been set.**

The second factor examines the stage of the case. "Courts have recognized that 'there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination proceedings.'"  *Pool Cover Specialists Nat., Inc. v. Cover-Pools Inc.,* 2009 WL 2999036 (D. Utah 2009) (*quoting*, *ASCII Corp. v. STD Ent. USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D.Cal. 1994)).

Despite being originally filed in 2006, this action remains in its infancy. Crocs reopened this action in April, 2012.  Thereafter Crocs filed a motion to amend its complaint which was granted on August 6, 2012. USA Dawgs was served on August 15, 2012 and has made its first appearance in conjunction with the filing of this motion. No discovery has taken place. No other schedule or trial date has been set.

Accordingly, this factor strongly weighs in favor of a stay. *See*, e.g*., eSoft, Inc.* 505 F.Supp.2d at 784 (granting a stay even after discovery had been completed); *Broadcast Innovation, L.L.C. v. Charter Communication, Inc.*, 2006 WL 1897165 (D. Colo. 2006) (granting motion to stay when trial was less than three months away); *Middleton, Inc. v. Minn. Mining & Mfg. Co*., 2004 WL 198669, at *3 (S.D.Iowa 2004) (granting motion to stay when

litigation had been ongoing for over eight years, discovery was completed and the trial date was less than two months away).

### 3. A stay will not unduly prejudice or present a clear tactical disadvantage to Crocs.

The third factor examines whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. Crocs' ultimate recovery, should it prevail at the USPTO and in Court, will not be affected by a stay. Crocs already has the injunctive relief it seeks. Crocs is the beneficiary of an ITC injunctive exclusionary order and a cease and desist order preventing Double Diamond, USA Dawgs, Effervescent and any other party from importing the accused shoes into the United States.

In the unlikely event the USPTO does not cancel, or substantively change, the patents-in-suit, Crocs' sole remedy will be monetary damages for actions that are not ongoing. The determination of these damages is independent of the length of the litigation.

This case has already been administratively closed for almost six years at Crocs' strategic choice, since Crocs chose to pursue its claims in front of the International Trade Commission. At the first notion of continued litigation in this matter, Double Diamond and USA Dawgs diligently availed themselves of the option to seek reexamination of the patents-in-suit, and, by this motion, Defendants are simply requesting that the Court exercise its discretion to stay the pending litigation to enable the USPTO to complete its review of the '858 patent and the '789 patent, as Congress contemplated.

## IV. CONCLUSION

Reexamination will unquestionably narrow issues for trial, if not eliminate the need for trial completely. USPTO's reexamination will have a dramatic effect on the issues before the

Court, up to and including dismissal of the entire action if the patent claims are found to be invalid, or presenting a strong presumption of validity for any remaining claim. Regardless of whether claims are canceled, dismissed, amended or survive, the Court will benefit from the PTO's expertise and analysis.

Because of the strong likelihood of reexamination, and to avoid unnecessary, costly and wasteful pretrial proceedings, Defendants respectfully request the Court grant this Motion to Stay and administratively close the matter pending the finality of the *inter partes* reexamination. *Fusion Specialties, Inc. v. China Network Leader, Inc.*, 2012 WL 3289077 (D. Colo. 2012) (granting motion to stay and administratively closing case pending reexamination); D.C.COLO.LCivR 41.2 ("A district judge or a magistrate judge exercising consent jurisdiction may direct the clerk to close a civil action administratively subject to reopening for good cause.").

Respectfully submitted this 31st day of August, 2012.

LATHROP & GAGE LLP

By:  s/ Stephen Horace
Stephen Horace, Reg. No. 32961
950 17th Street, Suite 2400
Denver, Colorado  80202
Telephone:  (720) 931-3200
Facsimile: (720) 931-3201
e-mail: shorace@lathropgage.com
**ATTORNEYS FOR DEFENDANTS**
**DOUBLE DIAMOND DISTRIBUTION, LTD.,**
**AND USA DAWGS, INC. AND**
**EFFERVESCENT, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 31st day of August, 2012, I electronically filed a copy of the foregoing **DEFENDANT DOUBLE DIAMOND DISTRIBUTION, LTD., USA DAWGS, INC. AND EFFERVESCENT, INC. MOTION TO STAY THE PROCEEDINGS PENDING *INTER PARTES* REEXAMINATIONS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

> Jared Barrett Briant
> Natalie Marie Hanlon-Leh
> Faegre Baker Daniels LLP-Denver
> 1700 Lincoln Street
> Wells Fargo Center, #3200
> Denver, CO 80203-4532
> 303-607-3500
> jared.briant@faegrebd.com
> natalie.hanlonleh@faegrebd.com
>
> and
>
> Michael Anthony Berta
> George Robert Green
> Arnold & Porter, LLP-San Francisco
> One Embarcadero Center, 22nd Floor
> San Francisco, CA 94111
> 415-356-3000
> michael.berta@aporter.com
> george.green@aporter.com
>
> **Attorneys for Crocs, Inc.**
>
> *s/ Stephen J. Horace*