**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-00605-PAB-BNB

**CROCS, INC.,**

      Plaintiff,

v.

**CHENG'S ENTERPRISES, INC.,**
**EFFERVESCENT, INC.**
**HOLEY SOLES HOLDINGS, LTD.,**
**DOUBLE DIAMOND DISTRIBUTION, LTD.,**
**and U.S.A. DAWGS, INC.,**

      Defendants.

_____

**RESPONSE TO DEFENDANTS' MOTION TO STAY THE PROCEEDINGS**
**PENDING *INTER PARTES* REEXAMINATIONS**
_____

      Plaintiff Crocs, Inc. ("Crocs") respectfully submits this Response to Defendants Double Diamond Distribution, Ltd. ("Double Diamond"), U.S.A. Dawgs, Inc. ("USA Dawgs") and Effervescent, Inc.'s ("Effervescent") Motion To Stay The Proceedings Pending *Inter Partes* Reexaminations, ("Motion to Stay," Dkt. #118) and in support thereof states the following:

**I.      INTRODUCTION**

      At the eleventh hour, Defendants have sought an *inter partes* reexamination with the objective of again stalling this case and delaying (if not avoiding) having to compensate Crocs for selling footwear products that the Federal Circuit has determined infringe Crocs's valid and enforceable patents.

The United States Patent and Trademark Office's (the "Patent Office") track record indicates that the process of reexamining Crocs's patents may last for six years or more. This means that if the Court were to enter a stay, there could be a 12-year delay between the time Crocs filed this lawsuit and the Court's adjudication of the merits. Such an outcome would unquestionably result in substantial financial and evidentiary prejudice to Crocs and offer unfair tactical advantages to Defendants. By the time the reexamination runs its course, the chances of Crocs collecting any damages would likely be slim, as several of the Defendants could be judgment proof by then. At the very least, Crocs would not be able to seek default judgments for several years against Defendants no longer participating in this case. On top of this, once the case was reopened, Crocs would have the burden of locating documents and witnesses (to the extent possible) to support claims for injuries that occurred more than a decade before.

These hardships are not justified, particularly given that the Patent Office has already issued a decision that Defendants' request for a reexamination of claim 2 of Crocs's utility patent has no merit. Therefore, if nothing else, this case will go forward on the basis of Defendants' infringement of claim 2, and entering a stay will not preserve judicial resources or the parties' resources in any significant way. Entering a stay will also not meaningfully defray discovery costs because the lion's share of discovery has already been completed as part of the process before the International Trade Commission ("ITC"). The limited remaining discovery relates to Crocs's damages, and will need to be conducted regardless of the outcome of the reexamination. Furthermore, as reflected by the Patent Office's decision to decline to review claim 2 of Crocs's utility patent, the merits of Defendants' reexamination requests are suspect at best, so the outcome of the review is unlikely to dramatically change the issues in this case. The fact that

Defendants waited more than six years to seek a reexamination raises further doubts about the merits of their requests, and shows that Defendants' real objective is simply to push off having to compensate Crocs for their sales of infringing products.

On the whole, the harm to Crocs of entering a stay far outweighs any efficiencies that may stem from awaiting the results of the reexaminations, and the Court should therefore deny Defendants' Motion to Stay.

## II.      FACTUAL BACKGROUND

Crocs initiated this lawsuit on April 6, 2006.  On May 12, 2006, Defendants Holey Soles, Effervescent, Collective Licensing International, LLC, and Gen-X Sports, Inc. moved the Court to enter a stay pending the results of proceedings before the ITC relating to the patents-in-suit.[1] (Dkt. #s 26, 27, 28).  Pursuant to the mandatory stay requirements of 28 U.S.C. § 1659(a), a stay was granted during the pendency of the ITC proceedings, and the Court administratively closed the case on May 16, 2006.

ITC proceedings generally are targeted to conclude within 16-18 months of the initiation of an investigation.  The duration of Crocs's ITC investigation substantially exceeded the average length of an ITC investigation, in part because Crocs appealed portions of an initial determination from the ITC to the Federal Circuit.  On July 15, 2011, following the opinion by the Federal Circuit in *Crocs, Inc. v. United States Int'l Trade Comm'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010) upholding the validity of the patents-in-suit, the ITC issued a Final Commission Determination of Violation, finding that Double Diamond, Effervescent, and Holey Soles had

---

[1] Defendants falsely assert that the Court stayed the case at "Crocs [sic] request."  Motion to Stay at 3.

violated 19 U.S.C. § 1337.  Crocs then waited through both the required Presidential Review period following the ITC decision and the time period during which a party could appeal the determination following the review period, so that the matter would be "final" for purposes of lifting the mandatory stay of this matter.  Crocs then moved this Court to lift the stay.

On May 9, 2012, this Court granted Crocs's Motion to Lift Stay and Transfer Record, reactivating the case (Dkt. #75), and on August 6, 2012, this Court granted Crocs's motion for leave to file an amended complaint (Dkt. #103).

Double Diamond has been a party to this matter and the ITC Investigation since at least May 30, 2006.  *See* Double Diamond's Entry of Appearance dated 5/30/06 in Proceedings of the International Trade Commission Investigation No. 337-TA-567 submitted to this Court on 9/6/12 (Dkt. #122).  But it was not until August 3, 2012 that Double Diamond filed a request for reexamination of U.S. Patent No. 6,993,858 ("the '858 Patent").  Motion to Stay at 2.   USA Dawgs then requested a reexamination of U.S. Patent No. D 517,789 ("the '789 Patent") on August 24, 2012.  *Id.* at 3.

Defendants moved this Court to stay these proceedings pending the reexaminations on August 31, 2012,  roughly six years and five months after Crocs filed its lawsuit.  On September 14, 2012, the Patent Office declined to conduct a reexamination of claim 2 of the '858 Patent.  Decision On Request For *Inter Partes* Reexamination, attached as Exhibit 1.   As of this date, so far as Crocs knows, the Patent Office has not taken any action with respect to the '789 Patent.

**III. ARGUMENT**

Courts have broad discretion when considering whether or not to grant a stay pending resolution of a reexamination proceeding. *Broadcast Innovation, LLC v. Charter Comm., Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006). When addressing a motion to stay pending a reexamination, courts consider the following factors: (1) whether a stay will simplify the issues and streamline the trial; (2) whether discovery is complete and a trial date set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and court. *Edisync Systems, Inc. v. Centra Software, Inc.*, No. 03-cv-1587-WYD-MEH, 2009 WL 3698520, at *2 (D. Colo. Nov. 6, 2009); *see also eSoft, Inc. v. Blue Coast Systems, Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007) (noting that "[c]ourts frequently collapse the first and fourth factors"). But these factors are not exclusive, and no one factor is controlling; instead, courts look to the "totality of the circumstances" presented. *See Broadcast Innovation, LLC*, 2006 WL 1897165, at *4. The inquiry is fact specific. *See Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2009 WL 3673433, at *2 (E.D. Tex. April 3, 2009) (stating that courts "weigh the enumerated factors on a case-by-case basis").

This Court has observed that granting a motion to stay "is the norm in cases where a reexamination proceeding is pending in the United States Patent and Trademark Office ("USPTO")." *Genetic Technologies Ltd. v. Agilent Technologies, Inc.*, No. 11–cv–01389–WJM–KLM, 2011 WL 5024839, *4 (D. Colo. Oct. 20, 2011). However, a "court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. There is no

*per se* rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." *Largan Precision Co. Ltd v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 WL 794983, at *2 (N.D. Cal. March 1, 2011) (internal citation omitted); *see also Bartex Research LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Texas 2009) ("[L]itigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent − they may be concurrent proceedings.").

    A.    <u>Entering a Stay Will Not Materially Lessen the Burdens of Litigation and Is Unlikely to Simplify Issues for Trial</u>

Given that the Patent Office has concluded that there is no reason to review claim 2 of the '858 Patent, Ex. 1, the outcome of the reexamination will not render this Court's or the parties' continued work futile.  Even under an improbable "worst case" scenario for Crocs where the Patent Office ultimately rejects the claim under consideration (claim 1 of the '858 Patent), this case would still go forward on the basis of independent claim 2 of the '858 Patent.  The resource savings associated with a stay are therefore minimal, as the costs of trying this case on the basis of claim 2 of the '858 Patent alone or on the basis of both claims of the '858 Patent and the '789 Patent would likely be similar.   In circumstances like these where only some of the patent claims at issue in a litigation are subject to reexamination, courts have found that entering a stay is unlikely to lessen the burdens on the parties or the court.  *See Nat'l Products, Inc. v. Gamber-Johnson LLC*, No. 2:12-CV-00840, 2012 WL 3527938, at *3 (W.D. Wash. Aug. 14, 2012) (declining to grant a stay where the Patent Office had declined to review two of 35 patent claims, and noting that the purpose of granting a stay was seriously undermined because the parties would incur many of the same costs litigating the two claims not under review).

In addition, a stay offers little in the way of reducing discovery costs because much of the necessary discovery has already been conducted as part of the ITC proceedings.  Double Diamond has recognized as much, stating that "discovery might be substantially abbreviated [in this case] because of disclosures and discovery in the ITC matter."  Double Diamond's Status Report of 6/8/12 at ¶ 14 (Dkt. #86).  The wide-ranging discovery conducted during the ITC proceedings covered almost all of the issues conceivably relevant to this case, including infringement, questions of validity like obviousness and anticipation, and allegations of unenforceability and inequitable conduct.  *See* Proceedings of the International Trade Commission Investigation No. 337-TA-567 submitted to this Court on 9/6/12 (Dkt. #122).  The limited outstanding discovery mainly concerns Crocs's damages and Defendants' sales, and no matter the outcome of the reexamination, this damages discovery will be needed, even if just to address damages for infringement of claim 2 of the '858 Patent.  Given that much of the discovery is complete and what remains is independent of the reexamination, this factor favors denying entry of a stay.  *See, e.g., TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 177-78 (S.D.N.Y. 2009) (citing *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, No. 92 Civ. 0482 (RWS), 1994 WL 121673, at *3 n.2 (S.D.N.Y. Apr. 6, 1994)) (noting that "district courts commonly deny motions to stay pending patent reexamination in cases where substantial proceedings, including discovery, have occurred").

It is also unlikely that the results of the reexamination will meaningfully change the issues for trial.  Even a cursory review of Defendants' reexamination requests calls into question the likelihood that the Patent Office will ultimately require any amendment or rejection of Crocs's patents.  Specifically, as noted in the Patent Office's response to Defendants'

reexamination request, Exhibit 1, the only ground on which the Patent Office found a basis for reexamination of claim 1 of the '858 Patent is the supposed combination of the "Softmoc" with a strap from another reference ("Aguerre '249").  However, Double Diamond does not appear to have submitted to the Patent Office the Federal Circuit's decision in *Crocs v. United States Int'l Trade Comm'n*, which expressly finds that a combination using the very same "Aguerre" strap does not render claim 1 of the '858 patent obvious, because Aguerre in fact teaches away from the claimed invention.  598 F.3d 1294, 1310 (Fed. Cir. 2010).  Once the complete and accurate record is before it, the Patent Office is likely to come to the same result as the Federal Circuit and ultimately reject the same arguments that Double Diamond began making more than six years ago.

Putting aside the specifics of Defendants' reexamination requests, the simple fact that Defendants waited six years to seek a reexamination confirms that the purpose of their requested stay is purely tactical.  *See BarTex Research, LLC*, 611 F. Supp. 2d at 652 ("The potential for use of the reexamination process as a dilatory tactic must be considered.  Thus, this Court is hesitant to elevate this process—one that could take years—into a requisite procedure before a lawsuit may move forward."); *Affinity Labs of Texas v. Apple Inc.*, No. 09-04436 CW, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010) (holding that delays associated with a reexamination "must be considered in the context of the delay already present in this case" and that an approximately one-year delay between the filing of the district court action and the request for a stay, in addition to the delay of reexamination, "weigh[ed] heavily against granting the stay").  Indeed, under new provisions of the American Invents Act, 35 U.S.C. § 299 *et seq.*, implemented in September 2012, Defendants' last-minute reexamination request would be denied, as the

revised statute requires that petitions for *inter partes* review must be filed within one year of the date of service of a complaint alleging infringement.  *See* 35 U.S.C. § 315(b).

To support their Motion, Defendants offer little more than generalized arguments about efficiency and cite statistics regarding how often the Patent Office modifies or cancels claims during reexaminations.  This falls well short of showing that a stay is justified.  *See Roy G. Biv. Corp. v. Fanuc Ltd.*, No. 2:07-CV-418, 2009 WL 1080854, at *2 (E.D. Tex. April 14, 2009) ("[T]he requesting party must do more than merely proffer oft-cited reexamination statistics and generic judicial efficiency arguments.").  To begin with, the statistics Defendants cite essentially have no bearing on the probable outcome of the reexamination of Crocs's design patent (the '789 Patent).  The statistics are meaningless with respect to Crocs's design patent because only one percent of the requests for *inter partes* reexaminations since November 1999 have addressed design patents.  *See* USPTO, *Inter Partes Reexamination Filing Data*, 1 (June 30, 2012), http://www.uspto.gov/patents/stats//IP_quarterly_report_June_30_2012.pdf [hereinafter *Inter Partes Reexamination Filing Data* ]. With such a small sample size, the predictive value of these figures is negligible.

Even if the Patent Office were to confirm the claims of Crocs's patents following its review, Defendants maintain that a stay is appropriate because it would give the Court the benefit of the Patent Office's expert analysis.  Motion to Stay at 10.  Defendants fail to recognize that this Court already has the benefit of the detailed reviews of the ITC and the Federal Circuit, each of which has a wealth of experience addressing patents.  In fact, this Court must take into account the Federal Circuit's decision relating to the patents-in-suit.  *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) (holding that "[d]istrict

courts are not free to ignore holdings of this court that bear on cases before them"). In addition, the value of the Patent Office's technical expertise is less in this case, given that Crocs's patents are not overly technical or complex. The usefulness of input from the Patent Office on the design patent is particularly limited, as the standard to be applied during any review is the "ordinary observer test," which does not require substantial technical expertise. *See Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 11 CIV. 2930 LBS, 2012 WL 1066798, at *2 (S.D.N.Y. Mar. 24, 2012) ("[The] USPTO, while doubtlessly possessing great expertise—and particularly so in very technical cases—can provide no additional special guidance in the instant case [which involved a design patent]. The reason is clear. Under the 'ordinary observer' test for invalidity, 'the court compares the claim to the accused or allegedly anticipating article [asking whether] their resemblance is deceptive to the extent that it would induce an ordinary observer, *giving such attention as a purchaser usually gives*, to purchase an article having one design supposing it to be another.") (internal citation omitted)).

For the foregoing reasons, a stay would offer few benefits with respect to streamlining this case or reducing its burdens, and these factors therefore favor denying a stay.

B.    Only Limited, Discrete Discovery Remains to be Taken

Defendants quickly dispense with the second factor courts consider when evaluating requests for stays, which addresses how far the litigation has advanced, with a simple assertion that no discovery has been taken and no schedule or trial date has been set. Motion to Stay at 11. This cursory review overlooks the proceedings before the ITC, which form a critical part of this matter. When considering whether to grant a stay in cases where the dispute between the parties involves other proceedings beyond the case at bar, courts have considered the dispute as a whole,

10

rather than looking narrowly at only one aspect of the conflict.   *See Power Integrations Inc. v. Fairchild Semiconductor Intern. Inc.*, No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) (denying a stay where the parties had litigated a similar matter for approximately four years, and noting that "[w]hile discovery in the instant case is at its earliest stages, in the other case discovery has been completed, and it seems likely that much of that discovery will be useful here (perhaps reducing the need for extensive discovery)"); *Robbins v. H.H. Brown Shoe Co., Inc.*, No. 08 CIV. 6885 (WHP), 2009 WL 2170174, at *2 (S.D.N.Y. June 30, 2009) (denying a stay in part based on the consideration that the parties had litigated a number of issues in parallel litigation).

Accounting for the ITC proceedings makes it apparent that this dispute is actually far from just beginning.  As explained above, the ITC record eliminates the need for substantial additional discovery, as volumes of documents and testimony relevant to most of the key issues in the case are already available to the parties.  Therefore, despite the fact that the Court only reopened the matter in June, the overall dispute between the parties in many respects has advanced beyond its preliminary stages, and this factor therefore weighs against entering a stay.

C.  Staying the Case Will Likely Foreclose Crocs from Collecting Damages and Will Result in Substantial Evidentiary Prejudice to Crocs

The last factor courts consider when confronted with a request for a stay looks at whether the nonmoving party would be unduly prejudiced or whether the stay presents a tactical advantage to the moving party.  Both of those concerns apply here.  Entering a stay at this juncture in the case would undermine a principal purpose of reopening this case − collecting damages for Defendants' willful infringement − and would provide unfair strategic advantages to Defendants.  By statute, the Patent Office is supposed to conduct reexaminations with "special

dispatch," 35 U.S.C. § 305, but the truth is that the reexamination process drags on for many years.  The current average pendency of an *inter partes* reexamination from the time of filing until the Patent Office enters a certificate with its decision is slightly more than three years.  *See Inter Partes Reexamination Filing Data*.  The appellate process for reexaminations can extend the total duration of the proceedings to more than six years.  *ESN, LLC v. Cisco Sys. Inc.*, No. 5:08-CV-20, 2008 WL 6722763, at * 2-3 (E.D. Texas Nov. 20, 2008) (citing Roger Shang & Yar Chaikovsky, *Inter partes* Reexamination of Patents: An Empirical Evaluation, 15 Tex. Intell. Prop. L.J. 1, 16 (2006)).  Accordingly, should the Court grant Defendants' request for a stay, Crocs would likely be unable to obtain any type of monetary relief until 2018 − approximately 12 years after it first filed suit.  *See Nat'l Products, Inc.*, 2012 WL 3527938, at *1 (noting that "[s]everal courts have cited the long delays as a factor that weighed heavily in their decisions to reject motions to stay").

The financial prejudice to Crocs from such a delay would be enormous.  The stay would likely prevent Crocs from obtaining its damages, which were not and could not be awarded in the ITC proceedings, for half a dozen years or more.  And by that point, Crocs may not be able to collect any damages whatsoever, as the long-term viability of the Defendants is questionable. *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (denying a stay where defendants failed to respond to plaintiff's "most compelling showing of prejudice: as demonstrated by Defendants' responses to [plaintiff's] interrogatories, [defendants] may lack the resources to compensate [plaintiff] in the event of a finding of infringement").

Based on its experience with the Defendants in this case and in the proceedings before the ITC, Crocs has reason to believe that by the time the reexamination is done, many, if not all,

of the Defendants may be judgment proof.  Take Defendant Holey Soles.  It sold more than one hundred thousand pairs of infringing footwear prior to Crocs's initiation of this case, but has since sought shelter in bankruptcy proceedings in Canada, Transcript of Scheduling Conference of 9/6/12 at 2:18-20, which greatly compromises Crocs's ability to collect any damages. Defendant Effervescent appears to be on the same track.  Counsel for Effervescent has acknowledged that he will withdraw from his representation if the Court denies the Motion to Stay, Transcript of Scheduling Conference of 9/6/12 at 13:1-5, and there is no indication that Effervescent will obtain substitute counsel.  It appears therefore that Effervescent intends to hide behind the stay in order to delay entry of any default.  This is the exact type of gamesmanship that Courts have warned against.  *See BarTex Research*, 611 F. Supp. 2d at 652.  Double Diamond has taken a different approach, electing to spin off a new company, Defendant USA Dawgs, to handle infringing sales in the United States, *see* Response and Objection By Double Diamond Distribution, Ltd. to Crocs's Motion to Amend at 2 n.2, 5 (Dkt. #97) (acknowledging common ownership between the companies and the formation of USA Dawgs shortly after this case was stayed pending the ITC proceedings), and now maintains incorrectly that it is not subject to this Court's jurisdiction, *see* Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. #113).

A stay would also result in substantial evidentiary prejudice to Crocs.  Many of the events at issue in this case are now more than six years old, so there may already be challenges with respect to locating documents and obtaining witness testimony relating to Crocs's damages.  A stay would compound these difficulties.  If a stay were to delay resolution of this case for another six years, it could ultimately be impossible to track down documents and witnesses to address

sales of products that occurred more than a decade before.  *See BarTex Research, LLC*, 611 F.

Supp. 2d at 651-52 (finding that delay during reexamination may result in "loss of critical

evidence").

In the end, "[t]he principle that justice delayed is justice denied applies with full force" to

the case.  *ESN, LLC*, 2008 WL 6722763, at * 3 (quoting Perspectives on Patents: Post-Grant

Review Procedures and Other Litigation Reforms Before the S. Comm. on the Judiciary

Subcomm. on Intell. Prop., 109th Cong. (2006) (statement of Mr. Mark Chandler, Senior Vice

President and General Counsel, Cisco Systems, Inc.).

**IV.     CONCLUSION**

While granting a stay pending a patent reexamination may be appropriate in some

situations, that is not the case here.  Under these circumstances, a stay would likely have the

effect of allowing some or all of the Defendants to entirely escape having to pay damages for the

sale of footwear that the Federal Circuit has held infringe Crocs's patent rights.   If nothing else,

a stay would allow some Defendants to dodge default judgments, and would result in a

potentially decade-long delay in this Court's consideration of the merits.  By that time, Crocs

would have to use documents and testimony (to the extent they were still even available)

concerning incidents that occurred more than ten years before to prove its damages.

Defendants are seeking a stay because they recognize these tactical advantages and the

associated hardships on Crocs.  But they have not demonstrated that a stay is warranted.  Generic

arguments about improving efficiency and oft-cited statistics on the results of reexaminations do

not outweigh the clear prejudice to Crocs, particularly when the Patent Office has already denied

one of Defendants' reexamination requests.  Crocs therefore respectfully asks that this Court

deny Defendants' Motion to Stay so that this six-year-old case can proceed to the merits.


DATED: September 21, 2012.                    Respectfully submitted.



                                              /s/ George R. Green
                                              George R. Green
                                              ARNOLD & PORTER LLP
                                              370 Seventeenth Street, Suite 4400
                                              Denver, CO  80202-1370
                                              Telephone:  (303) 863-1000
                                              Facsimile:  (303) 832-0428
                                              george.green@aporter.com

                                              Michael A. Berta
                                              ARNOLD & PORTER LLP
                                              Three Embarcadero Center, Seventh Floor
                                              San Francisco, CA  94111
                                              Telephone:  (415) 471-3277
                                              Facsimile:  (415) 471-3400
                                              michael.berta@aporter.com


                                              *Attorneys for Crocs, Inc., Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 21st day of September, 2012, the foregoing **RESPONSE TO DEFENDANTS' MOTION TO STAY THE PROCEEDINGS PENDING *INTER PARTES* REEXAMINATIONS** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Linda J. Teater

16