IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00605-PAB-BNB

**CROCS, INC.,**

    Plaintiff,

v.

**CHENG'S ENTERPRISES, INC.;
EFFERVESCENT, INC.;
HOLEY SOLES HOLDINGS, LTD.;
DOUBLE DIAMOND DISTRIBUTION, LTD.;
and U.S.A. DAWGS, INC.,**

    Defendants.

---

**DEFENDANTS REPLY IN SUPPORT OF THEIR MOTION TO STAY PENDING
INTER PARTES REEXAMINATION**

---

Defendant Double Diamond Distribution, Ltd. ("Double Diamond"), U.S.A. Dawgs, Inc. ("USA Dawgs") and Effervescent, Inc. "("Effervescent"), through undersigned counsel, submit the following Reply in support of their Motion to Stay pending *Inter Partes* Reexaminations:

**INTRODUCTION**

The United States Patent and Trademark Office ("PTO") has granted Defendants' request for reexamination of Crocs' U.S. Patent No. 6,993,858 ("the '858 Patent") finding that a substantial question of patentability exists and rejected one of two claims.[1]  Defendants anticipate that the PTO will similarly review Crocs' U.S. Patent No. D 517,789 ("the '789 Patent") and conclude that a substantial question of patentability exists in light of the prior art

---

[1] As discussed below, the PTO's decision to allow the second claim of the '858 was based only on the incorrect assumption that the shoes at issue were not the same. Because it is undisputed that this is incorrect and that all parties agree that the shoes are identical, Defendants expect that this claim will also be rejected by the PTO when the parties clarify this error.

provided to the PTO.  Because all claims in this litigation relate to the '858 and '789 Patents, the reexaminations will simplify, or resolve, the issues in this case.

Crocs now has two months (from September 14, 2012) to respond to the Office Action regarding the '858 Patent, to which Defendants have 30 days to reply to Crocs' response.  Thereafter, the PTO can make its rejection "final," change its determination or allow Crocs to amend its claims to overcome the prior art.  Accordingly, at this point, the invalidity of Claim 1 the '858 Patent has been acknowledged by the PTO, and the reexamination process will likely be completed well in advance of any judicial determination of validity.  Given the liberal policy in favor of granting motions to stay pending the outcome of reexaminations, the early stage of this litigation, and that no party will be prejudiced especially in light of the existing Cease and Desist order of the ITC, the Court should stay these proceedings pending the resolution of the reexaminations before the PTO.

## ARGUMENT

### I.       Staying the Litigation Is Appropriate Under the Circumstances in this Case

A stay pending reexamination of the patents in suit is warranted because the relevant factors all weigh in favor of a stay.  Although Crocs argues a stay will cause prejudice and not simplify the issues, the reality is that the reexamination process will streamline the issues before this Court without prejudicing any party.  In fact, given that the existing ITC's Cease and Desist order precludes any sales of the allegedly infringing products in the United States, Crocs will not be prejudiced by the stay.  Because the pertinent factors weigh in favor of a stay, this Court should grant the motion and stay this litigation until the conclusion of the *inter partes* reexamination proceedings before the PTO.

Generally, "there exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, 2006 WL 1897165, at * 4 (D.Colo. July 11, 2006)(unpublished).  This liberal policy stems from the increased efficiency of resolving patent disputes through claim reexamination by the PTO.  Id. at *3.  In deciding whether to enter a stay, the Court considers:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date is set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*eSoft, Inc. v. Blue Coast Systems, Inc.*, 505 F.Supp.2d 784, 787 (D. Colo. 2007).  Courts often collapse the first and fourth factors.  Id.  None of these factors is controlling; rather, courts determine whether a stay is appropriate based on the totality of the circumstances. *Broadcast Innovation*, 2006 WL 1897165, at * 4.

### A.  A stay will simplify the issues and reduce the burden of litigation on the parties and the court.

Crocs first argues that although Claim 1 of the '858 Patent was rejected by the PTO, entering a stay will not simplify the issues for trial because Claim 2 was not rejected.  However, the PTO's decision not to reject Claim 2 was based on an incorrect factual assumption, and it is likely that Claim 2 will be rejected once the PTO corrects that error.  Further, the PTO has already determined that a substantial question of patentability exists with respect to at least one claim of the '858 Patent.  If Claim 1 of the '858 patent is cancelled or amended, this case will be materially changed.  Given the likelihood that reexamination will, at minimum, modify Plaintiff's infringement claim, a stay will also save the parties from needlessly wasting their resources in litigating issues that will ultimately be rendered moot by the PTO's findings. *See Fusion Specialties, Inc. v. China Network Leader, Inc.,* 2012 WL 3289077 *2 (D.Colo. 2012).

Accordingly, because the reexamination proceedings will streamline the issues before this Court, the first factor weighs in favor of a stay.

As an initial matter, it is likely that the PTO will also reject Claim 2 once the incorrect factual basis for allowing that claim is corrected by the parties. The PTO's decision to allow Claim 2 is premised on the factual assumption that the Aqua Clog and the Aqua Garden Clog are not the same.[2] However, it is undisputed that this is false. Given this error (and other errors) in the Office Action, Defendant USA DAWGS is in the process of preparing a petition under 37 C.F.R. §1.927 that will force the Patent Office to reconsider the errors in its decision, and it is likely that Claim 2 will be rejected upon further review. Thus, the contention that a stay should be denied because Claim 2 survived reexamination is likely based on a false premise. Moreover, Crocs' contention that at least some claims will survive further supports granting a stay. *Tru-Balance, LLC v. Alcoa, Inc.*, 2012 WL 619114 *1 (D.Colo. 2012)(plaintiff's contention that at least some claims would survive reexamination provided further evidence that the reexamination process would streamline the issues before the Court).

Further, although the PTO has not yet issued an office action on the '789 Patent, it is likely that the PTO will also reject the claims of that Patent.[3] Thus, if a stay is not granted and any of Crocs' claims are cancelled or amended, work done by the parties in discovery, expenses related to expert analysis and judicial resources spent by the Court in addressing Crocs' patent claims as currently structured will either be moot or need to be re-done. The Court will have

---

[2] The denial of Defendants' challenges to Claim 2 of the '858 Patent are based upon a finding that "[r]equestor [DAWGS] does not provide any evidence that the Aqua Clog and Aqua Garden Clog are the same."

[3] The Crocs '789 design patent is based on a pre-existing (but undisclosed) clog design, variously called the Aqua Clog, Aqua Garden Clog, Battistion Soft Moc and Waldies, that incorporates each and every design detail disclosed in the '789 patent save for a plain functional pivoting strap.

wasted time, and the parties will have spent additional funds addressing one or more invalid claims. *Broadcast Innovation*, 2006 WL 1897165 at * 10.

Crocs also contends that the request for a stay is simply a tactic aimed at delaying this litigation. However, Defendants immediately filed their request for reexamination once Crocs sought to re-open this litigation and before Crocs filed its amended complaint. The PTO has already agreed that substantial issues of patentability exist with respect to Claim 1, and the reexamination proceedings will streamline (not delay) the issues before this Court. Further, Crocs' delay argument rings hollow given that it elected to proceed before the ITC, which resulted in a six year stay of this case.

Crocs also argues that the expertise of the PTO is not required because the Court has the benefit of the ITC review. However, unlike decisions of the ITC, the PTO's decision upon reexamination of a challenged patent can have a dispositive effect on a patent infringement claim. Notably, a "PTO decision to cancel a patent renders the patent unenforceable in pending litigation." *eSoft, Inc.,* 505 F.Supp.2d at 786 (citing Broadcast Innovation, 2006 WL 1897165, at *4). Although not binding on a court, a PTO decision to uphold the validity of the reexamined patent "is strong evidence that the a district court must consider in assessing whether the party asserting invalidity has met its burden with clear and convincing evidence." Id. Indeed, if the PTO upholds the validity of the Patent upon reexamination, the parties and the Court will benefit from the PTO's expert analysis of a complex issue. *Id.* (noting that 'the specialized expertise the PTO can bring to bear on the question whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve [p]laintiffs case expeditiously, efficiently, and-most importantly-correctly."). Further, ITC decisions are not binding on district courts in subsequent cases brought before them." *Texas Instruments, Inc. v. Cypress Semiconductor*

*Corp.*, 90 F.3d 1558, 1568-69 (Fed. Cir. 2006).  Federal Circuit review of ITC decisions lack preclusive effect.  *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987).  Thus, the ITC proceedings and Federal Circuit review do not streamline this matter or have the same effect as the current reexamination proceedings before the PTO.[4]

Finally, even if Crocs' patents emerge from reexam unchanged, Crocs' arguments during the reexamination will be part of the prosecution history and will likely play a key role during claim construction, which will at the very least be a wasteful duplicative use of judicial resources and time, and may further moot issues or cause work to be re-done in this case.

Based on the foregoing, it is highly likely that the proceedings before the PTO will streamline the issues before this court and save both expense of the parties and judicial resources.  Accordingly, the first factor should weigh heavily in favor of granting a stay.

### B.   The Second factor weighs in favor of a stay because discovery is not complete and no trial date is set.

The second factor also weighs in favor of a stay.  Although Crocs focuses on the ITC proceedings in contending that only limited discovery remains, the fact is that this case is in its earliest stage and discovery has not begun.  In fact, no scheduling order has entered.  Because this case is at an early stage and discovery remains to be completed, the second factor weighs in favor of a stay.

Where, as here, the litigation is in an early stage, the second factor weighs in favor of granting a stay.  *Tru-Balance, LLC*, 2012 WL 619114 at *1.  In *Tru-Balance, LLC,* the parties completed Markman briefing, but the Court had not construed the claims and most pretrial deadlines were tied to the Markman order.  The Court concluded that because discovery was in

---

[4] The ITC action was an administrative proceeding for which certain evidence was excluded or not offered because of the nature of those administrative proceedings. That is why this Court can and must review these issues de novo based on evidence presented here.

its early stages and no trial was set, the second factor warranted a stay. Id. Here, this case is also in its early stages. No scheduling order has entered, no Markman briefing schedule is set and discovery has not begun. Accordingly, this factor should weigh in favor of a stay. Id.

Nevertheless, Crocs contends that the second factor weighs against a stay because of the parties' prior litigation before the ITC, citing *Power Integrations Inc. v. Fairchild Semiconductor International, Inc*., 2008 WL 5335400 at *2 (D.Del. Dec. 19, 2008) (unpublished) and *Robbins v. H.H. Brown Shoe Co., Inc.*, 2009 WL 2170174 *2 (S.D.N.Y. June 30, 2008). However, these cases are distinguishable.

In *Power Integrations*, the court denied a motion to stay "largely because of the length and extensive history of litigation" between the parties. 2008 WL 5335400 at *2. Specifically, in that case the parties had previously spent approximately four years litigating many of the same claims, and at least some of the claims had resulted in jury verdicts in the plaintiffs favor. Id. Here, unlike *Power Integrations*, the ITC proceedings involved different issues. The ITC considers patent infringement matters, only under section 337, solely related to the importation of products. Moreover, Crocs incorrectly asserts that "much of the necessary discovery has already been conducted as part of the ITC proceedings." While it is true that certain aspects of discovery may be abbreviated with respect to the issues before the ITC, this action is not a duplication of the ITC proceedings, the issues are different and the defendants are different. Therefore, the facts relevant for discovery will also be different.

The other case cited by Crocs actually refutes Crocs' argument. In *Robbins,* the Court held that despite the discovery completed in the parallel District Court litigation, the second factor *weighed in favor of a stay* because the case was in an early stage. *Robbins*, 2009 WL 2170174 at *2. The Court stated:

7

> This litigation is in its early stages. Thus, this factor weighs in favor of a stay. *See, e.g., KLA-Tencor Corp. v. Nanometrics, Inc.*, No. 05-3116(JSW), 2006 WL 708661, at *2 (N.D.Cal. Mar.16, 2006) (granting stay where discovery had just begun); Target *Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q 2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay); *ASCII*, 844 F.Supp. at 1381 (granting stay where the parties had undertaken little or no discovery).

Id.

As discussed above, the ITC proceedings do not have a preclusive effect on this litigation. Although Crocs contends that the "limited outstanding discovery mainly concerns Crocs damages and Defendants sales," the issues in this case are not so narrow. Crocs would prefer to leapfrog the district court judicial process and assume a judgment of liability in their favor and fast forward to a summary calculation of damages. However, that is not the case that is before this Court.

In light of the early stage of this proceeding, the second factor also weighs strongly in favor of a stay. *Fusion Specialties, Inc.,* 2012 WL 3289077 (D.Colo. 2012)(*citing Tru–Balance, LLC*, 2012 WL 619114 at *1 (finding that the second factor weighs in favor a stay where "[d]iscovery is not completed and no trial date has been set."); *Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279, at *2 (N.D.Cal. Oct. 4, 2007) (unpublished) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery.")).

### C. The third factor weighs in favor of a stay because there would be no undue prejudice to Crocs.

#### 1. There is no procedural prejudice to Crocs

Crocs' claims of procedural prejudice are defeated by its own arguments. On one hand Crocs claims that it will be prejudiced by a reexamination process that may last for six years or more. But on the other hand Crocs makes light of the reexamination requests, claiming them to

8

be deficient, and asserting that once the Patent Examiner is simply delivered the Federal Circuit's Opinion, "the Patent Office is likely to come to the same result as the Federal Circuit."

Crocs claims that Defendant's choice to seek a reexamination at this stage is "purely tactical." However, as discussed above, it was Crocs' decision to seek redress at the ITC in a parallel action that resulted in this case being stayed. The validity of the patents-in-suit has already been questioned by the PTO, and the proper sequence is to have the patent office consider the basic questions of patentability before this Court begins any examination of validity or infringement related to the specific facts alleged and certainly before any question of liability for damages is entertained. Further, this case has only recently been reopened. The Federal Circuit opinion in *Crocs, Inc. v. United States Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010), which Crocs positions as the cornerstone of its case, was issued May 20, 2010. However, Crocs chose to wait two full years following that opinion before seeking to re-open this matter.

Furthermore, contrary to Crocs' contention, this is not a last minute request for reexamination. This matter was just re-opened. USA Dawgs, Inc. is a new party, and is the named party on the *inter partes* reexamination of Crocs '789 patent. Even if the new America Invents Act controlled the reexamination proceedings in this case, which it does not, 35 U.S.C. §315(b) would not prevent the new parties from seeking reexamination. Further, no substantial proceedings have begun in this case, and the first of the two petitions for reexamination were on file with the PTO prior to Plaintiffs' Amended Complaint and prior to new defendant USA Dawgs being served with the Complaint.

Crocs' argument boils down to claimed prejudice resulting from delay, despite the fact that an injunction is in place. However, delay alone is insufficient to demonstrate undue prejudice. *Fusion Specialties, Inc.,* 2012 WL 3289077 at *4; *Tru-Balance, LLC*, 2012 WL

9

619114 at *1 ("Although the reexamination process can take years, '[m]ere delay, without more ..., does not demonstrate undue prejudice.'" (*quoting Cameras Onsite, LLC v. Digital Mgmt. Solutions, Inc.*, No. H–09–2518, 2010 WL 1268054, at *3 (S.D.Tex. Mar. 24, 2010)).

### 2. There is no evidentiary prejudice to Crocs

Crocs also claims that a stay will cause undue prejudice because it will lose the opportunity to conduct discovery and collect damages if it prevails. However, irrespective of the conflict between this position and Crocs' argument that discovery is complete, its claims of financial prejudice are purely speculative and illusory. Thus, Crocs cannot establish undue prejudice, and this factor should weigh in favor of a stay.

Crocs argues that "the ITC record eliminates the needs for substantial additional discovery, as volumes of documents and testimony relevant to most of the key issues in the case are already available to the parties" and, therefore since the majority of the evidentiary process is complete the court should not grant a stay. However Crocs argues conversely that significant discovery has yet to take place stating "there may already be challenges with respect to locating documents and obtaining witness testimony." Crocs has admitted not only is there substantial discovery still to take place, but that nearly all of Crocs remaining discovery will be related to damages related to patent claims that are currently under reexamination.

Moreover, Crocs' contention that it may lose the opportunity to identify and depose key witnesses is purely speculative. Under these circumstances, this Court has rejected a claim of prejudice based only on delay and unsupported speculation regarding the effect on availability of witnesses and documents. *Fusion Specialties, Inc.*., 2012 WL 3289077 at *4. In *Fusion Specialties*, the Plaintiff contended that it would suffer prejudice because it would "lose the opportunity to identify and depose key witnesses ... or to obtain important documents and other

10

information." Id.  The Court rejected the speculative argument, noting that the Plaintiff provided no explanation as to why any information will be lost during a stay.  Id.  Here, as in *Fusion Specialties*, Crocs claims that it would suffer prejudice as a result of the loss of opportunity to obtain discovery with no explanation.  Accordingly, this factor should weigh in favor of a stay.

Crocs also argues that if the stay is granted they "would likely be unable to obtain any type of monetary relief until 2018."  However, as with its argument regarding availability of documents and witnesses, this contention is based on pure speculation, with no support or explanation.  Unlike *Telemac Corp v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006), there is simply no evidence that defendants will "lack the resources to compensate [plaintiff] in the event of a finding of infringement" or evidence that they will be in any different financial position than they are today.

Further, the patent office has already accepted reexamination of Claim 1 of the '858 Patent, finding a substantial new question of patentability based on the initial petition.  The salient question, therefore, for the instant action, is not *when* Crocs may be able to obtain monetary relief, but *whether* it will be entitled to any relief at all.  Further, Defendants have raised several counterclaims including claims of invalidity, non-infringement, deceptive trade practices and anti competitive behavior.  Crocs ignores the potential for its own liability which will become ever more likely should defendants prevail on one or more claims in the reexamination process.

That the benefits of a stay outweigh its disadvantages is further underscored by the fact that none of the Defendants are currently selling the alleged infringing products.  Further, Defendants are subject to a Cease and Desist order of the ITC, even though an injunction should not be granted if there is a substantial issue of patent validity.  *Procter & Gamble Co. v. Kraft*

*Foods Global, Inc*. 549 F.3d 842, 849 (Fed. Cir. 2008)( *citing Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001)).  By accepting Claim 1 of Crocs '858 Patent for reexamination, the PTO agrees that there is a substantial issue of patent validity.  The continuing prejudice therefore is an improper restriction of the defendant's ability to continue to sell their products when the validity of the patent is in question.

The court in *Procter & Gamble* correctly noted that the "grant of a preliminary injunction followed by a stay of the district court proceedings could subject an ***accused infringer*** to unfair and undesirable delay in reaching a final resolution." *Id.,* at 849.  The converse is also true.  The existence of a restrictive injunction, followed by a refusal to grant a stay where there is a substantial issue of patent validity, would result in unfair prejudice to the accused infringer.

## CONCLUSION

There can be no question that a stay pending *inter partes* reexamination of the patents-in-suit will simplify the issues in question and streamline the issues, if any remain, for trial.  In the instant case discovery is far from complete, new parties have been added and no trial date has been set.  A stay of these proceedings to seek the streamlined expert opinion of the PTO as contemplated by Congress will not unduly prejudice Crocs, and leaving the ITC injunctive order in place only serves as a tactical disadvantage to the defendants, none of whom are selling the accused products.  Given the certain duplication of effort even if none of the claims are cancelled or amended, and the virtual certainty of unnecessary wasted effort if even a single claim is cancelled or amended, a stay will necessarily reduce the burden of litigation on the parties and on the court.  Accordingly, based on the foregoing, Defendants request that the Court grant the motion and stay this matter pending completion of the *inter partes* reexamination.

Dated this 5th day of October, 2012.

                Respectfully submitted,

                LATHROP & GAGE LLP

                By: s/ *Stephen J. Horace*
                     Stephen J. Horace
                     950 17th Street, Suite 2400
                     Denver, Colorado  80202
                     Telephone:  (720) 931-3200
                     Facsimile: (720) 931-3201
                     e-mail: shorace@lathropgage.com

                ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2012, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY PENDING INTER PARTES REEXAMINATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Paul Joseph Lopach
Bryan Cave HRO-Denver
1700 Lincoln Street, #4100
Denver, CO 80203-4541
303-861-7000
Paul.Lopach@bryancave.com

and

Mark P. Walters
Frommer Lawrence & Haug, LLP-Seattle
1191 Second Avenue
20th Floor
Seattle, WA 98101
206-336-5690
mwalters@flhlaw.com

**Attorneys for Australia Unlimited, Inc.**

Jared Barrett Briant
Natalie Marie Hanlon-Leh
Faegre Baker Daniels LLP-Denver
1700 Lincoln Street
Wells Fargo Center, #3200
Denver, CO 80203-4532
303-607-3500
jared.briant@faegrebd.com
natalie.hanlonleh@faegrebd.com

and

Michael Anthony Berta
George Robert Green
Arnold & Porter, LLP-San Francisco
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111
415-356-3000
michael.berta@aporter.com
george.green@aporter.com

**Attorneys for Crocs, Inc.**

s/ *Stephen J. Horace*