**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-CV-00605-PAB-KMT

CROCS, INC.,

Plaintiff,

v.

CHENG'S ENTERPRISES, INC., et al.,

Defendants.

---

# DEFENDANTS U.S.A. DAWGS, INC.'S AND DOUBLE DIAMOND DISTRIBUTION LTD.'S OPPOSITION TO PLAINTIFF'S MOTION TO ENJOIN AND TO PREVENT VIOLATIONS OF STAY AND REQUEST FOR LEAVE TO FILE MOTION FOR SANCTIONS

---

## I. INTRODUCTION

After six months of litigation and discovery in Nevada with U.S.A. Dawgs ("Dawgs"), *U.S.A. Dawgs, Inc. v. Crocs et al.,* 2:14-cv-1461-RFB-PAL ("the Nevada action"), Crocs now seeks to reopen this case for the sole purpose of having this Court enjoin the Nevada action on the equitable and discretionary first-to-file rule. Crocs' motion is an untimely and improper attempt to reverse course after the Nevada court rejected Crocs' attempt to force Dawgs through an impossible discovery schedule in that case. Furthermore, Crocs' motion comes five months after it sought dismissal of the Nevada action on the very same "first-to-file" basis that it is now raising before this Court. As that motion is still pending in Nevada, with a ruling expected anytime, Crocs is improperly seeking a second opinion in the event that the Nevada court denies its motion to dismiss.

Crocs failed to seek relief with this Court at the inception of the Nevada action; it failed to file a Rule 12(b)(3) motion to dismiss for improper venue; and it failed to file a motion to transfer the Nevada action or otherwise formally seek to stay the Nevada action. Instead, Crocs filed two Rule 12(b) motions to dismiss, one of which was based on the first-to-file rule, and has engaged in an active and aggressive course of discovery. It was not until the Nevada court vacated the parties' scheduling order, pending a ruling on the motions to dismiss, that Crocs decided to bring the instant motion in this Court seeking to enjoin the Nevada action altogether. Therefore, Crocs has waived any right to bring the present motion. This Court should not reopen this case simply to consider the very same issue that Crocs raised with the Nevada court five months ago. Instead, this Court should deny Crocs' motion and defer to the Nevada court for a ruling on the matter. Should the Nevada court dismiss Dawgs' complaint as duplicative of the Colorado action, Dawgs will move to reopen this case and consolidate the two matters to allow the case to proceed in Colorado.

Even if this Court decides to consider Crocs' motion to enjoin, it should deny the motion in its entirety. Injunctions against litigants' proceedings in other jurisdictions are an extremely rare form of relief, especially where, as here, the claims, parties, issues, and facts between the Nevada and Colorado actions (filed *eight years apart* and involving different parties and claims) are not substantially identical. Even if the Court deems the Colorado action and Nevada action sufficiently the same for purposes of the first-to-file rule, it is an equitable and discretionary rule with numerous exceptions and this Court should exercise its discretion and dispense with the rule in this case under the present facts and circumstances. This is especially true given that the Nevada action has proceeded substantially further than the closed Colorado action, in large part, due to Crocs' own decisions and actions.

Additionally, the equitable balance is particularly in favor of the Nevada action given Crocs' attempt to use the stay in this case as both a sword and a shield: benefitting from the current stay of the Colorado case, while unjustly seeking an order that will not only enjoin the Nevada action, but also enjoin Dawgs and Double Diamond Distribution ("DDD") from any other petitioning activity *worldwide*. The reasoning for this is clear: Crocs realizes that it is unlikely to prevail on its 2006 Colorado patent infringement and patent validity claims in light of its D518,789 design patent ("'789 design patent") being rejected based on the patent examiner's finding that Crocs had failed to disclose their own invalidating prior art. That, coupled with the Nevada court's decision to vacate the impractical discovery plan Crocs was pursuing, is the reason Crocs is attempting to stonewall any discussion, let alone a decision, on the merits of Dawgs' claims.

This Court should exercise its discretion and, under the principles of equity and judicial estoppel, deny Crocs' motion and exercise its inherent powers to sanction Crocs for its illegitimate efforts to use judicial stays and injunctions as weapons in efforts to monopolize the footwear market. Even if this Court is somehow inclined to grant Crocs' motion, it should not enjoin the Nevada action, but rather consolidate or transfer it to this Court and allow the parties to proceed with discovery. This is particularly appropriate given that the reexaminations of the patents-in-suit (justifying the stay) have vastly simplified the issues before this Court, and thus, the stay is no longer either necessary or warranted, and no longer promotes judicial economy. Conversely, allowing Crocs to further delay these proceedings is highly prejudicial to Dawgs' rights.

## II. LEGAL ARGUMENT

### A. Crocs' Motion to Enjoin is Untimely and Crocs Has Waived its Right to Have this Court Consider its Motion to Enjoin By Filing An Identical Motion in the Nevada Action Five Months Ago and By Actively Participating in that Case

Defendant Dawgs filed its antitrust lawsuit against Crocs in Nevada on September 10, 2014.[1] In response, Crocs filed *two* Motions to Dismiss, on September 17, 2014, and October 3, 2014, the latter of which argued that the Nevada action should be dismissed because it is duplicative of this action.[2] Specifically, Crocs' motion to dismiss argued that Dawgs' counterclaims in this case are identical to its claims in the Nevada action, and therefore, the Nevada court "should dismiss Dawgs's complaint in its entirety without leave to amend or re-file ***in favor of allowing the first-filed Colorado Action to proceed***."[3]

Equally important to the fact that Crocs' motion to dismiss raised the same argument it now makes here, is the fact that Crocs did not seek to stay or otherwise transfer the Nevada action when it commenced six months ago. In particular, neither of Crocs' motions to dismiss asserted that venue was improper in Nevada pursuant to Fed. R. Civ. P. Rule 12(b)(3), nor did Crocs file a motion to transfer the Nevada action or otherwise move to stay the matter to allow it to seek a ruling from this Court on its first-to-file argument. Accordingly, pursuant to Fed. R. Civ. P. Rule 12(h), Crocs has waived its right to attack venue in Nevada, which would have been the proper mechanism to bring the first-to-file issue before this Court (while simultaneously seeking a stay of all proceedings in the Nevada action). As the Tenth Circuit has explained, "[Rule 12(b)(3)] requires a party to assert a defense of improper venue by way of motion or

---

1 *See* Complaint, entitled *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, Case No. 2:14-cv-1461, attached hereto as **Exhibit 1** to Declaration of Darren Lemieux ("Lemieux Decl.").
2 *See* Motions to Dismiss dated September 17, 2014, and October 3, 2014, attached hereto as Lemieux Decl. **Exhibits 2** and **3**, respectively.
3 *See* Lemieux Decl. Exh. 3 at 11 (emphasis added).

responsive pleading. If we were to permit a party to object to venue by filing suit for injunctive relief in a separate forum, we would, in essence, be rendering rule 12(b) a nullity."[4]

Not only did Crocs ask the Nevada court to decide the first-to-file issue and waive any argument that venue in Nevada is improper, but it has actively and aggressively participated in the Nevada action for six months before bringing the instant motion to enjoin. That is, prior to filing the instant motion, Crocs participated in the parties' Fed. R. Civ. P. 26(f) conference, exchanged initial disclosures, negotiated an electronic storage information stipulation, and engaged in substantial written discovery in the Nevada action.[5] In fact, Crocs *actually opposed* Dawgs' motion to vacate the parties' discovery plan and scheduling order and to stay discovery until after the Court rules on Crocs' motions to dismiss in the Nevada action.[6] In doing so, Crocs argued that Dawgs had not diligently pursued discovery in the Nevada and should not be entitled to an extension of time to finish its discovery.[7] In granting Dawgs' motion to vacate, the Nevada court recognized that Crocs' motivation to expedite discovery was transparent: "you want me to make [Dawgs] adhere to the [discovery] schedule **which virtually ensures they will not be able to proceed with this case**."[8]

Thus, it was not until January 22, 2015, when the Nevada Court rejected Crocs' attempt to force Dawgs to litigate its entire case against them under a virtually impossible timeframe that Crocs decided to ask this Court to enjoin the Nevada action from proceeding any further. Hence,

---

[4] *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).

[5] *See* Lemieux Decl. **Exhibit 4** (initial disclosures of each side in Nevada action); **Exhibit 5** (initial written discovery and responses for each side in Nevada action); and **Exhibit 6** (Dawgs' expert disclosures and the parties' January 15, 2015, interim status reports for Nevada action).

[6] *See* Crocs' Oppo. to Mot. to Vacate, attached hereto as **Exhibit 7** to Lemieux Decl.

[7] *See id.*

[8] *See* Hearing Transcript of Jan. 22, 2015 Nevada Proceedings before M.J. Leen at 10, attached hereto as **Exhibit 8** to Lemieux Decl. (emphasis added).

Crocs is now raising its "first-to-file" argument in this Court, even though it raised the same "first-to-file" argument in the Nevada action five months ago.[9] Ironically, Crocs is awkwardly arguing the same arguments in two Federal Courts while complaining of duplicative lawsuits. Crocs' request for a second opinion is nothing more than an untimely attempt, in bad faith, to forum shop its argument to see which Court provides Crocs with a more satisfying ruling,[10] which it will then use to argue as preclusive in the other district court.[11] For all of these reasons, this Court should deny Crocs' motion and defer to the Nevada court to rule on the issue of whether the Nevada action is improperly duplicative of this action.[12]

**B. An Injunction Against Another Federal Proceeding is Extreme and Unwarranted in this Case**

As the Tenth Circuit has clearly stated, "[w]hen an injunction sought in one federal proceeding would interfere with another federal proceeding, . . . such injunctions should be

[9] *See* Lemieux Decl. Exh. 3 (Crocs' Oct. 3, 2014 Nevada Motion to Dismiss).

[10] *See* Lemieux Decl. Exh. 9 (Nevada Hearing Transcript) at 15-16 ("Mr. Berta [counsel for Crocs]: Either this [Nevada] Court . . . the motions can be decided by this Court when it has the time in which to do them. In the interim . . . . what we will commit to doing is we will also go to Colorado and let them know what's going on and let them have an opportunity to make a decision. . . . And if the Colorado Court decides that they should be anti-suit enjoined or the stay should be lifted based on all of the things they're saying here [in Nevada] and that [Colorado] decision comes out first, then it will remove the issue from this [Nevada] docket without the Court having to decide it, but if the [Nevada] Court decides first, then we don't have to worry either.").

[11] *See, e.g., E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 972, 976 (3d Cir. 1988) (bad faith among proper bases that "have always been regarded as proper bases for departing from the [first-to-file] rule"); *Miller v. Unterreiner*, No. 13-cv-00365-RED-CBS, 2013 WL 6152362 at *3 (D. Colo. Nov. 22, 2013) (identifying bad faith as factor in equitable considerations of first-to-file rule).

[12] It is entirely appropriate for the Nevada court to decide the issue of the first-to-file rule, especially as Crocs sought a ruling from that court on the issue first. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F.Supp. 2d 1287, 1296-97 (D. Kan. 2010) ("the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.") (internal quotations omitted).

granted *only in the most unusual cases*."[13] As with the present situation, the *Span-Eng* Tenth Circuit panel dealt with "the somewhat unusual situation in which a party to one lawsuit seeks to enjoin another party from proceeding in a related case where identical issues and parties are not present."[14] That panel looked to its own precedent, noting that in *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.*,[15] the Tenth Circuit explained that:

> "'where a movant seeks relief [a stay] that would delay court proceedings by other litigants [in separate cases] he must make a *strong showing of necessity* because the relief would severely affect the rights of [those] others.' . . . even when the relief sought is only a stay of the case in which the motion is made: '[T]he suppliant for a stay must make out a *clear case of hardship or inequity* in being required to go forward if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in *rare* circumstances will a litigant in one cause [the "stayed" separate claimants] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. . . . The right to proceed in court should not be denied except under the most extreme circumstances' and that 'these precautions are of particular importance where, as here, restraints on other courts [with other actions] are contemplated."[16]

In the *Span-Eng* case, the plaintiffs had filed an action in the District of Utah (relating to alleging securities violations) against numerous defendants.[17] The plaintiffs sought to add an additional six defendants in a fourth amended complaint, but the Utah court refused.[18] Nine months later, the same plaintiffs filed a new action against those same six defendants in Arizona district court; the Arizona complaint featured identical issues, facts, and claims to the Utah action, as it was a "verbatim recitation of the counts and relief sought in the proposed fourth amended complaint rejected by the Utah court" and reiterated "all of the factual allegations" of

---

[13] *Span-Eng Associates v. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985) (quoting *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) (emphasis in original).
[14] *Span-Eng*, 771 F.2d at 467.
[15] 713 F.2d 1477 (10th Cir. 1983).
[16] *Span-Eng*, 771 F.2d at 468 (quoting *Chilcott*, 713 F.2d at 1484) (internal citations omitted) (emphasis in original).
[17] *See id.* at 466.
[18] *See id.* at 466-67.

the Utah action.[19] The Tenth Circuit reversed the injunction issued by the Utah district court (that had prevented the plaintiffs from pursuing the Arizona action), finding the issuance of the injunction to be an abuse of discretion.[20]

The present situation corresponds completely with the *Span-Eng* and *Chilcott*[21] situations in that Crocs is asserting patent infringement causes of actions against multiple defendants in Colorado while trying to prevent Dawgs (the sole plaintiff in the Nevada action, who was not made a party to the Colorado action until 2012) from asserting its valid legal rights in Nevada on separate facts and separate claims. In short, patent infringement and declaratory judgment for invalidity—the focal claims at issue in this Colorado action—are not asserted at all in Nevada. Crocs is not prejudiced by proceeding with the action in Nevada, as evidenced by the fact that Crocs has engaged in substantial discovery already. Dawgs is headquartered in Nevada and Crocs has significant presence there as well; litigating the Nevada action may simplify the issues before this Court. *Assuming arguendo*, that Crocs *could* prevail in the action in Nevada, it could do so without the issue of patent infringement issue ever being contemplated, and Crocs could then avail themselves of their viable patent infringement claims before this Court either during (or after conclusion of) the Nevada action. The holdings of *Span-Eng* and *Chilcott* are clearly

---

[19] *Id.* at 467.

[20] *See id.* at 470 ("This case does not present the extreme circumstances that would justify this exercise of a court's equitable power. Defendants have failed to make a strong showing of need or undue burden that outweighs the disadvantageous effect on plaintiffs in the Arizona action.") (internal citation to *Chilcott* omitted).

[21] The *Chilcott* case involved the appointed equity receiver administering an estate in one action seeking an extension of a stay of separate claims by various investor plaintiffs, in eight other cases in federal and state courts in Colorado and Arizona, from proceeding while the receiver sought to further administration of the estate. The Tenth Circuit declared, "We must hold that in view of the lack of sufficient justification for the stay order enjoining the prosecution of the investors' actions, the grant of the stay was in error and an abuse of discretion." *Chilcott*, 713 F.2d at 1486-87.

applicable to the present situation and illustrate that the extreme remedy of enjoining the Nevada action is not appropriate in this case.[22] Thus, Crocs' motion should rightfully be DENIED.

### C. The Nevada and Colorado Actions are not the Same for Purposes of the First-to-File Rule, and Regardless, the Rule is an Equitable and Discretionary Rule that this Court Should Dispense with under the Facts of This Case

"[A] basic requirement for applying the first-to-file rule [is] that the issues in the two suits be identical."[23] Where the same parties seek to litigate the same issues in two separate federal courts, courts will look to the equitable "first to file" rule[24] and the "doctrine of federal comity"[25] in making a determination as to which forum the claims should proceed in. As the "first to file" rule would suggest, it is often the first party to make it to the federal courthouse to file suit that will dictate which federal court plaintiffs and counterclaimants will have to pursue their claims in, and the second case may be either dismissed, stayed, transferred, consolidated, enjoined or otherwise handled. Courts will necessarily also have to weigh a number of equitable or other factors in considering this rule, *i.e.*, it is not a "rigid mechanical" rule wherein the first to

---

[22] Notably, in both decisions the Tenth Circuit also pointed out that '"considerations [of judicial economy] should rarely if ever lead to such broad curtailment of the access to the courts."' *Span-Eng*, 771 F.2d at 469 (citing *Chilcott*, 713 F.2d at 1485).

[23] *Alltrade v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). Plaintiffs cite *Alltrade* for the argument that are three relevant factors in "first to file" analysis, but as this is an equitable, discretionary rule, the factors involved are more flexible and numerous, as *Alltrade* itself explicitly offers a number of additional factors that may trigger exceptions to the "first to file" rule, including bad faith, anticipatory suit and forum shopping. *Alltrade*, 946 F.2d at 628.

[24] The "first to file" rule "may be invoked 'when a complaint involving the same parties and issues has already been filed in another district.'" *Alltrade*, 946 F.2d at 625 (quoting *Pacesetter*, 678 F.2d at 95).

[25] "When considering issues raised by the comity doctrine, however courts are not bound by technicalities . . . . [T]he handling of multiple litigation involving the same subject matter does not lend itself to a 'rigid mechanical solution.'" *Church of Scientology of Calif. v. U.S. Dept. of Army*, 611 F.2d 738, 749-50 (9th Cir. 1979) (quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

file a lawsuit automatically "wins" in having the case heard in their desired forum.[26] As the Tenth Circuit has declared, "[S]imply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case."[27]

Instead, courts balance a number of factors to apply the rule or to identify an applicable exception to the rule, such as those factors considered in a *forum non conveniens* analysis, including: First and foremost, are the parties and claims identical; do the two suits arise out of the same "transactional nucleus of facts";[28] has one action developed further than the other;[29] are witnesses and other evidence more readily brought or obtained in one court or the other; what do the equities of the situation dictate,[30] has a party acted in bad faith;[31] what furthers judicial economy and avoids duplication of judicial efforts; and would either party be prejudiced by

---

[26] *Kerotest*, 342 U.S. at 183; *Fetter Logic, Inc. v. Envestnet Asset Management, Inc.*, No. 09-cv-2779-WDM-KMT, 2010 WL 55495 at *3 (D. Colo. Jan. 6, 2010) ("[D]etermination of issues arising from multiple filings [in separate courts] 'do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion.'") (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

[27] *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982); *see also, e.g., Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 539 (S.D.N.Y. 2013) ("Moreover, although the [first-filed] rule creates a general presumption that a first-filed suit has priority, that presumption is not applied in a rigid or mechanical way. . . the district court is instead required to consider the equities of the situation when exercising its discretion.") (internal quotes, citations omitted).

[28] *See, e.g., Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) ("The filing of the plaintiff's complaint [i.e., in 2006] frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded. . . . 'New' claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action.").

[29] *See, e.g., E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 972, 976 ("[C]ourts have rejected the [first-filed] rule when the second-filed action had developed further than the initial suit."); *Orthman v. Apple River Campground*, 765 F.2d 119, 121 (8th Cir. 1985); *Church of Scientology v. United States Dept. of Army*, 611 F.2d 738, 749-50 (9th Cir. 1979); *Synthes, Inc. v. Knapp*, 978 F.Supp.2d 450, 455 (E.D. Penn. Oct. 11, 2013).

[30] "[D]istrict court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." *Alltrade*, 946 F.2d at 628.

[31] *Id.; see also, e.g., E.E.O.C.*, 850 F.2d at 972 ("[The first-filed rule] is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith or forum shopping. District courts have always had discretion . . . justifying departure from the first-filed rule.") (emphasis added).

hearing the case in either the venue of the first filing or the venue of the second filing.[32] As the United States Supreme Court has stated, "[a]n ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."[33]

In the present situation, the Colorado action and the Nevada action are not identical or even substantially similar. Regardless, Crocs' bad faith is evident given that its present motion was not filed until it received an adverse ruling six months into the Nevada action. The 2006 Colorado action was asserted by Crocs for patent infringement against a number of defendants as alleged infringers, and Dawgs was not made a party until 2012 (when Crocs added Dawgs without offering any specific factual support). Crocs has asserted that the present case "relates back" to the 2006 original Complaint,[34] yet Dawgs asserts a new Clayton Act claim and Nevada state claims that are distinct and involve different underlying facts from those of the Colorado case, especially as those facts relate to new business interference activity that Crocs has engaged in since 2006, and particularly since 2012.[35]

Crocs fails to acknowledge the difference in facts, parties, and claims between the 2006 Colorado action[36] and the present 2014 Nevada action, especially the new issues and facts

---

[32] *See, e.g., Editorial Planeta Mexicana, S.A. de C.V. v. Argov*, No. 2:11-cv-013, 2012 WL 3027456 at *7-*8 (D. Nev. 2012) ("[F]irst to file rule is not applicable when the issues in two suits are not 'identical,' [as in *Editorial*] the issues in the Nevada and [other forum] actions do not completely align."; *id.* at *8); *Alltrade*, 946 F.2d at 625-29 (examination of first to file rule).
[33] *Kerotest,* 342 U.S. at 183-4.
[34] Pl's Mot. (ECF No. 143) at 1, 10.
[35] *See, e.g., Otter Products, LLC v. Seal Shield, LLC*, No. 13-cv-017340-MSK-MJW, 2014 WL 1213475 at *3 (D. Colo. Mar. 24, 2014) ("invocation of the 'first to file' rule" misplaced where two cases do not involve the same claims).
[36] Crocs did not amend its 2006 factual assertions when it amended its complaint in 2012 to include Dawgs as a new defendant, and even a cursory comparison of the Nevada Complaint with the minimal Amended Complaint and Dawgs' Answer thereto for the Colorado action will reveal that the facts and the scope of the two actions are markedly dissimilar. *Compare* Lemieux Decl. Exh. 1 (the Sept. 10, 2014 Nevada Complaint) with Crocs' Colorado Complaint (ECF No.

relating to fraud, antitrust, and anticompetitive activities that have recently occurred *and would not have been addressed in either the 2006 Colorado complaint or Dawgs' 2012 counterclaims and answer*. It was not until April 29, 2013, when the Patent Examiner introduced her own 35 U.S.C. § 102(b) rejection of the '789 patent based on Crocs' own website as it appeared as a 2002 publication, offering its Beach/Cayman products for sale in 2002 and fully disclosing those products (to one of ordinary skill in the art) in 2002, *that the full dimension of Crocs' concealment and fraud became compelling and clear to all observers*. This fact was not before the parties in either 2006 or 2012. Furthermore, Crocs' efforts in interfering with Dawgs' ability to sell products with retailers has expanded within recent years, and this would not have been before the parties (or before this Court) in either 2006 or 2012, and involve a different transactional nucleus of facts occurring in Nevada. Thus, these are new facts triggering different causes of action that distinguish the 2006 Colorado patent infringement and declaratory invalidity action from the 2014 Nevada antitrust action.

With regard to Dawgs' antitrust claims, the United States Supreme Court (and the District of Colorado) have established that antitrust counterclaims have independent basis for federal jurisdiction and are *permissive*.[37] Therefore, Dawgs' antitrust counterclaims in the Colorado action were not compulsory, but rather, permissible counterclaims brought out of an abundance

1), Crocs' Amended Complaint (ECF No. 104) and Dawgs' Answer and Counterclaims (ECF No. 119).

[37] *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 670-671 (1944) ("[A] claim for [antitrust] damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) . . . does not mean that the failure to do so renders the prior judgment res judicata as respects it."); *Old Homestead Bread Co. v. Continental Baking Co.*, 47 F.R.D. 560, 564 (D. Colo. 1969) ("Several subsequent cases [to *Mercoid*] have held that **counterclaims . . . under the antitrust laws are not compulsory and are not barred if not asserted in a patent infringement action**.") (emphasis added).

of caution. Thus, nothing precludes Dawgs' from bringing its antitrust claims in Nevada. Regardless, the claims and lawsuits are not substantially related.

*Assuming arguendo*, that the '789 patent is somehow deemed valid, it would still not diminish Dawgs' Nevada antitrust and state law causes of action. Crocs has engaged in flagrant patent misuse, especially since 2012 in asserting their narrow patent claims to cover the entire marketplace of foam footwear products (and beyond, including safety boots, flip-flops, golf shoes), in a concerted effort to eliminate Dawgs as a competitor.[38] As set forth in the Nevada action, Crocs knowingly concealed 2002 sales of their own products from the Patent and Trademark Office, including during reexamination, which constituted a fatal failure to disclose material prior art references for each of the '858 and '789 patents. Crocs has deliberately and persistently interfered with Dawgs' business relationships by coercing its suppliers to *not* carry any of Dawgs' products, including items that could not possibly be considered to infringe (*e.g.*, non-clog shoes, safety boots, winter boots, flip-flops).[39] These bad faith efforts reflect a long-

---

[38] *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 493 (1942) ("**Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product** . . . is thus a contributing factor in thwarting the public policy underlying the grant of the patent. Maintenance and enlargement of **the attempted monopoly of the unpatented article** are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a [patent misuse] of the patent.") (emphasis added); *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952) ("[T]he real purpose of the infringement action and the incidental activities of [Plaintiff's] representatives was to further the existing monopoly and to eliminate [Defendant] as a competitor. The infringement action and the related activities . . . in themselves were not unlawful, and . . . would not be sufficient to sustain a [counter]claim for damages . . . but when considered with **the entire monopolistic scheme which preceded them** we think, as the trial court did, that they may be considered as having been done to give effect to the unlawful scheme.") (emphasis added).

[39] *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135-36 (1969); *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 n.4 (10th Cir. 2005) ("Patent misuse occurs where the patent owner attempts to extend the impact of his patent beyond its proper scope.") (quoting John Gladstone Mills et al., *Patent Law Basics* § 12:8 (2004)); *Williams v. Hughes Tool Co.*, 186 F.2d 278, 285 (10th Cir. 1950) (A patentee may not "enlarge the monopoly granted by the

standing and continuing pattern of behavior by Crocs, currently manifested by Crocs' present motion to enjoin the same Nevada action where Crocs has been engaged in an aggressive discovery schedule, arguing against any extension or stay of discovery. Crocs' bad faith in belatedly bringing this Motion, coupled with the other numerous equitable factors in favor of allowing the Nevada action to proceed, present compelling reasons for this Court to dispense with the first-to-file rule in this case by exercising its discretion and equitable powers, or by relying on any of the numerous exceptions to the rule.[40]

While moving forward with the present case in Nevada *does not* prejudice Crocs or its claims in Colorado, forcing Dawgs to pursue its legal rights in Colorado in a closed action with multiple defendants while discovery has already commenced in Nevada (a more appropriate venue to hear the matter altogether) would greatly prejudice Dawgs. Dawgs would have to seek to reopen this case, attempt to amend its counterclaims to include its Nevada claims, and then initiate discovery, which is already in process in Nevada.

Even with the '858 reexamination completed and the solitary claim of the '789 design patent rejected—thus accomplishing the primary work of the PTO in reexamining the patents-in-suit and vastly simplifying the issues for trial—this case presently remains closed while the parties have actively engaged in discovery in Nevada. During the course of the stay and closure

---

patent."); *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1576-7 (Fed. Cir. 1990) ("[A] patent owner may not take the property right granted by a patent and use it to extend his power in the marketplace improperly . . . . When a patent owner uses his patent rights not only as a shield to protect his invention, but as a sword to eviscerate competition unfairly, that owner may be found to have abused the grant and may become liable for antitrust violations when sufficient power in the relevant market is present. Therefore, **patent owners may incur antitrust liability** for enforcement of a patent known to be obtained through fraud or known to be invalid . . . or **where there is an overall scheme to use the patent to violate antitrust laws**.") (emphasis added).

[40] *See, e.g., Alltrade v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (bad faith exception to the "first-to-file" equitable rule); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 972, 976 (bad faith included among "first-to-file" exceptions).

of the 2006 case, new damages and new and unrelated causes of action continue to accrue to Dawgs. Hence, Dawgs would be highly prejudiced by being forced to wait any number of years before reaching the merits of its claims if the Nevada action is enjoined. As such, the efforts of Crocs, seeking to enjoin the action in Nevada while prolonging the stay in Colorado, are directed primarily to frustrate and prevent Dawgs' opportunity for its day in court. Therefore, the first-to-file rule should not be applied in this case.

As the issuance of an injunction and consideration of "first to file" rule issues are both equitable concerns and entirely within the discretion of this Court, Dawgs and DDD are aware that this Court has a number of viable courses of action before it. However, the simplest solution would be for this Court to properly DENY Crocs' motion and to allow the Nevada court to rule on the issue, which was first raised by Crocs in the Nevada action. Alternatively, if this Court is inclined to consider Crocs' motion, it should deny it for the reasons set forth above. Finally, if this Court decides the Nevada action belongs in Colorado, it should lift the stay, consolidate the Nevada action with this action, and allow all parties to pursue discovery and otherwise litigate this case on its merits.

**CONCLUSION**

For the foregoing reasons, Dawgs and DDD respectfully request that this Court DENY Crocs' Motion for an Injunction and for leave to seek sanctions. Dawgs and DDD further request that this Court provide any other remedies and relief that it deems just and proper, including SANCTIONS (or leave to seek sanctions) against Crocs for filing an untimely and vexatious motion; furthering its capricious litigation strategy by seeking simultaneous, identical rulings, in two separate district courts with the goal of silencing Defendants' legitimate petitioning rights, despite the overwhelming evidence of Crocs' illegal misuse of fraudulently obtained patents.

DATED this 6th day of March, 2015.

LEWIS ROCA ROTHGERBER LLP

s/ Darren J. Lemieux
Darren J. Lemieux
LEWIS ROCA ROTHGERBER LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202-5835
Phone: 303-623-9000
Fax: 303-623-9222
E-mail: dlemieux@lrrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2015, I delivered a true and correct copy of the foregoing **DEFENDANTS U.S.A. DAWGS, INC.'S AND DOUBLE DIAMOND DISTRIBUTION LTD.'S OPPOSITION TO PLAINTIFF'S MOTION TO ENJOIN AND TO PREVENT VIOLATIONS OF STAY AND REQUEST FOR LEAVE TO FILE MOTION FOR SANCTIONS** was filed via the CM/ECF system and was served upon the following:

Paul W. Rodney
Arnold & Porter, LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Telephone: 303.863.1000
Facsimile: 303.832-0428
Email: Paul.Rodney@aporter.com

Michael Anthony Berta
Arnold & Porter, LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100
Facsimile: 415.471.3400
Email: Michael.berta@aporter.com

Michael G. Martin
Hamil Martin LLC
140 East 19th Avenue, Suite 600
Denver, CO 80203
Telephone: 303.830.1057
Facsimile: 303.830.1057
Email: mmartin@hamilmartin.com

s/Darren J. Lemieux
Darren J. Lemieux