THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00605-PAB-BNB
(consolidated with Civil Action No. 12-cv-02096-PAB)

**CROCS, INC.**

      Plaintiff,

v.

**CHENG'S ENTERPRISES, INC., et al.,**

      Defendants.

## CROCS'S REPLY IN SUPPORT OF MOTION TO ENJOIN AND PREVENT VIOLATIONS OF STAY BY DAWGS AND DDD AND REQUEST FOR LEAVE TO FILE MOTION FOR SANCTIONS

  As set forth in Plaintiff Crocs, Inc. ("Crocs") opening brief seeking to enjoin violations of this Court's stay by U.S.A. Dawgs ("Dawgs") and Double Diamond Distribution Ltd. ("DDD," together with Dawgs, "Defendants"), Dawgs's duplicative lawsuit in Nevada not only violates the "first-to-file" rule, but is a collateral attack on this Court's stay order entered <u>at Dawgs's request</u> in 2012. Defendants' opposition (ECF No. 158, "Opp.,")[1] provides no legitimate reason for disregarding the first-to-file rule. This Court should enjoin Defendants' duplicative lawsuits in any forum, including the Nevada action, and allow Crocs to seek sanctions against Dawgs for intentionally violating an order of this Court that <u>Dawgs</u> sought and obtained.

---

[1] Any references in this motion to the docket in the case before this court will be cited as "ECF No." References to the later-filed case in the District of Nevada, *U.S.A. Dawgs Inc. v. Crocs, Inc.*, Civ. No. 14-1461 (D. Nev.) ("Nevada Action"), will be cited as "Nev. Action, ECF No." Defendants have not opposed Crocs's request for judicial notice of such materials.

## I. DEFENDANTS' OPPOSITION UNDERSCORES THAT THE FIRST-TO-FILE FACTORS ALL WEIGH IN FAVOR OF AN INJUNCTION.

Defendants acknowledge that (1) chronology of the actions, (2) similarity of the parties, and (3) similarity of the issues are the three main factors under the first-to-file rule. Opp. at 9 n.23. Defendants' arguments only show why each of these factors weighs in favor of an injunction: Crocs filed this lawsuit eight years before Dawgs initiated the Nevada Action, Dawgs and Crocs are parties to both actions, and the legal issues and underlying facts in both actions are virtually the same. Defendants' attempt to confuse and blur this simple and straightforward application of the first-to-file rule fails.

Defendants cannot confuse the "similarity of the parties" by claiming there are different parties to the proceedings. Opp. at 2, 8. That *additional* defendants are named in this action is of no moment; what matters is that the Nevada action (where Dawgs filed antitrust and state law claims against Crocs arising from Crocs's exercise of patent rights) is a subset of the Colorado action (where Dawgs first filed the same as counterclaims). *Fetter Logic, Inc. v. Envestnet Asset Mgmt., Inc.*, No. 09-CV-02779-WDM-KMT, 2010 WL 55495, at *3 (D. Colo. Jan. 6, 2010) ("Identical parties and issues are not required; rather, the inquiry is whether there is 'substantial overlap' between the cases."); *Animal Health Int'l, Inc. v. Livingston Enters., Inc.*, No. 12-CV-00369-LTB, 2012 WL 1439243, at *3 (D. Colo. Apr. 26, 2012) (finding substantial similarity of parties despite the fact that plaintiff in a first-filed action had "also name[d] another defendant").

With respect to the "similarity of the issues" factor, none of Defendants' four theories show that the legal issues and underlying facts in the actions are different. *First*, it is a false dichotomy to claim that patent issues are at issue in this case but not the Nevada Action. *See* Opp. at 8 ("patent infringement and declaratory judgment for invalidity . . . are not asserted at all

in Nevada"). Defendants address none the relevant case law cited in Crocs's opening brief holding to the contrary. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 546 n.28 (E.D.N.Y. 2005) ("[A] patent must be invalid before it can be a candidate for *Walker Process* fraud"), *aff'd in part*, 544 F.3d 1323 (Fed. Cir. 2008); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 994 (9th Cir. 1979) (in order to bring *Handgards* claim, plaintiff must prove defendant prosecuted its infringement actions with knowledge that the patents, though lawfully-obtained, were invalid). Self-evidently, where none of Crocs's patents have ever been finally adjudicated as invalid, Dawgs cannot prevail on its claims that Crocs has knowingly misused invalid patents unless Dawgs first shows that the patents are invalid, and then shows that Crocs knew as much. The Nevada Action, which is predicated on claims of patent misuse, will thus <u>necessarily</u> involve a mini-trial on patent issues of invalidity and infringement—*which are also at issue here.*

*Second*, Defendants note that Dawgs pleaded a Clayton Act claim in Nevada, and state-law claims under Nevada law, and not Colorado law. Opp. at 11. Identity of *claims* is not the test; rather, the Court need only find the actions are "*substantially similar* in that they seek like forms of relief and hinge on the outcome of the same *legal/factual issues*." *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1279 (D. Utah 2010) (emphasis added).[2] Here, the actions are substantially similar because the gravamen of the claims is that Crocs's

---

[2] Defendants cite *Editorial Planeta Mexicana, S.A. de C.V. v. Argov*, No. 2:11-cv-013, 2012 WL 3027456 (D. Nev. July 23, 2012), for the proposition that the legal issues must be "identical." Opp. at 11 n.32. This is not the law in the Tenth Circuit. *See, e.g.*, *Animal Health Int'l, Inc.*, 2012 WL 1439243, at *3; *Fetter Logic*, 2010 WL 55495, at *3. And the District of Nevada has held that the "the sameness requirement does not mandate that the two actions be identical, but is satisfied if they are sufficiently similar." *Global Experience Specialists, Inc. v. Cunniffe*, No. 2:14-CV-421 JCM NJK, 2014 WL 3748931, at *4 (D. Nev. July 30, 2014).

alleged patent misconduct harmed Dawgs's contractual relations and hindered competition. The cases cited by Defendants do not compel a different finding. Opp. at 11 n.35. For example, in *Otter Products, LLC v. Seal Shield, LLC*, No. 13-CV-01734-MSK-MJW, 2014 WL 1213475, at *4 (D. Colo. Mar. 24, 2014), the court did not apply the first-to-file rule because the first suit was a trademark suit and the second was a patent suit. Here, in both cases, Dawgs asserts federal antitrust claims and substantially similar state law claims based on alleged patent misuse.[3]

*Third*, Defendants say the facts in the two actions differ because, in Nevada, Dawgs inserted allegations of claimed wrongful conduct post-dating this Court's 2012 stay order. Opp. at 11-12. This does not change the fact that Dawgs' counterclaims in Colorado and claims in Nevada are predicated on common alleged facts. And Defendants cannot be heard to cry foul that—after they sought and obtained a stay—new facts came to light that they contend to be relevant to the same claims. That is part of the bargain when a party seeks a stay pending adjudication of a related issue by another court or agency.[4] It is not a license to replead the same claims in another forum and evade the stay that Dawgs requested. The proper course here is, as this Court already ruled, to assess the state of the pleadings after the PTO completes its work.

---

[3] Defendants also say Dawgs was free to bring antitrust claims in Nevada because its Colorado counterclaims were permissive (Opp. at 12-13), but this is not true. *See* Fed. R. Civ. P. 13(a)(1)(A) (claim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of" an existing claim). But this is beside the point: because Dawgs elected to file counterclaims here, the first-to-file rule bars it from pursuing the same claims elsewhere.

[4] Defendants assert that "'new' claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action." Opp. at 10 n.28 (citing *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006)). The stray citation from *Hatch* was made in an entirely different context: that court was construing the law of *claim preclusion* to decide when new claims are barred by a prior judgment. The court did not discuss the first-to-file rule at all.

Finally, Defendants' attempted analogy to *Span-Eng Associates v. Weidner*, 771 F.2d 464, 467, 468 (10th Cir. 1985), fails. Opp. at 7. There, when a district court refused to allow the plaintiffs to add six *new* parties to an action, the plaintiffs filed a new suit against those parties elsewhere. *Span-Eng*, 771 F.2d at 467. The Tenth Circuit reversed an order enjoining the new action, as plaintiffs' right to proceed against *six separate* parties could not be denied unless the second action would pose a "clear case of hardship or inequity." *Id.* at 468. The only issue was whether a "party's right to proceed against *third parties*" could be curtailed, which involves a different standard from when a party seeks to enjoin a "later-filed action involving the *same parties* in another forum." *Id.* at 467 n.5 (emphasis added). Crocs is not seeking to enjoin Defendants from proceeding against a *third party*, but instead to enjoin the Nevada Action *against Crocs*, as well as other conduct in violation of this Court's stay.

## II. ALL EQUITABLE FACTORS WEIGH IN FAVOR OF ENJOINING DEFENDANTS FROM PURSUING DUPLICATIVE LITIGATION.

While Defendants concede that "equitable" considerations are germane to the first-to-file test (Opp. at 3), these factors only help Crocs. This is because "a court should depart from the 'first-filed' rule only in 'extraordinary circumstances' involving inequitable conduct, bad faith, anticipatory suits or forum shopping." *Miller v. Unterreiner*, No. 13-CV-00365-REB-CBS, 2013 WL 6152362, at *6 (D. Colo. Nov. 22, 2013). Defendants fails to show that an exception applies here; rather, all equitable factors weigh in favor of injunctive relief.

### A.   Defendants' Allegations Of Bad Faith Are Unfounded.

Contentions that Crocs's motion should be denied due to "bad faith" fail. Defendants present neither a standard for what "bad faith" means here, nor evidence under any standard. *First*, the claim that Crocs is using the stay order in this action as a "sword and a shield," (Opp.

at 3) defies common sense. *Dawgs* obtained a stay over Crocs's objection, and violated it by filing the Nevada Action. If anyone is playing fast and loose to gain an unfair advantage, it is Dawgs. *Second*, Defendants say Crocs "forced" Dawgs into "an impossible discovery schedule" and conducted an "active and aggressive course of discovery" in Nevada. Opp. at 1-2, 14. Crocs did not "force" anything upon Dawgs. Applying the Local Rules, the Magistrate Judge ordered the parties to complete discovery by March 16, 2015. Nev. Action, ECF No. 28. Dawgs's counsel admitted ignorance of the local rules, necessitating its "emergency" motion to vacate the case schedule and avoid a default. Nev. Action ECF No. 44 at 5; *see also id.* at 17 (Magistrate Judge noting Dawgs's "noncompliance with the local rules"). *Third*, Defendants' assertion that Crocs engaged in "flagrant patent misuse" (Opp. at 13) confuses the merits of their claims (which are not presently at issue) with the merits of this motion.

### B.     Crocs Has Not Waived Its Right To Seek Relief From Duplicative Lawsuits.

None of Defendants' waiver arguments has merit, either. Crocs did not waive its right to enjoin duplicative litigation by seeking to dismiss the Nevada Action before moving here. *See* Opp. at 2, 5, 11. When the Nevada Court had not ruled on the motions or set a hearing date after four months (it still has not to this day), Crocs inquired if the Nevada Court would consider an anti-suit motion an attack on its jurisdiction. It did not, as Nevada has "one of the highest weighted caseloads in the country" and it is unclear when the motions will be heard. *Id.*, ECF No. 44 at 11-18. After receiving the green light, Crocs promptly sought relief here.

Crocs also has not "actively and aggressively participated in the Nevada action." *See* Opp. at 5. Rather, until the case was stayed, Crocs obeyed the Court's orders and the local rules, which *required* that it conduct discovery—a point the Magistrate Judge recognized. Nev. Action

ECF No. 44, at 17 (responding to Dawgs's counsel that Crocs conducted discovery "because I entered a discovery plan and scheduling order . . . when you [Dawgs] didn't do what you were supposed to do which is initiate the process"). Defendants cite no authority that following court orders causes a forfeiture of the right to enjoin a duplicative suit.[5]

Defendants next claim waiver because Crocs did not also move to dismiss under Rule 12(b)(3) or to transfer or stay the Nevada action. Opp. at 2, 4. If Defendants were correct, a party could *never* seek an anti-suit injunction in the first forum, and would be limited to seeking relief from the second forum exclusively. This proposition is contrary to the Tenth Circuit's statement that a court having jurisdiction of a first-filed action can "preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another Federal District Court." *Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir. 1950).[6] Courts often grant precisely the relief that Crocs now seeks. *See, e.g.*, *Shannon's Rainbow*, 683 F. Supp. 2d at 1279 (issuing injunctions without regard to Rule 12(b)(3)).

### C. Defendants Will Suffer No Prejudice If The Court Enforces Its Order.

Defendants claim that if this Court enforces its stay, "Dawgs would be highly prejudiced by being forced to wait any number of years before reaching the merits of its claims[.]" Opp. at

---

[5] Defendants' claim that Crocs is "forum-shopping" by raising the same "duplicative action" argument in both actions contorts the term beyond recognition. Opp. at 6. Crocs has always sought to have its claims (and Defendants' counterclaims) adjudicated in this Court.

[6] Defendants cite *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1162 (10th Cir. 1982), but this case lends no support to their waiver theory. In *Hospah* the defendants in an antitrust action in Texas sought declaratory relief in New Mexico that they did not violate the antitrust laws, and moved to enforce a venue selection clause. *Id.* at 1162-63. The Tenth Circuit reversed the New Mexico court's order enjoining the Texas litigation, holding that the defendants should have sought relief in the first-filed Texas action. *Id.* at 1164-65. *Hospah* upholds the first-to-file rule, and only helps Crocs, not Defendants.

15. This ignores that *Dawgs* asked for a stay of this action, and thus any delay flows from its own request. The related claim that Dawgs's petitioning rights will be "silenced," Opp. at 15, is illusory: Dawgs can adjudicate its counterclaims once the stay is lifted.

Defendants also claim the Nevada case has developed "substantially further" than the Colorado case. Opp. at 2, 10 n.29. Not so.[7] The Nevada Court has not ruled on Crocs's motions to dismiss, the parties exchanged only initial discovery requests, no documents were produced and Dawgs failed to provide expert reports by the court-ordered deadline. *See* Nev. Action, ECF No. 39 at 2 (Dawgs's status report of January 15, 2015) (admitting that "Plaintiff's experts were unable to draft and produce 'reports'"). And, of course, after Dawgs failed to comply with the Court's Scheduling Order in Nevada, the Court then issued a stay of all proceedings, effectively halting the Nevada matter in order to allow that Court, or this Court, to assess the issue of Dawgs' violation of the first-to-file rules.

Ultimately, *Crocs* will be prejudiced if this Court allows Defendants to disobey the stay order. If the Nevada Action ultimately proceeds, there is a risk of inconsistent decisions, one of the main rationales behind the first-to-file rule. *See TecServe v. Stoneware, Inc.*, No. 2:08-CV-144 TS, 2008 WL 3166653, at *5 (D. Utah Aug. 5, 2008) (noting that applying first-to-file rule would prevent "inconsistent rulings"); *Otter Prods.*, 2014 WL 1213475, at *4 (first-to-file rule "seeks to 'avoid conflicting decisions'") (citation omitted). And now that the PTO has started its review of Crocs's '789 patent, it should complete its work before the parties resume litigation.

---

[7] The cases cited by Defendants in this regard are distinguishable. *See, e.g.*, *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (second litigation had "progressed to a judgment on the merits, an appeal, and a remand").

### D. This Court Should Grant Relief Regardless Of The Nevada Court's Ruling.

This Court should not await a decision by the Nevada Court before applying the first-to-file rule. *See* Opp. at 2, 4. Tenth Circuit precedent unambiguously states that the court in the *first-filed* action has the right to "enjoin[] proceedings involving the same issues and parties, begun thereafter in another Federal District Court." *Hughes Tool Co.*, 180 F.2d at 101. And with respect to any concern this Court may have regarding affording comity to the Nevada Court, the Magistrate Judge in Nevada all but invited Crocs to file this motion. Finally, relief from this Court is necessary should Dawgs seek to amend its Nevada complaint, or should Dawgs and DDD file yet *another* lawsuit elsewhere to circumvent this Court's stay.

### E. Defendants' Alternative Request To Reopen This Case Should Be Denied.

As a last resort, Defendants ask that the Court transfer the Nevada Action here and lift the stay, as "the primary work of the PTO" with respect to the '789 patent is allegedly accomplished. Opp. at 3, 14-15. Again, this request is only more evidence that it is Dawgs that is playing fast and loose with the record. The PTO has issued a *non-final* Office Action concerning the single claim of the '789 patent, which the PTO found to be subject to a later priority date.[8] In 2012, Dawgs insisted a stay was necessary until PTO proceedings reached *finality*. ECF No. 118 at 7, 10, 12-13 (arguing that the Court should "enable the USPTO to complete its review of the '858

---

[8] Defendants say, without providing a citation, that the PTO found Crocs guilty of "concealment and fraud" by not disclosing prior sales of its shoes. Opp. at 12. Dawgs' assertions are entirely fabricated. The PTO found no fraud or withholding. Instead, it initially indicated that the '789 Patent was entitled to a later priority date due to minor differences between the original application and the final design of the '789 patent. ECF No. 143-1, at 38-45. As a result, the PTO found that certain evidence of sales of Crocs's shoes less than one year before the original priority date would fall more than one year before the new priority date. *Id.* This same evidence was at issue in the ITC matter, and the PTO's recent conclusion is directly contrary to the ITC's 2008 determination that Crocs is entitled to the earlier priority date. ECF No. 144-1, at 54.

patent and the '789 patent" and "close the matter pending the finality" of PTO proceedings). Dawgs's aim is apparent: now that there is an *initial* decision at the PTO, Dawgs wants to lift the stay without waiting for PTO proceedings to be completed. This is no more proper than declaring the team that receives the opening kickoff the winner of the Super Bowl.[9]

### III. CONCLUSION

All factors support an injunction to uphold the first-to-file rule, and none weigh against. *See Keymark Enters., LLC v. Eagle Metal Prods.*, No. 08-CV-00662-REB-MEH, 2008 WL 4787590, at *3 (D. Colo. Oct. 30, 2008) ("[T]he prevailing standard is that the first-filed rule should apply in the absence of compelling circumstances.") (citation omitted). The Court should enjoin Dawgs and DDD from pursuing duplicative lawsuits in any forum, including Nevada, and should allow Crocs to seek sanctions against Dawgs for intentionally violating this Court's stay.

Dated: March 20, 2015

Respectfully submitted,

*/s/ Michael A. Berta*
Michael A. Berta
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100
Facsimile: 415.471.3400
michael.berta@aporter.com

*Attorneys For Plaintiff, CROCS, INC.*

---

[9] Without providing legal support, Defendants ask for sanctions against Crocs for filing this motion. Opp. at 15. While the request lacks any merit, Defendants have also ignored the local rules regarding motion practice, for which the Court should disregard their request.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March, 2015, I electronically filed the foregoing REPLY IN SUPPORT OF CROCS'S MOTION TO ENJOIN AND PREVENT VIOLATIONS OF STAY BY DAWGS AND DDD; REQUEST FOR LEAVE TO FILE MOTION FOR SANCTIONS AGAINST DAWGS with the Clerk of the Court using the ECF/CM electronic filing system, which will send an electronic copy of this filing to the following counsel of record:

**Michael G. Martin**
Hamil Martin LLC
140 East 19th Avenue
Suite 600
Denver, CO 80203
303-830-1383
Fax: 303-830-1057
Email: mmartin@hamilmartin.com

**Darren J. Lemieux**
Lewis Roca Rothgerber LLP
1200 Seventeenth Street
Suite 3000
Denver, CO 80202-5835
Phone: 303-623-9000
Fax: 303-623-9222
Email: dlemieux@lrrlaw.com

*/s/ Michael Berta*
Michael Berta