IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

---

Civil Action No. 06-cv-00605-PAB-KMT
(Consolidated with Civil Action No. 12-cv-02096-PAB-KMT)

---

CROCS, INC.,

    Plaintiff,

v.

CHENG'S ENTERPRISES, INC., et al.,

    Defendants.

---

CROCS, INC.,

    Plaintiff,

v.

CVS CAREMARK CORP., a Delaware corporation,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Enjoin and Prevent Violations of Stay by Dawgs and DDD; Request for Leave to File Motion for Sanctions [Docket No. 143] and the Administrative Motion to Reopen Case for Purpose of Hearing Crocs's Motion to Enjoin and Prevent Violations of Stay by Dawgs and DDD; Request for Leave to File Motion for Sanctions [Docket No. 142] filed by Crocs, Inc. ("Crocs").

**I. BACKGROUND**

On March 31, 2006, Crocs filed a complaint (the "ITC complaint") against Double Diamond Distribution, Ltd. ("DDD") and other defendants in the present case with the United States International Trade Commission ("ITC"). Docket No. 26 at 2, ¶ 3. Crocs filed the ITC complaint alleging, among other things, that DDD unlawfully imported and sold shoes bearing the trade name "Dawgs" infringing on two patents assigned to Crocs: U.S. Patent No. 6,993,858 B2 ("'858 patent") and U.S. Patent No. D 517,789 ("'789 patent"). Docket No. 26 at 2-3. On April 3, 2006, Crocs filed this case against DDD and other defendants alleging infringement of the '858 and '789 patents. Docket No. 1 at 5, 7, ¶¶ 21, 24. On May 16, 2006, this case was administratively closed to allow the case before the ITC to proceed pursuant to 28 U.S.C. § 1659. Docket No. 31.[1]  The proceeding before the ITC, including various appeals, lasted for approximately six years. On October 1, 2011, the ITC ruled:

> The Commission has determined that the appropriate form of relief is both: (1) a general exclusion order prohibiting the unlicensed entry of foam footwear that infringe one or more of (i) claims 1-2 of the '858 patent, and (ii) the claimed design of the '789 patent; and (2) cease and desist orders prohibiting Double Diamond, Effervescent, and Holey Soles from conducting any of the following activities in the United States: importing, selling, marketing, advertising, distributing, offering for sale, transferring (except for exportation), and soliciting U.S. agents or distributors for, foam footwear that infringe one or more of (i) claims 1 or 2 of the '858 patent, and (ii) the claimed design of the '789 patent.

*In the Matter of Certain Foam Footwear*, USITC Inv. No. 337-TA-567, USITC Pub. No. 4260, 2011 WL 5997932, at *3 (Oct. 1, 2011).

---

[1] The case was periodically reopened to enter consent judgments against defendants who settled with Crocs. *See, e.g.*, Docket Nos. 42-43.

2

On May 9, 2012, the Court reopened the present case. Docket No. 75. On August 3, 2012, DDD and U.S.A. Dawgs, Inc. ("Dawgs") filed a request for inter partes reexamination of the '858 and '789 patents with the United States Patent and Trademark Office ("PTO"). Docket No. 118 at 1-2. On August 6, 2012, Crocs filed an amended complaint, asserting claims against Cheng's Enterprises, Inc., Effervescent, Inc., Holey Soles Holdings, Ltd., DDD, and Dawgs for infringement of the '858 and '789 patents. Docket No. 104 at 8-9. On August 31, 2012, Dawgs filed an answer asserting counterclaims against Crocs. Dawgs asserted counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability of the '858 and '789 patents, alleging, among other things, that Crocs engaged in inequitable conduct before the PTO in the prosecution of the '858 and '789 patents. Docket No. 119 at 11-15. Dawgs asserted counterclaims against Crocs for violations of the Sherman Act, 15 U.S.C. § 2, alleging, among other things, that Crocs engaged in patent misuse, inequitable conduct, and anticompetitive conduct. Docket No. 119 at 15-16. Dawgs also asserted a claim for deceptive trade practices, alleging that Crocs made fraudulent and misleading statements to the PTO and pursued aggressive litigation regarding the '858 and '789 patents, and a claim for intentional interference with business advantage. *Id.* at 16-18. On August 31, 2012, Dawgs, DDD, and Effervescent, Inc. filed a motion to stay pending the inter partes reexaminations. Docket No. 118 at 12-13. On October 1, 2012, Crocs filed a motion to dismiss Dawgs' counterclaims. Docket No. 131. On November 13, 2012, the Court granted Dawgs' motion to stay and administratively closed this case. Docket No. 139. Dawgs did not respond to Crocs' motion to dismiss, but reserved its right to do so if or when the administrative closure was lifted. Docket No. 138 at 1. On

November 29, 2012, this case was consolidated with *Crocs, Inc. v. CVS Caremark Corp.*, No. 12-cv-02096-PAB-CBS. Docket No. 140. The consolidated action remains administratively closed.

The PTO terminated the reexamination of the '858 patent. Docket No. 143-1 at 31-32. In 2013, the PTO rejected the single claim of the '789 patent as unpatentable, *id.* at 43, and issued a non-final rejection of the claim of the '789 patent. *Id.* at 59. Crocs responded to the PTO's rejection of the '789 patent, and the '789 proceedings remain pending. Docket No. 143 at 5.

In April 2014, Dawgs contacted Crocs, stating that it intended to file suit against Crocs in Nevada and to reopen this case unless the parties could privately settle their dispute over Crocs' alleged patent misuse. Docket No. 143-1 at 62. On September 10, 2014, Dawgs filed suit against Crocs in the United States District Court for the District of Nevada (the "Nevada case"), which was assigned to Judge Richard F. Boulware II. *U.S.A. Dawgs, Inc. v. Crocs, Inc.* ("*Dawgs*"), No. 14-cv-01461-RFB-PAL (D. Nev. Sep. 10, 2014). Dawgs asserted claims against Crocs for monopoly and attempted monopoly in violation of the Sherman Act, alleging that Crocs acquired a monopoly in the molded ventilated clog-type footwear market by engaging in patent misuse, both prior to and subsequent to the issuance of the '858 and '789 patents, and by bringing baseless lawsuits. *Id.* (Docket No. 1 at 12-20). Dawgs also asserted a claim for unlawful exclusionary arrangements in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, alleging that Crocs engaged in anticompetitive conduct by inducing potential purchasers of Dawgs' products not to deal with Dawgs. *Id.* (Docket No. 1 at

20-23). In addition, Dawgs asserted state law claims against Crocs for intentional interference with prospective economic advantage and actual contractual relationships and unfair trade practices, alleging that Crocs engaged in anticompetitive conduct by inducing potential purchasers of Dawgs' products not to deal with Dawgs. *Id.* (Docket No. 1 at 23-27).

On September 17, 2014, Crocs filed a motion to dismiss, arguing that Dawgs' state law claims were barred by Nev. Rev. Stat. § 41.660. *Id.* (Docket No. 5 at 6). On October 3, 2014, Crocs filed a second motion to dismiss (the "second motion to dismiss"), arguing that Dawgs' claims in the Nevada case were duplicative of its counterclaims in the present case and that Dawgs' complaint should be dismissed in its entirety "in favor of allowing the first-filed Colorado Action to proceed." *Id.* (Docket No. 13 at 15-17). Crocs argues that, in the alternative, Dawgs failed to state a claim. *Id.* at 18. In response to the second motion to dismiss, Dawgs conceded that it is willing to dismiss its "non-patent counterclaims in the Colorado action to avoid the appearance of splitting claims. Such a dismissal would be proper because Dawgs' antitrust and tort claims are *not* compulsory counterclaims to Crocs' patent infringement claims." *Id.* (Docket No. 16 at 13-14). Dawgs has not, however, moved to dismiss its counterclaims in this case. Dawgs argues that, by filing its first motion to dismiss, Crocs waived its right to argue that Dawgs' claims were duplicative. *Id.* (Docket No. 16 at 14-15). Dawgs contends that, because the Nevada case and this case do not have identical parties and claims, the rule prohibiting duplicative claims does not apply. *Id.* (Docket No. 16 at 15-17). Both Crocs' motions to dismiss in the Nevada case are fully briefed.

On November 25, 2014, the assigned magistrate judge in the Nevada case entered a scheduling order. *Id.* (Docket No. 28). Dawgs filed a motion to vacate the scheduling order, *id.* (Docket No. 33), and, on January 22, 2015, the magistrate judge stayed discovery pending Judge Boulware's ruling on Crocs' motions to dismiss. *Id.* (Docket No. 43). At the January 22, 2015 hearing before the magistrate judge, Crocs and the magistrate judge discussed Crocs' intention to file the present motions in this Court. *Id.* (Docket No. 44 at 18). Judge Boulware has scheduled a hearing and oral argument on Crocs' motions to dismiss for September 23, 2015. *Id.* (Docket No. 46).

On February 13, 2015, Crocs filed the present motions. Docket Nos. 142 and 143. Crocs' motion to reopen this case seeks to reopen this case for the limited purpose of ruling on its motion to enjoin. Docket No. 142. Crocs' motion to enjoin asserts that the Nevada case should be enjoined pursuant to the "first to file" rule and that Crocs should be granted leave to file a motion for sanctions against Dawgs for, among other things, filing the Nevada case in contravention of the Court's order administratively closing this case. Docket No. 143 at 15-16.

## II. ANALYSIS

The first to file rule applies "when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit." *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (unpublished); *see also Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (recognizing general rule that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"). The rule is a discretionary doctrine, resting

on "principles of comity and sound judicial administration" and is concerned with avoiding duplicative litigation, rulings which impinge on the authority of sister courts, and piecemeal litigation. *Cadle Co v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). As a result, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.*; *accord Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010).

Courts generally hold that the threshold determination under the first to file rule requires analysis of three considerations: "(1) the chronology of actions; (2) the similarity of parties; and (3) the similarity of issues." *Nash*, 724 F. Supp. 2d at 1167; *see also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). The parties to the two actions need not necessarily be identical, and "the issue must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues." *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278-79 (D. Utah 2010). Even if all considerations weigh in favor of the dispute being resolved in the first filed court, equitable exceptions to the general rule may apply, such as when the balance of convenience favors the second filed action or when special circumstances – for example, the first filing party engaging in forum shopping or anticipatory filing – warrant giving priority to the second filed suit. *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 276 (2d Cir. 2008).

The Tenth Circuit does not appear to have directly considered the appropriate roles of the first and second filed courts in applying the first to file rule. Courts

confronted with the issue have suggested that the proper course is for the second filed court to make the initial determination of whether the two actions substantially overlap. *See Nash*, 724 F. Supp. 2d at 1166 (citing *Cadle*, 174 F.3d at 605). If a second filed court decides that question in the affirmative, it may stay the case, transfer it to the first filed court, or, in rare cases, dismiss the case entirely; it then falls to the first filed court "to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle*, 174 F.3d at 606 (quotations omitted); *see also Nash*, 724 F. Supp. 2d at 1167 ("This general rule of deference includes deferring to first-filed courts for the application of any equitable exceptions to the first to file rule, once the second-filed court has determined that there is sufficient overlap between the two cases."). The Court finds this approach prudent and consistent with the principles of comity and proper judicial administration. *See Chavez v. Dole Food Co., Inc.*, --- F.3d ----, 2015 WL 4732386, at *4 (3d Cir. Aug. 11, 2015) (approving second filed court's dismissal of second filed cases in part due to plaintiffs' admission that second filed cases were duplicative lawsuits); *Burger v. Am. Maritime Officers Union*, 1999 WL 46962, at *2 (5th Cir. 1999) (approving second filed court's determination that first filed case and second filed case raised substantially the same issues); *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy"); *Thomas & Betts Corp. v. Robroy Indus., Inc.*, 2015 WL 4718892, at *6 (C.D. Cal. 2015) (concluding that first to file rule applied to second filed action and staying case until first filed court decided pending motion to transfer case to second filed court). *Bashiri v.*

*Sadler*, 2008 WL 2561910, at *2 (D. Ariz. June 25, 2008) ("this court must determine whether, as the court with the second-filed suit, it should defer to the Illinois court under the first-to-rile rule" (citing *Alltrade*, 946 F.2d at 622)); *Nash*, 724 F. Supp. 2d at 1167.[2]

Crocs' motion requests that this Court undertake the initial determination of whether this case and the Nevada case substantially overlap. However, Crocs has also raised this issue in the second motion to dismiss pending before the Nevada court. The Court finds that two considerations weigh in favor of allowing the Nevada court to decide Crocs' second motion to dismiss. First, as discussed above, the Court agrees with the reasoning of those courts holding that the second filed court should make the threshold determination as to the first to file rule. *See Cadle*, 174 F.3d at 603 (discussing first to file rule as granting second filed court discretion not to hear the case). The Court finds no reason to depart from that approach in this case. Judge Boulware has scheduled a hearing and oral argument on Crocs' motions. *Dawgs* (Docket No. 46). Although the Nevada magistrate judge did not expressly prohibit Crocs from concurrently seeking relief from this Court, the magistrate judge did not, contrary to Crocs' assertions, attempt to speak for Judge Boulware on the issue of which court should make the threshold determination of substantial similarity. *See id.*

---

[2] Second filed courts do not always follow this approach, reasoning that "it is the first-filed court that should apply the first-to-file rule." *See, e.g.*, *Wynne v. Commemorative Air Force*, 2006 WL 2486562, at *2 (S.D. Ohio Aug 28, 2006); *see also Daimler Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001) ("It is also more appropriate, as a matter of judicial comity, for the court of first filing to determine whether to retain or relinquish jurisdiction, rather than leave it to the court of later filing to make that decision." (collecting cases)). However, it is not clear that such decisions recognize the distinction between the second filed court making the initial determination as to substantial overlap and then deferring to the first filed court for its determination of how the first-to-file rule should be applied to both actions.

(Docket No. 44 at 18:12-16) ("[W]hat you do in Colorado is up to you. I just need to have a mechanism to keep this case moving forward on this Court's docket and [do] not speak for the District Judge on what he wants to do with the pending motions to dismiss."). Under the circumstances, the Court concludes that the proper course is to await Judge Boulware's ruling on whether the Nevada action is duplicative of this case.

Second, even assuming that this Court were to decide, which it does not, that this case and the Nevada case substantially overlap, the remedy Crocs requests, namely, that this Court enjoin Dawgs and DDD from pursuing the Nevada action, is untenable under these circumstances. "'When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases.'" *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976)); *see also Smith v. SEC*, 129 F.3d 356, 361-62 (6th Cir. 1997) ("absent some particular reason to favor one forum, a federal court does not have the power to destroy the jurisdiction of a sister court for the sole purpose of preserving its own"; "it requires clear justification before a federal court may interfere with the jurisdiction of another federal court" (quotation omitted)). The Court is not persuaded that this is an unusual case. In so concluding, the Court recognizes that other first filed courts in the Tenth Circuit have enjoined the plaintiffs in second filed proceedings under similar circumstances. *See, e.g.*, *Victor Co., L.L.C. v. Ortho Organizers, Inc.*, 932 F. Supp. 261, 263 (D. Kansas 1996) (citing *Chicago Pneumatic*

*Tool Co. v. Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir. 1950) ("A Federal District Court which first obtains jurisdiction of parties and issues may preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another Federal District Court."); *Shannon's Rainbow*, 683 F. Supp. 2d at 1280.  Such cases do not, however, account for or otherwise discuss the possibility of seeking relief in the second filed court.  As one court put it, the normal course is for the second filed court to exercise its discretion to transfer, stay, or dismiss the second action and

> considerations of comity in the case bar counsel against enforcement of the first-filed rule via an injunction issued by the first court against the second court.  Plaintiff cites no good reason why it does not first ask the Kansas district court in the second filed action to stay proceedings therein in deference to the first-filed rule.

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Payless Shoesource, Inc.*, 2012 WL 3277222, at *7-*9 (C.D. Cal.  Aug. 9, 2012).  Crocs does not argue that it cannot properly litigate these issues in the Nevada case, and no basis exists for so concluding, which counsels heavily against granting Crocs the relief it seeks.  *See Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1132 (11th Cir. 2005) ("Generally, if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law."); 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2942 (3d ed. 2015) ("if the party seeking the injunction could raise the same issues in the other proceeding, the court typically will take the position that the party has an adequate alternative remedy and does not need injunctive relief").  The Court is not therefore persuaded that, as a general matter, the Tenth Circuit would hold that mere invocation

of the first to file rule constitutes an unusual case warranting enjoining the plaintiffs from proceeding in another federal court, see *Chilcott Portfolio Mgmt.*, 713 F.2d at 1484,[3] and Crocs does not establish that this case is particularly unusual.

Crocs argues that this Court should not concern itself with principles of comity because the Nevada magistrate judge implicitly approved its decision to pursue relief in this Court. Docket No. 143 at 14-15. As noted above, Crocs overstates the magistrate judge's comment on this issue and Crocs offers no other persuasive reason for concluding that principles of comity weigh in its favor. Crocs argues that, by filing the Nevada case, Dawgs disobeyed this Court's order administratively closing the case, Docket No. 159 at 1, and, as a result, that the Court should enjoin the Nevada proceeding to protect its own jurisdiction. *Id.* at 7. Assuming, without deciding, that Crocs accurately characterizes Dawgs' conduct, such an argument does not overcome the fact that the relief Crocs seeks is more appropriately pursued in the Nevada case. Crocs argues that relief from this Court is necessary in the event Dawgs amends its complaint in the Nevada case or files another lawsuit, but such an argument is speculative at best. Crocs otherwise fails to establish extraordinary circumstances justifying the relief it seeks. *Cf. In re Checking Account Overdraft Litig.*, 859 F. Supp.

---

[3]Despite Crocs' arguments to the contrary, *Hospah* does not counsel in favor of a different result. *See* Docket No. 159 at 7 n.6. In *Hospah*, plaintiffs in a second filed declaratory judgment action successfully convinced the second filed court to enjoin defendants in the second filed case from proceeding with the first filed case. 673 F.2d at 1162-63. The Tenth Circuit held that the proper procedure for plaintiffs in the second filed case would have been to file a motion to dismiss for improper venue or a motion to transfer in the first filed court and, as a result, directed the second filed court to dismiss its injunction of the first filed case. *Id.* at 1164. *Hospah* therefore supports the proposition that enjoining a proceeding pending in another court is inappropriate where parties have the ability to seek relief in that court.

2d 1313, 1325 (S.D. Fla. 2012) (enjoining later filed action that undermined pending multi-district litigation). Thus, even if the Court were to undertake analysis of whether this case and the Nevada case substantially overlap, an affirmative finding on that issue would not, by itself, justify enjoining the Nevada case. Crocs does not suggest an alternative remedy. Crocs' motion to enjoin the Nevada proceeding is therefore denied.

Crocs also seeks leave to file a motion for sanctions against Dawgs for violating the Court's stay. Docket No. 143 at 15. Crocs' request is somewhat unclear. Crocs does not explain why it requires leave to file a motion for sanctions. This aspect of Crocs' motion is denied.[4]

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Crocs' Motion to Enjoin and Prevent Violations of Stay by Dawgs and DDD; Request for Leave to File Motion for Sanctions [Docket No. 143] is **DENIED** and Crocs' Administrative Motion to Reopen Case for Purpose of Hearing Crocs's Motion to Enjoin and Prevent Violations of Stay by Dawgs and DDD; Request for Leave to File Motion for Sanctions [Docket No. 142] is **DENIED** as moot.

DATED September 21, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[4] The Court need not reach the parties' remaining arguments in resolving the present motion.