IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-KMT
    (Consolidated with Civil Action No. 16-cv-02004-PAB-KMT)

---

Civil Action No. 06-cv-00605-PAB-KMT

CROCS, INC.,

    Plaintiff,

v.

EFFERVESCENT, INC.,
HOLEY SOLES HOLDINGS, LTD.,
DOUBLE DIAMOND DISTRIBUTION, LTD., and
U.S.A. DAWGS, INC.,

    Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC. and
DOUBLE DIAMOND DISTRIBUTION, LTD.,

    Plaintiffs,

v.

RONALD SNYDER,
DANIEL HART,
THOMAS J. SMACH,
ANDREW REES,
GREGG RIBATT,
ANDREW REDDYHOFF,
GEORGE B. BOEDECKER, JR.,
LYNDON HANSON,
DONALD LOCOCO,
RAYMOND CROGHAN,
RONALD FRASCH,
MICHAEL MARGOLIS,
JEFFREY LASHER,
MICHAEL E. MARKS,
PRAKASH MELWANI,

JOHN P. MCCARVEL,
ERIK REBICH, and
SARA HOVERSTOCK,

    Defendants.

**ORDER**

This matter is before the Court on Crocs, Inc.'s Motion for Sanctions Under Rule 11 and the Court's Inherent Powers [Docket No. 409] and Defendants' Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927 and the Court's Inherent Powers [Docket No. 429].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[2]

Plaintiff Crocs, Inc. ("Crocs") filed Case No. 06-cv-00605-PAB-KMT on April 3, 2006, alleging, *inter alia*, infringement of United States Patent Nos. 6,993,858 (the "'858 patent") and D 517,789 (the "'789 patent"). Docket No. 1.

On May 12, 2006, defendants Effervescent, Inc., Holey Soles Holdings, Ltd., and former defendant Collective Licensing International, LLC moved to stay this case pending proceedings under Section 337 of the Tariff Act of 1930 before the International Trade Commission ("ITC"). Docket No. 26. The Court granted the motion on May 16, 2006 and administratively closed the case. Docket No. 31. In 2012, during

---

[1] Dawgs requested oral argument in response to both motions. Docket Nos. 434, 475. The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2] The following facts are undisputed unless otherwise indicated.

a brief reopening of the case, Crocs added one of the Dawgs[3] entities as a named defendant and Dawgs asserted counterclaims, Docket No. 119, before the action was stayed pending a reexamination of the patents-in-suit. Docket No. 137. In February 2016, Dawgs filed motions to reopen the case and lift the stay, Docket Nos. 167, 168, which the Court granted. Docket No. 184. On May 31, 2016, Dawgs filed its first amended answer to the amended complaint and counterclaims against Crocs, Scott Seamans, and John and Jane Does 1 through 100. Docket No. 209.[4] On June 28, 2016, Crocs and Seamans moved to dismiss Dawgs' counterclaims. Docket Nos. 227, 231.

On August 5, 2016, Dawgs filed its complaint in Case No. 16-cv-2004 ("the 2016 lawsuit"). Case No. 16-cv-02004, Docket No. 1. The 2016 lawsuit named eighteen individual defendants ("Individual Defendants"), all of whom are current or former employees of Crocs. *Id.* at 10-19, ¶¶ 9-14.

Dawgs' counterclaims in this case and the complaint in the 2016 lawsuit allege that Crocs is aware that the '858 and '789 Patents are unenforceable because "the

---

[3]For simplicity, the Court adopts the convention of the parties in the underlying motions and refers to Double Diamond Distribution, Ltd. and U.S.A. Dawgs, Inc., collectively as "Dawgs."

[4]On February 24, 2017, Crocs filed a second amended complaint, adding claims for infringement of U.S. Patent No. D 632,465. Docket No. 473. On March 10, 2017, Dawgs filed a second amended answer and counterclaims. Docket No. 487. Crocs' motion for sanctions addresses Dawgs' first amended counterclaims. *See* Docket No. 409 at 3-10. The second amended counterclaims added additional factual detail, but did not substantially modify Dawgs' legal theories. *Compare* Docket No. 209 at 39-83, ¶¶ 75-262 *with* Docket No. 487 at 49-108, ¶¶ 122-347. Accordingly, in addressing Crocs' motion for sanctions, the Court refers to Dawgs' first amended counterclaims. *See* Docket No. 209.

patents identif[y] incorrect inventorship and [were] obtained by withholding material information from the patent examiner." Docket No. 209 at 36, ¶ 51; Case. No. 16-cv-02004, Docket No. 1 at 21-22, ¶ 20. Dawgs claims that Crocs has improperly pursued claims related to its patents in this court and before the ITC. *See* Docket No. 209 at 32, ¶¶ 57-58. Dawgs further claims that the Individual Defendants "directed, participated in, sanctioned, ratified, or acquiesced" in the decision to sue Dawgs and to continue the 2006 lawsuit through the present. Case No. 16-cv-02004, Docket No. 1 at 10-18, ¶¶ 9-13. On January 27, 2017, the Court consolidated Case No. 06-cv-00605 with Case No. 16-cv-02004. Docket No. 426.

On January 13, 2017, Crocs filed a motion for sanctions alleging that Dawgs' counterclaims are premised on false statements and barred legal theories. Docket No. 409. On January 30, 2017, the Individual Defendants filed a motion for sanctions based on similar grounds. Docket No. 429.

On March, 31, 2017, the Court granted Crocs' motion to dismiss Dawgs' amended counterclaims in part. Docket No. 504. On September 25, 2017, the Court granted defendants' motion to dismiss the complaint in the 2016 lawsuit in part. Docket No. 673.

## II. ANALYSIS

### A. Federal Rule of Civil Procedure 11

Crocs and the Individual Defendants claim that sanctions under Fed. R. Civ. P. 11 are appropriate because Dawgs has made false statements to the Court and has maintained its sham litigation claim despite a Supreme Court case barring such a claim.

4

Docket No. 409 at 3-15; Docket No. 429 at 10-15. The Individual Defendants additionally argue that Dawgs' complaint in that case warrants sanctions because Dawgs has alleged personal liability against those defendants without any reasonable basis for doing so. Docket No. 429 at 6-10.

> Rule 11(b) of the Federal Rules of Civil Procedure provides that:
>
> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id*. at 11(c)(1).

Rule 11 imposes an "affirmative duty to conduct a reasonable inquiry into the facts and the law before filing" and the "applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 551 (1991). "Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015). An attorney may present a legal position that is contrary to law so long as the position "is warranted 'by a

5

nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id.* (quoting Fed. R. Civ. P. 11(b)(2)). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1090 (D. Colo. 1997) (citing *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993)).

### *1. Dawgs' False Statements*

Crocs argues that Dawgs has made five false statements in its counterclaims: first, Crocs sold the Battiston molded clog[5]; second, the '789 Patent covers the Battiston molded clog; third, the claims of the '789 Patent are "directed to" the Battiston molded clog; fourth, Battiston was an inventor of Crocs' patents; and, fifth, the U.S. Patent and Trademark Office ("PTO") has not considered certain prior art.[6] Docket No. 409 at 3-12; Docket No. 429 at 10-14.

As to the first allegedly false statement, that Crocs sold the Battiston molded clog, Dawgs has alleged that "[t]o launch their company, the founders of Crocs decided to market the exact shoe that had already been developed and was already being manufactured and distributed by [another company] since at least 2000." Docket No. 209 at 18, ¶ 20; Case No. 16-cv-02004, Docket No. 1 at 21, ¶ 20. Crocs states that this statement is false because "Crocs did not sell the Aqua Clog, but instead sold a

---

[5]Crocs refers to the shoe designed by Ettore Battiston, an Italian inventor, as the "AquaClog" while Dawgs refers to the shoe as the "Battiston Molded Clog." *Compare* Docket No. 409 *with* Docket No. 209; *see also* Case No. 16-cv-02004, Docket No. 1. The Court uses the term "Battiston molded clog" to refer to the relevant shoe.

[6]The Individual Defendants make similar claims with respect to the fourth and fifth false statements. *See* Docket No. 429 at 10-14. Accordingly, the Court considers the Individual Defendants' claims as to those allegedly false statements.

6

new shoe composed of the Aqua Clog as a base **with the addition of a Seamans-designed foam strap and rivet system**." Docket No. 409 at 4 (emphasis in original).

Dawgs responds to Crocs' assertion of falsity by providing evidence showing that Crocs planned to sell the Battiston molded clog without a strap, marketed the Battiston molded clog without a strap, and sold a version of the shoe without a strap. *See* Docket No. 434 at 6 (citing Docket Nos. 434-3, 434-4, 434-5, 434-6, 434-7). In addition, Dawgs points out that the amended complaint expressly acknowledges that Crocs sold the Battiston molded clog with a strap. *See*, *e.g.,* Docket No. 209 at 20, ¶ 25 ("The '858 patent contains diagrams and descriptions of, and claims, the Battiston Molded Clog . . . with the 'addition' of a strap."). Crocs argues that, irrespective of what the evidence cited by Crocs might show "in a vacuum," Dawgs knew that Crocs did not sell the Battiston molded clog "because the ITC Proceeding established" as much. Docket No. 481 at 4. In support, Crocs cites to evidence from the ITC proceedings, *id.,* but none of the proffered evidence unambiguously states that Crocs never sold a version of the Battiston molded clog without a strap. *See* Docket No. 481-2 at 16, pp. 137-38, ll. 25, 1-3 ("[T]hey started purchasing straps as one unit and clogs as another unit and assembled them."); Docket No. 481-3 at 3 ("[W]e made straps and clogs and shipped them to . . . Florida and later in Colorado. It was my understanding that they assembled their finished product at those locations."); Docket No. 481-4 at 3-4 (discussing Crocs' decision to only sell shoes with straps, but noting uncertainty about whether they had decided to only sell shoes with straps by July 16, 2002). The Court finds that Dawgs' allegation that Crocs sold the Battiston molded clog is based upon a

7

reasonable inquiry into the facts. Crocs has not presented evidence that, at the time Dawgs filed its counterclaims, it was unreasonable to allege such sales in light of the evidence in Dawgs' possession.

As to the second allegedly false statement, Dawgs has alleged that "[t]he shoe depicted in the '789 patent is the Battiston Molded Clog and was thus not new and inventive nor invented and designed by Seamans or by Crocs." Docket No. 209 at 22, ¶ 28; Case No. 16-cv-02004, Docket No. 1 at 27, ¶ 28. Crocs argues that this statement is "demonstrably false" and that the Battiston molded clog and the shoe described in the '789 Patent "are not the same shoe." Docket No. 409 at 5. Dawgs responds that the counterclaims provide additional context and make clear that the allegation relates to the base of the shoe. Docket No. 434 at 7-8. The counterclaims state

> The '789 patent contains diagrams of the base shoe that are substantially similar to the diagrams that were created by Ettore Battiston in 2000 and assigned from Battiston to FOAM with a strap added that serves a functional purpose and such as had previously existed for many years on a wide variety of footwear, including clogs and sandals such as the Calzuro Molded Clog, which was on sale and patented by the BIHOS Patent. The shoe depicted in the '789 patent is the Battiston Molded Clog and was thus not new and inventive nor invented and designed by Seamans or by Crocs, or even by FOAM.

Docket No. 209 at 22, ¶ 28; *see also* Case No. 16-cv-02004, Docket No. 1 at 27, ¶ 28. Dawgs' pleadings, in context, do not misrepresent the contents of the '789 Patents, and it would be improper to sanction Dawgs based on an overly literal reading of an isolated phrase in the pleadings. *Refco*, 989 F. Supp. at 1090.

As to the third allegedly false statement, Dawgs has alleged that the claims of the '858 Patent are "directed to, intended to cover, and do[] in fact cover, the Battiston

Molded Clog." See Docket No. 209 at 42, 45 ¶¶ 96, 116; Case No. 16-cv-02004, Docket No. 1 at 48, 52, ¶¶ 96, 116. Crocs argues that this statement is false because the claims of the '858 patent "unequivocally do not cover the prior art Battiston Aqua Clog." Docket No. 409 at 6. Dawgs responds that a copyright agreement executed by Battiston shows that Battiston-created designs are consistent with the claims of the '858 Patent. Docket No. 434 at 9 (citing Docket No. 434-9). Crocs argues that the copyright agreement does not clearly show that Battiston designed the shoes pictured in the agreement and that the agreement "says nothing about inventorship in patent law."[7] Docket No. 481 at 5-6. The agreement itself is opaque. It does not describe the scope of Battiston's inventions and the diagrams themselves would need to be cross-referenced with the claims of the '858 Patent in order to determine whether Dawgs' claim is true.[8] The meaning of the agreement and its import should not be decided in this motion for sanctions. It is enough for Dawgs to present materials that arguably support its claims. See US Sprint Commc'ns Co. v. Kaczmarek, 121 F.R.D. 414, 416 (D. Kan. 1988) (Rule 11 "requires inquiry, not proof") (citation omitted). It has done so and sanctions are not appropriate with respect to this allegedly false statement.

---

[7]Crocs also argues that the copyright agreement cannot meet the "single most reasonable inference" standard required to state a claim for fraud on the PTO. Docket No. 481 at 6. However, in order to allege fraud on the PTO, the evidence "must be sufficient to require a finding of deceitful intent *in the light of all the circumstances*." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (emphasis added).

[8]Crocs cites to a declaration from Battiston to demonstrate that the '858 Patent does not cover his claims. Docket No. 409 at 7 (citing Docket No. 409-5). Crocs does not explain how a declaration disclosed in January 2017 demonstrates that Dawgs' claims from 2016 were unreasonable.

9

As to the fourth allegedly false statement, Dawgs has alleged that the '789 and '858 Patents are invalid for failing to list Battiston as an inventor. *See, e.g.,* Docket No. 209 at 22, 30, 32 ¶¶ 28, 51, 58; Case No. 16-cv-02004, Docket No. 1 at 26, 36, 38, ¶¶ 27, 51, 58. Crocs and the Individual Defendants argue that this claim is baseless. Docket No. 409 at 8-10; Docket No. 429 at 10-12. Crocs, however, does not allege a specific false statement with respect to Seamans' and Battiston's relationship. *See* Docket No. 409 at 7-8. Rather, Crocs' argument is that sanctions are appropriate because Dawgs' claim is legally frivolous.

"A joint invention is the product of collaboration of the inventive endeavors of two or more persons working toward the same end and producing an invention by their aggregate efforts." *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1302 (Fed. Cir. 2010) (quoting *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 824 (D.D.C. 1967)). The Court has already held that Dawgs has failed to adequately allege a claim for joint inventorship. See Docket No. 504 at 13-14 (discussing and dismissing Dawgs' claim that the patents are invalid for failure to disclose correct inventorship). However, even if Dawgs' claim is legally inadequate, it does not warrant sanctions so long as Dawgs can present a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Predator*, 793 F.3d at 1182. While Dawgs' pleadings are clearly deficient, the Court does not find that they warrant sanctions.

As to the fifth allegedly false statement, Dawgs has alleged that

> Even if not unenforceable, both the '789 patent and the '858 patent are invalid, at least as anticipated and/or obvious, based on the prior art that the U.S. Patent Office has never had an opportunity to consider. For example, the BIHOS Patent and the associated Calzuro Molded Clog with a strap sold in the U.S. years before both the '789 patent and the '858

10

patent were filed renders both of those patents invalid, particularly in view of the scope in which Crocs has applied to those patents in asserting them.

Docket No. 209 at 60-61, ¶ 171; Case No. 16-cv-02004, Docket No. 1 at 77, ¶ 171. Thus, while Dawgs does not directly state that the PTO has not had an opportunity to consider the BIHOS Patent, Dawgs's reference to the BIHOS Patent after saying "for example" strongly implies it. Crocs and the Individual Defendants argue that the PTO has considered and rejected the BIHOS Patent on many occasions and that Dawgs itself submitted the BIHOS Patent to the PTO in its request for reexamination of the '858 Patent. Docket No. 409 at 10-11; Docket No. 429 at 12-14; *see also* Docket No. 143-1 at 10-11 ((U.S. Patent and Trademark Office Reexamination Petition Decision granting Reexamination No. 95/002,064, dated September 14, 2012 referencing "IT '068," the BIHOS Patent, as a grounds for reconsideration of the '858 Patent). Dawgs argues that the BIHOS Patent has not been submitted as a "primary reference that could serve as the basis for rejection of any claim of either patent." Docket No. 434 at 11; *see also* Docket No. 409-9 at 6 (Dawgs' response to Crocs' requests for admission noting that Dawgs submitted the BIHOS Patent in their request for inter partes reexamination of the '858 Patent, but stating that it was not submitted "as a basis of invalidity").

While Dawgs' reference to the BIHOS Patent is suggestive of something false, the Court finds that sanctions are not warranted based on Dawgs' allegation. *Refco*, 989 F. Supp. at 1090.

### 2. *Dawgs' Sham Litigation Claim*

Dawgs alleges that Crocs and the Individual Defendants have engaged in a pattern of sham litigation in attempting to enforce Crocs' patents. Docket No. 209 at 61-62, ¶ 173; Case No. 16-cv-02004, Docket No. 1 at 78-79, ¶ 173. Crocs and the Individual Defendants allege that sanctions are appropriate because the claim is foreclosed by Supreme Court precedent. Docket No. 409 at 13-15; Docket No. 429 at 14-15. Dawgs argues that its claims fit within an exception to the general rule because it has alleged a pattern of lawsuits. *See* Docket No. 434 at 14 (citing *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, No. 08-cv-00513-CMA-KMT, 2009 WL 2596493, at *11 (D. Colo. Aug. 21, 2009)).

As an initial matter, the Court agrees that Dawgs' claim is foreclosed by Supreme Court precedent. *See* Docket No. 504 at 22 (dismissing Dawgs' sham litigation claim in light of *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) ("*PRE*")); Docket No. 673 at 21-22 (same). However, the fact that Dawgs' position is contrary to law does not provide a justification for sanctions so long as the position "is warranted 'by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Predator*, 793 F.3d at 1182.

Dawgs has argued that it fits within an exception to the rule enunciated in *PRE,* where a defendant engaged in a pattern of sham litigation. *See Total Renal Care*, 2009 WL 2596493, at *11 ("Where the alleged anticompetitive conduct is a series of lawsuits intended to harass and burden a competitor, it cannot be that the offender escapes antitrust liability simply because one or two of those suits turns out to have merit.").

While the Court has rejected Dawgs' argument with respect to this exception, Docket No. 504 at 22; Docket No. 673 at 22, the Court does not find that Dawgs lacked any reasonable basis to present its sham litigation claim.

Accordingly, the Court finds that sanctions are not warranted with respect to Dawgs' sham litigation claim.

### 3. Dawgs' Pleadings in 16-cv-02004

The Individual Defendants allege that sanctions are appropriate because Dawgs has alleged personal liability against the Individual Defendants without any reasonable basis. Docket No. 429 at 6-10. Crocs argues that the complaint contains only conclusory allegations "based solely on the presence of the Defendants at Crocs." Docket No. 429 at 8. Dawgs states that it has sufficiently alleged its claims. Docket No. 475 at 10. The Court, having reviewed the complaint, finds that sanctions are not warranted.

The complaint in the 2016 lawsuit alleges that the Individual Defendants "conceived of and implemented a multi-faceted anticompetitive scheme to exclude all of Crocs' actual and potential competitors, including Dawgs," from the market for molded clog-type footwear. Case No. 16-cv-02004, Docket No. 1 at 5, ¶ 3. The complaint further describes the role that each individual defendant held at Crocs and how long he or she worked there, and alleges each person's conduct that Dawgs claims supports individual liability. *See, e.g., id.* at 10-19, ¶¶ 9-14. Moreover, the complaint alleges the conduct giving rise to potential antitrust liability for each defendant. *See*, *e.g.*, *id.* at 18-19, ¶ 14 (presenting two overarching theories of antitrust liability and noting how they apply to different groups of defendants). Dawgs alleges that each of the Individual

13

Defendants was in a position where he or she had the authority to authorize lawsuits. *See id.* at 10-19, ¶¶ 9-14. Although Dawgs makes many of these allegations "on information and belief," Rule 11 does not preclude this type of allegation. *Kaczmarek*, 121 F.R.D. at 416 ("Rule 11 does not abrogate a signer's ability to plead on the basis of information and belief."). The specificity of Dawgs' pleadings is much greater than in cases where the Tenth Circuit has approved sanctions for defective pleadings against corporate officers. *See Med. Supply Chain, Inc. v. Gen. Elec. Co.*, 144 F. App'x 708, 716 (10th Cir. 2005) (unpublished) ("[C]laims against [defendant] in his individual capacity were frivolous in that no allegation was made that [defendant] had any personal connection to [plaintiff's] alleged injury or even that he knew [plaintiff] existed.").

The only evidence referred to by the Individual Defendants demonstrating that Dawgs' claims are unreasonable is Crocs' response to an interrogatory "identifying the four people . . . who authorized the (successful) lawsuit against Dawgs and many others." Docket No. 429 at 6 (citing Docket No. 429-2 at 5). Dawgs, however, is not bound to accept Crocs' answers to interrogatories as conclusive. *See* Docket No. 429-2 at 4-5.

The Individual Defendants argue that the pleadings are deficient in light of *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 853 (N.D. Cal. 1979). Docket No. 429 at 9. *Murphy* discusses the legal standard for personal liability under the Sherman Act, 467 F. Supp. at 853, but not all courts agree with that standard. *See, e.g., In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 908 (N.D. Ill. 2011). As a result, it does not provide a proper

14

basis for imposing sanctions on Dawgs.

The Court finds that Crocs has not demonstrated that Dawgs' pleadings are objectively unreasonable and warrant sanctions under Rule 11.

### B.  28 U.S.C. § 1927

The Individual Defendants argue that sanctions are appropriate under 28 U.S.C. § 1927.  Docket No. 429 at 4-5.  An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "An attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith," *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985), or if the attorney's conduct constitutes a "reckless disregard of the duty owed by counsel to the court." *Braley v. Campbell*, 832 F.2d 1504, 1511-12 (10th Cir. 1987).  Sanctions under § 1927 are also appropriate when "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of proceedings was unwarranted."  *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotations and citations omitted).

A district court has "wide discretion in matters of sanctions" under § 1927. *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1207 (10th Cir. 2008).  However, § 1927 should not be enforced so as to "dampen the legitimate zeal of an attorney in representing" a client.  *Braley*, 832 F.2d at 1512.  Accordingly, fees should only be awarded against attorneys whose conduct evinces a "serious and studied disregard for the orderly processes of justice."  *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163,

1167 (7th Cir. 1968); *see also Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1371 n.6 (Fed. Cir. 2012) ("Establishing attorney misconduct under § 1927 implicates a higher level of culpability than Rule 11."). Before awarding sanctions pursuant to § 1927, a court must make "specific findings" identifying "the extent of the multiplicity resulting from the attorney's behavior and the costs arising therefrom," as well as describing the "objectionable conduct" in sufficient detail to permit a meaningful response and facilitate appellate review. *Braley*, 832 F.2d at 1513.

The Individual Defendants argue that this case is vexatious because the claims in this case are "directly related" to Case No. 06-cv-00605. Docket No. 429 at 4. The Court has already determined that the filing of the 2016 lawsuit did not run afoul of the doctrine of claim splitting. *See* Docket No. 673 at 14-15 (finding claim splitting inapplicable to the complaint in the 2016 lawsuit). The Individual Defendants offer no basis for sanctions under § 1927 apart from the duplicative nature of the 2016 lawsuit. *See* Docket No. 429 at 4. Accordingly, the Court finds, in its broad discretion, that sanctions are not warranted under § 1927.

### C.  Inherent Powers

Crocs and the defendants in the 2016 case also argue that sanctions are appropriate under the Court's inherent powers. Docket No. 409 at 3; Docket No. 429 at 4. "Inherent powers are the exception, not the rule, and their assertion requires special justification in each case. Like all applications of inherent power, the authority to sanction bad-faith litigation practices can be exercised only when necessary to preserve the authority of the court." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 64 (1991). "[T]he necessity predicate limits the exercise of inherent powers to those exceptional

instances in which congressionally authorized powers fail to protect the processes of the court." *Id.*

Crocs and the Individual Defendants do not argue that Dawgs' allegedly wrongful conduct falls outside the scope of Rule 11 and 28 U.S.C. § 1927, which provide adequate protections against false statements and spurious legal claims. Accordingly, the Court finds that Crocs and the Individual Defendants have failed to present an independent basis for sanctions under the Court's inherent powers.

## III. CONCLUSION

The fact that the Court has not identified sanctionable conduct should not be taken as an endorsement of Dawgs' litigation approach. Far too often Dawgs' pleadings display a piratical swagger and bombastic self-righteousness more appropriate to a middle school drama production than a court of law. The Court is hopeful that in the future Dawgs will focus more on the law and the facts and less on garish rhetoric.

In accordance with the foregoing, it is

**ORDERED** that Crocs, Inc.'s Motion for Sanctions Under Rule 11 and the Court's Inherent Powers [Docket No. 409] and Defendants' Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927 and the Court's Inherent Powers [Docket No. 429] are denied.

DATED September 30, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge