IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 06–cv–00605–PAB–KMT
(*Consolidated with* 12-cv-02096-PAB-BNB and 16-cv-02004-PAB-KMT)

CROCS, INC.,

     Plaintiff,

v.

EFFERVESCENT, INC.,
HOLEY SOLES HOLDINGS, LTD.,
DOUBLE DIAMOND DISTRIBUTION,LTD., and
U.S.A. DAWGS, INC.,

     Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC., and
DOUBLE DIAMOND DISTRIBUTION, LTD.,

     Plaintiffs,

v.

RONALD SNYDER,
DANIEL HART,
THOMAS J. SMACH,
ANDREW REES,
GREGG RIBATT,
ANDREW REDDYHOFF,
GEORGE B. BOEDECKER, JR.,
LYNDON HANSON,
DONALD LOCOCO,
RAYMOND CROGHAN,
RONALD FRASCH,
MICHAEL MARGOLIS,
JEFFREY LASHER,
MICHAEL E. MARKS,
PRAKASH MELWANI,

JOHN P. MCCARVEL,
ERIK REBICH, and
SARA HOVERSTOCK,

        Defendants.

---

**ORDER**

---

This matter is before the court on "Crocs, Inc.'s Motion for Inspection of Calzuro

Footwear and Relevant Records" [Doc. No. 775], filed December 5, 2017 ("Mot."), to which was

filed its "Opposition to Crocs' Motion to Compel Production of Calzuro Footwear and Records

(Doc. No. 775)" on December 14, 2017 [Doc. No. 784] ("Resp."). Crocs filed a reply on

December 21, 2017 [Doc. No. 784].

On August 30, 2016, when Dawgs served its original invalidity contentions, it provided

images of a Calzuro-branded clog with a riveted strap as claimed prior art that had been on sale

for more than a year prior to June 23, 2003. [Doc. No. 410, Ex. A.] Evidence in the case

revealed, however, that that shoe had not been manufactured prior to 2012. Dawgs now seeks to

substitute a different Calzuro-branded clog shoe as prior art.

D.C.COLO.LPtR 16(b)(3) states, "If the Final Invalidity Contentions identify additional

prior art, the amendment shall be supported by good cause (e.g., discovery of previously

undiscovered information or an unanticipated claim-construction ruling) and an accused infringer

shall include a separate statement of good cause for any amendment."

Dawgs initially sought to supplement its original invalidity contentions to show both the

originally-offered 2012 Calzuro clog shoe and a different model of Calzuro clog shoe as prior art

that was purportedly in existence prior to Crocs' patent applications known as '858 and '789.

[Doc. No. 507.] Dawgs referred to the originally-designated 2012 Calzuro shoe as Model B, and to the older shoe it was attempting to add as Model A. Crocs objected to the supplementation, in part based on Crocs' contention that Dawgs had known about both Calzuro shoes prior to filing its invalidity contentions and that sufficient good cause had not been shown for supplementation to add additional, different prior art.

On September 30, 2017, District Judge Brimmer, upon consideration of Crocs' Motion for Sanctions [Doc. No. 410] found that Dawgs would not be subject to sanctions as a result of Dawgs' specifying the 2012 Model B Calzuro shoe as prior art with respect to Crocs' 2007 patents in its initial invalidity contentions; however Judge Brimmer also stated that "a separate request for sanctions may be appropriate if Dawgs has continued to offer the 2012 Calzuro molded clog as prior art [in its final invalidity contentions]." [Doc. No. 682 at 7, n.5.] Presumably as a result of this Order, on October 4, 2017, Dawgs sent an email to Crocs' counsel informing them that Dawgs no longer asserted that the 2012 manufactured Calzuro Clog, Model B, was prior art applicable to Crocs' patents. [Doc. No. 784-2 at 1.]

On November 8, 2017, this court agreed with Crocs that good cause for Dawgs' requested supplement to add the Model A Calzuro shoe to its invalidity contentions had not been shown and therefore denied "Dawgs' Motion for Leave to Supplement Its Contentions for the '858 Patent and the '789 Patent [Doc. No. 507]." [Doc. No. 741 ("November 8 Order").] This court specifically found that Dawgs had known about the Model A Calzuro Clog for a significant amount of time prior to its filing of original invalidity contentions and there was no plausible explanation for its failure to designate the Model A shoe from the start.

Meanwhile, on October 17, 2017, this court granted "Crocs, Inc.'s Motion for Inspection of All Accused Footwear and for Supplemental Interrogatory Responses" [Doc. No. 614], and an inspection of Dawgs shoes was undertaken by Crocs in Las Vegas, Nevada, on November 17, 2017.  The Model B Calzuro shoe was not among those shoes provided for inspection, notwithstanding Crocs' request that the shoe be produced at that time and location.  (See Mot., Ex. 1 [Doc. No. 775-2] at 2.)  It is noteworthy that an agreement to simply produce one additional shoe at this point, even subject to later objection on use of the information obtained, would have saved all the parties any additional costs for inspection of the Calzuro shoes, especially in light of Dawgs' clear knowledge that Crocs was seeking such an inspection and that the issue would likely require court resolution.

In its Objection to the November 8 Order denying Dawgs' supplementation request, Dawgs represents to the District Court that it "inadvertently" cited Model B as prior art in this case and did not know, prior to Crocs' seeking to strike the later produced Calzuro shoe as prior art, that Bihos sold more than one version of the Calzuro clog.  [Doc. No. 766, at 2-3; *id.*at 4 (Dawgs asserting that it "first learned that more than one model of the Calzuro Clog was sold in the U.S. shortly after Crocs filed the [sanctions motion] . . . on January 13, 2017").]  By virtue of its reliance on its own state of mind, to wit: "inadvertence," Dawgs puts in direct contention its own knowledge, diligence and good faith.  What Dawgs knew, or should have known, of the existence of each of the two Calzuro shoes becomes the best evidence of Dawgs' diligence and good faith.[1]

---

[1] The court notes that "Dawgs' Motion for Leave to File Third Amended Answer and Counterclaims" [Doc. No. 677] remains pending, and Dawgs' final invalidity contentions were due on or before December 6, 2017.  This court does not have before it Dawgs' Final Invalidity

Crocs now seeks inspection of the Model B shoe listed in Dawgs' original contentions. Crocs asserts there are markings on the shoe itself which show the date of the shoe's manufacture and other identifying data. The particular shoe Crocs wishes to inspect was actually held out before the court at a hearing over a year ago by Dawgs' then-counsel as he argued a motion before this court. The shoe was not, however, offered as an exhibit. Crocs also seeks information concerning when and how Dawgs acquired the Model B shoe in its possession. While Crocs has inspected the Model A shoe that Dawgs seeks to substitute as prior art, Crocs seeks information about when and how Dawgs acquired the apparently 18-year-old exemplar of the Model A shoe, particularly in light of Dawgs' assertion that Dawgs had no idea of its existence until January 2017.

The court finds that the information sought by Crocs is relevant and potentially critical to District Judge Brimmer's consideration of the Objections filed by Dawgs to the November 8 Order. As an example, Dawgs argues that one of the exhibits relied upon by this court as showing Dawgs was well aware of the existence of the correct, older Calzuro shoe at the time it made its original invalidity contentions was not, in fact, what Crocs purported it to be. Dawgs alleges, as partial grounds for Judge Brimmer to overrule this court's Order, that "Crocs therefore misled the Court as to what Exhibit CPX-048 was, and was unfortunately rewarded for this misrepresentation." (Resp. at 6.) Dawgs includes a picture of Exhibit CPX-048 presented during ITC proceedings in 2007. This picture was not presented to this court prior to the November 8 Order. Crocs responds, again with evidence not presented originally to this court, that Dawgs and/or its predecessor relied on the Calzuro Model A shoe in the 2007 ITC

Contentions so therefore does not know definitively whether or not Dawgs has included Model A of the Calzuro shoe as prior art in its contentions.

proceedings with images listed on an exhibit list, showing the Calzuro shoe with a strap that apparently could be attached to the original strapless shoe by utilizing a special kit. (Reply at 5, citing to Doc. No. 780, at 5-8 and Doc. No. 168-3 ¶8 (Dawgs' CEO claiming he was aware of the shoe prior to February 2016); *see also* Doc. No. 780 at 6; Callagy Declaration [Doc. No. 780-1], Ex.1 ].)

Judge Brimmer's decision on this and other issues will determine whether or not Dawgs will be able to rely on <u>any</u> of the Calzuro shoes as claimed prior art in this case.[2] Dawgs' integrity on the issue of diligence and prior knowledge may be critical to that decision.

Dawgs claims additionally that, relevance aside, Crocs has not complied with its discovery procedure obligations, including limitations set forth in the Scheduling Order, and therefore should be banned from seeking inspection and information through other means. The court does not consider the requests for inspection of the Model B shoe or information and documents concerning how and when Dawgs came into possession of the Calzuro Model A and B shoes to be standard discovery in the classical sense. The information sought by Crocs is not directed at the ultimate merits of this patent case. What Crocs is now seeking is information *pertinent to a court determination* of whether Dawgs will be allowed to substitute a completely different older shoe as prior art supporting its invalidity claims at this stage of the case, considering the legal standards set forth, at least in part, in the November 8 Order. Therefore, the requests for information made by Crocs that are the subject of its instant motion are not subject to the discovery limitations on Interrogatories, Requests for Production of Documents or

---

[2] As the case is currently postured, Model B of the Calzuro shoe will not be considered as prior art supporting an invalidity contention based on Dawgs' withdrawal of that shoe. Model A of the Calzuro shoe has not been authorized by any court as a supplement to Dawgs' invalidity contentions. Therefore, no Calzuro shoe is part of the case at this juncture.

Inspection of Tangible things, or Requests for Admissions set forth in the Scheduling Order controlling discovery in the case.

In summation, in attempting to have this court's decision overruled, Dawgs is arguing to Judge Brimmer—based on Dawgs' exclusive knowledge about the physical comparative properties of the two shoes and its exclusive knowledge about when and how Dawgs came into possession of the Model A shoe—that it deserves to be excused from its long-running error, and that it exercised the required diligence and good faith pursuant to controlling case law and the court's Local Patent Rules to allow it to now add new prior art to its invalidity contentions. Crocs is greatly disadvantaged by the fact that it must argue in opposition without that same knowledge through no fault of its own. This situation was created by Dawgs' improper designation in the first instance. It is only fair that Crocs be afforded information concerning Dawgs' claim that it did not know it had the wrong shoe until Crocs filed its sanction motion in January of this year. This is especially true since Dawgs did not withdraw its allegation that the Model B shoe was prior art on Crocs' relevant patents until October 2017, many months after it purportedly discovered its blunder.

Therefore, it is **ORDERED** that "Crocs, Inc.'s Motion for Inspection of Calzuro Footwear and Relevant Records" [Doc. No. 775] is **GRANTED**. Dawgs shall produce, **on or before January 10, 2018,** <u>at a location to be specified by Crocs</u>: (i) the Model B Calzuro clog for inspection, (ii) records of when and how Dawgs acquired each exemplar of Calzuro footwear that it has asserted in this lawsuit at any time, including the Model A and Model B Calzuro clogs discussed herein, and (iii) a Declaration signed by a person at Dawgs with knowledge about the acquisition of the Model A and Model B Calzuro footwear, which describes in detail the facts

and circumstances under which Dawgs acquired the Calzuro Model A and Model B footwear in its possession. The Declaration will be treated in the same manner as Fed. R. Civ. P. 30(b)(6) deposition testimony and will be binding on the Defendants for all purposes in this case.

Dated this 2nd day of January, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge