IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-KMT
(Consolidated with Civil Action No. 16-cv-02004-PAB-KMT)

---

Civil Action No. 06-cv-00605-PAB-KMT

CROCS, INC.,

Plaintiff,

v.

EFFERVESCENT, INC., et al.,

Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC., et al.,

Plaintiffs,

v.

RONALD SNYDER, et al.,

Defendants.

---

**ORDER**

---

This matter is before the Court for the construction of U.S. Patent No. D632,465 (the "'465 Patent" or the "patent") [Docket No. 548-1]. Crocs, Inc. ("Crocs") alleges that defendants Double Diamond Distribution, Ltd., and U.S.A. Dawgs, Inc. (collectively "Dawgs") have infringed the patent, and Dawgs asks that the Court adopt its construction. Docket No. 576.

## I.  BACKGROUND

The '465 Patent is a design patent entitled "Footwear," which was filed on May 23, 2007.  Docket No. 548-1 at 2.  The patent is a continuation-in-part of application No. 29/250,892, filed on December 4, 2006 and now abandoned.  *Id.*  The patent consists of seven figures depicting a shoe design.  *Id.*  The figures provide various perspectives of the claimed design, consisting of the front, back, outer-side, inner-side, top, and bottom view.  *Id.*  The patent's seven figures claim "the ornamental design for footwear," and the description contains the limiting statement, "The broken line showing of the sole is for illustrative purposes only and forms no part of the claimed design."  *Id.*  Dawgs claims that the '465 Patent is unrelated to the other two patents at issue in this case, U.S. Patent Nos. 6,993,858 ("the '858 Patent") and D517,789 ("the '789 Patent").  Docket No. 548 at 3.  Crocs states that, unlike the other two patents at issue, neither the Federal Circuit nor any other tribunal has construed or addressed the scope of the '465 Patent.  Docket No. 563 at 4.

## II.  LEGAL STANDARD

"A design patent protects a 'new, original and ornamental design for an article of manufacture,'" *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1316 (Fed. Cir. 2019) (quoting 35 U.S.C. § 171(a)), while a utility patent protects the "process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  *Id.* at 1324 (quoting 35 U.S.C. § 101); *see also Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  A design patent therefore only protects the novel, ornamental features – essentially, the appearance of – the

patented design.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.

Cir. 1997).  That is, only the ornamental aspects of the design are protected – any

functional elements are beyond the scope of the patent.  *Richardson v. Stanley Works,

Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010).

Trial courts have a duty to "conduct claim construction in design patent cases, as

in utility patent cases."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed.

Cir. 2008) (citation omitted).  However, the trial court need not "provide a detailed verbal

description of the claimed design" because design patents "typically are claimed as

shown in drawings."  *Id.* (citations omitted).  Design patents are better represented by

an illustration than by a verbal description; accordingly, the "preferable course ordinarily

will be for a district court not to attempt to 'construe' a design patent claim by providing

a detailed verbal description of the claimed design."  *Id.*

While the preferable course is not to provide a detailed verbal description, the

Federal Circuit has noted that it may be appropriate to describe "various features of the

claimed design as they relate to the accused design and the prior art" or to address

issues that bear on the scope of a claim, such as conventions in design patent drafting

or distinguishing between functional and non-functional elements of the design.  *Id.*

at 680.  Accordingly, the trial court may offer a verbal construction of a design patent

where such construction would help to clarify the ornamental aspects of the design

without unnecessarily supplanting the visual impression created by the illustrations

contained in the design patent.

## III.  THE CLAIM OF THE '465 PATENT

Dawgs argues that there are two issues for the Court to resolve.  The first issue is whether inconsistencies between the figures of the '465 Patent render the patent indefinite.  Docket No. 548 at 4.  The second issue is to construe the claim to determine whether the claim should exclude the presence of the fur "in-sock" because that feature is functional and whether the claim includes the broken lines depicted in the illustration of the sole of the shoe.  *Id.* at 5; Docket No. 536 at 2.  Crocs argues that no construction of the '465 Patent is necessary.  Docket No. 536 at 2.  However, Crocs asks the Court to issue a construction confirming that there are no holes in the side-walls of the upper.  Docket No. 563 at 17.

### A.  Indefiniteness

A claim term is indefinite under 35 U.S.C. § 112 if it fails "viewed in light of the specification and prosecution history, [to] inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable.  The standard we adopt accords with opinions of this Court stating that 'the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.'"  *Id.* (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)).  "An accused infringer must . . . demonstrate by clear and convincing evidence" that a claim term is indefinite.  *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) (citing *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d

1244, 1249–50 (Fed. Cir. 2008)).  The key question is whether the intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims]."  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010).

To determine whether the '465 Patent is indefinite, therefore, the Court must first determine what it means to be a person of "ordinary skill in the art" ("POSITA").  Dawgs argues that, during the 2006–07 timeframe, which is when the '465 Patent was filed, a POSITA "would have had at least two years of experience in the design and development of footwear, including experience in designing footwear with molded components and fabric trim."  Docket No. 548 at 4.  Crocs argues that a POSITA would have "two to five years of hands-on experience in designing and developing products made out of molded foams, especially footwear."  Docket No. 563 at 6 (quoting Docket No. 524-1 at 5).  According to Dawgs, Crocs's definition "ignores that the subject matter of the '465 patent is footwear and not foam" and that "nothing requires that [the shoe in the '465 Patent] be made of foam."  Docket No. 548 at 4.  Crocs disagrees that the POSITA "need not necessarily have experience working with foam."  Docket No. 563 at 6.  In support of its argument, Crocs submits a declaration from Ian Whatley, who has 35 years of experience in the footwear industry, and who concluded that, while the '465 Patent is a design patent "in the general field of footwear," the "relevant skills are in the design and function of molded foam shoes and foot coverings trimmed with fabric components."  *Id.* (quoting Docket No. 524-1 at 5).  While Dawgs's footwear expert, Joe Napurano, who has 30 years of experience in footwear design, Docket No. 548 at 4, disagrees, Mr. Napurano admits that none of his opinions "would change if Mr.

5

Whatley's definition [of the POSITA] is adopted."  Docket No. 548-2 at 6, ¶ 16.

The only apparent substantive difference between the two definitions is Crocs's suggestion that a POSITA have experience in working with molded foam products, not just footwear products.  However, unlike with the '858 Patent, with which the parties had the same dispute over the definition of a POSITA, the Federal Circuit has not considered the parties' POSITA definitions with regard to the '465 Patent.  Further unlike the '858 Patent, which is a utility patent, the '465 Patent does not itself refer to "moldable foam material."  *See* '858 Patent, col. 9 II. 37–39.  Regardless, given the experts' essential agreement, the Court sees no basis to modify Crocs's proposed definition, which is the definition that the Court used with the shoes in the other patents, including '858 Patent.  Docket No. 557 at 9.  A POSITA with respect to the '465 Patent is an individual with two to five years of hands-on experience in designing and developing products made out of molded foam, especially footwear.

Relying in part on its motion for summary judgment, Docket No. 514 at 7–10, Dawgs next argues that the '465 Patent is invalid as indefinite because it fails to depict a consistent design.  Docket No. 548 at 5.  As a result, a POSITA at the time of the invention "would have been able to understand the scope of the claimed design with reasonable certainty."  *Id.*  Therefore, Dawgs claims that, because one viewing the designs would be required to "speculate as to the boundaries of the claim, the claim is ambiguous and invalid for indefiniteness."  Docket No. 514 at 8 (citing *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007)).  Mr. Napurano identified two areas that "would have required a POSITA to make choices if asked to create the claimed footwear": the lateral quarter and the rear quarter.  Docket No. 548 at 6.  Mr.

6

Napurano cites inconsistencies such as the size of the fur collar, whether some of the ornamental features should be included, the number of rows of ornamental dots, and the placement of the circular head of the mushroom pin. *Id.* Ultimately, Mr. Napurano explains, "[t]he inconsistencies . . . would have rendered the overall appearance of the footwear to be unclear." Docket No. 548-2 at 7, ¶ 19.

Crocs argues that Dawgs has failed to meet its burden to prove indefiniteness by clear and convincing evidence and that the declaration of Mr. Whatley, Crocs's expert, explains that the inconsistencies that Dawgs complains of "do not exist," but rather that the drawings of the '465 Patent "*do* inform the person of ordinary skill set in the art, with reasonable certainty, of the scope of the invention." Docket No. 563 at 8 (citing Docket No. 524-1). For example, to Dawgs's argument that it is unclear whether the dots and ridges depicted along the sidewall of shoe in Figure 4 are supposed to continue under the fur collar, Crocs explains that Figure 1 shows that the design elements clearly extend along the length of the shoe. *Id.* To Dawgs's argument that there is confusion because the number of dots depicted in Figure 4 on the rear base of the shoe at the heel are different than the number of dots in the same area in Figure 1, Crocs explains that this is expected because the two figures are views of the shoe from different perspectives and that, as Figure 3 illustrates, "the heel of the shoe curves inwards towards the bottom, meaning that it must be true that a direct side view of the shoe (as in Figure 4) shows more of the back heel area than a top-down and front view, such as Figure 1." *Id.* at 8–9. This is "not an inconsistency in the design at all – it simply reflects different views of the design." *Id.* at 9. Crocs provides a similar explanation for other of Dawgs's claimed inconsistencies. For instance, Dawgs asserts that the

7

depictions of the fur and the rivet attaching the fur to the shoe are confusing, but, Crocs explains, "[t]he fact that Figure 1 shows more of the design of the sidewall under the fur makes the overall design clearer, not more confusing," given that "fur can inherently hang over the sidewall to a greater or lesser degree" and thus "necessarily 'covers a different amount of the underlying quarters when viewed in different orientations.'" *Id.* (quoting Docket No. 524-1 at 8, ¶ 24).

Even if there were inconsistencies, Crocs argues, Dawgs has "fail[ed] to explain why, in light of the inconsistencies [Mr. Napurano] repeats from Dawgs's summary judgment briefing, a POSITA would be incapable of understanding what is claimed." *Id.* at 10 (citing *Weber-Stephen Prods., LLC v. Sears Holding Corp.*, 2015 WL 9304343, at *17–20 (N.D. Ill. Dec. 20, 2015) (finding minor inconsistencies insufficient to show indefiniteness)). Rather, Dawgs merely asserts that "the overall appearance of the footwear would not have been reasonably understood by a POSITA." Docket No. 548 at 6. Dawgs relies on Mr. Napurano's declaration that a POSITA, "if asked to replicate the design[,] would have to use the depictions of a given design to make mold schematics. These in turn would be used to make footwear molds. None of this is possible unless the drawings, and any ornamental features intended to be included in the design, are depicted as precisely as possible." Docket No. 575 at 6–7 (quoting Docket No. 548-2 at 6, ¶ 17).

Dawgs has the burden to prove, by clear and convincing evidence, that the '465 Patent is indefinite, as patents are presumed valid. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 111 (2011); *Budde v. Harley-Davidson Inc.*, 250 F.3d 1369 (Fed. Cir.

2001).  "Only claims not amenable to construction or insolubly ambiguous are indefinite."  *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (internal citations omitted).  A claim is not indefinite solely because the task is "formidable and the conclusion may be one over which reasonable persons will disagree."  *Id.*  The Court finds that Dawgs has not shown, by clear and convincing evidence, that the seven figures that make up the '465 Patent are so "insolubly ambiguous" as to be as to be indefinite under 35 U.S.C. § 112, or that the inconsistencies – if any – are any more than formidable or subject to reasonable disagreement between POSITAs.  "[A]bsolute precision is unattainable," *Nautilus*, 572 U.S. at 910, and, for inconsistencies to render a patent indefinite, they must be "material and of such a magnitude that the overall appearance of the design is unclear." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2016 WL 7017219, at *3 (C.D. Cal. Dec. 1, 2016) (quoting *Times Three Clothier, LLC v. Spanx, Inc.*, 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014)).  Dawgs has not met its burden, and, as such, the Court concludes that the '465 Patent is not indefinite and that a POSITA would understand its scope.

### B.  Fur In-sock and Broken Line Sole

Dawgs seeks a construction that would exclude fur lining from the scope of the claim because it is a "functional element that is dictated by its functional purpose." Docket No. 548 at 8.  Dawgs explains, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."  *Id.* at 7 (quoting

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010)); *OddzOn*, 122 F.3d at 1404–05.  Dawgs argues that Crocs has "repeatedly touted the functionality of the fur lining (i.e., [sic] to keep the wearer's feet warm) in its marketing materials and advertising."  *Id.*  Dawgs relies on *Richardson*, in which the court held that "certain functional elements of a tool were dictated by their functional purpose which had long been known" and therefore "must be excluded from the scope of the design."  *Id.* at 8.

Crocs argues that Dawgs is "repris[ing] . . . [its] claim construction argument regarding the strap and connector system depicted in the '789 Patent."  Docket No. 563 at 11.  Crocs notes that, in construing the '789 Patent, the Court held, "it is improper to wholly exclude structural elements of a design patent claim simply because they have functional aspects."  *Id.* (quoting Docket No. 557 at 30).  Further, Crocs distinguishes *Richardson*.  Crocs argues that *Richardson* did not hold that design features can be excluded if they are functional; rather, the court considered a patent for a multi-function tool that contained "several elements that are driven *purely* by utility."  *Id.* (quoting *Richardson*, 597 F.3d at 1294).  As the Federal Circuit explained in *Sport Dimension*, "[i]n *OddzOn*, *Richardson*, and *Ethicon*, we construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features. But, in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that elemental [sic] also served a functional purpose." 820 F.3d 1316, 1321 (Fed. Cir. 2016).  Here, Crocs explains, Crocs's advertising, which Dawgs also cites, shows that fur can be both a design as well as functional element. *See, e.g.*, Docket No. 548-10 at 2 (nothing that the fur gives "Crocs' original clog *design*

a cozy twist"); Docket No. 548-17 at 2 (nothing that "the furry lining color coordinates with the shoe for a pulled-together look").  Therefore, while there are factors that militate in favor of finding that the fur lining is functional, the fur also plays an aesthetic, ornamental role, and Dawgs's argument in reply that "fleece or fur is universally recognized as functional and without any ornamental purpose," Docket No. 575 at 9, is unconvincing.

Crocs further explains that Dawgs cites no evidence for its assertion that the fur lining depicted in the '465 Patent is solely functional, *id.* at 12, and the fur or fleece in the other patents that Dawgs relies on to show that fur serves the function of "keeping a touching body part (such as a foot) warm" are each distinguishable.  Docket No. 563 at 12–13 (quoting Docket No. 548 at 7–8).  None of these patents shows that fur is only for warmth.  Crocs claims that the patents that Dawgs cites, in fact, show that fur can be "utilized in placement and style" in different ways, indicating that its specific placement in the '465 Patent may have ornamental value distinct from its functional purpose.  *Id.* at 15.

To determine whether a design claim is dictated by function, the Court considers:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Sport Dimension*, 820 F.3d at 1322.  However, while it may be appropriate to note particular functional features of a design, it is improper to wholly exclude structural elements of a design patent claim simply because they have functional aspects.  *Id.*

Instead, the Court should consider the manner in which the functional features of the design patent "contribute to the overall ornamentation of the design."  *Id.* at 1323.

The Court follows the Federal Circuit's admonition here and finds that the fact that the fur may serve a function – warmth – does not mean that the Court must exclude the fur from the design patent.  That is, for the same reasons that the Court found the strap to be not purely functional in the '789 Patent, Docket No. 557 at 30–31, as the Federal Circuit observed in *Sport Dimension*, excluding the fur does not simply excise a functional aspect of the '465 Patent because there are "elements in the design or an overall appearance not clearly dictated by function."  820 F.3d at 1322.  Were warmth the only reason for the lining, it is not clear fur or fleece that hangs over the sidewall would be the "best" design or the most effective.  Therefore, the Court finds that Dawgs's proposed construction, which seeks to exclude the fur, would improperly eliminate features that contribute to the ornamental design of the '465 Patent.

Dawgs next asks that the Court's construction of the '465 Patent should "clarify that the patent does not include the broken line of the sole," Docket No. 548 at 9, as the patent states, "the broken line showing of the sole is for illustrative purposes only and forms no part of the claimed design."  *Id.* (quoting '465 Patent, cover).  Dawgs argues that this will help "make this clear to the jury and avoid any confusion."  *Id.*  Crocs states that "[t]he use of broken lines does not create a need for claim construction."  Docket No. 563 at 15.  Broken lines, Crocs insists, can mean numerous things, including to illustrate the claimed design, *id.* (citing Manual of Patent Examining Procedure § 1503.01.III), yet Crocs believes that the patent's statement – that the broken line showing the sole is for illustrative purposes only – is clear.  The Court agrees that the

12

patent's statement is clear and finds it appropriate to instruct the jury that the broken line in Figure 7 is for illustrative purposes only and forms no part of the claim design.

### C.  Construction of the Upper Sidewall

While Crocs argues that design patents generally require no claim construction, Crocs requests that the Court issue a construction "confirming that there are no holes in the side-walls of the upper."  Docket No. 563 at 16–17.  Crocs insists that the figures in the '465 Patent, as well as the photographs submitted to the United States Patent and Trademark Office ("PTO") in connection with U.S. Patent Application Nos. 29/250,892 and 29/280,317, Docket No. 563-2, from which the '465 Patent issued, support its construction.  *Id.* at 17.  Crocs directs the Court to the intrinsic evidence, which Crocs says "confirms that construing the indentations as holes would be contrary to the prosecution history, and thus improper."  *Id.* (citing *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1371 n.4 (Fed. Cir. 2002)).  Dawgs argues that Crocs cannot "describ[e] the features depicted in a design patent by words," Docket No. 575 at 13 (citing *Egyptian Goddess*, 543 F.3d at 679), and that Crocs is attempting to rewrite the patent for which it previously argued that the "vent holes on the outer side of the shoe" were "essential."  *Id.* (quoting Docket No. 514 at 3, ¶ 3).

The Court does not read *Egyptian Goddess* to foreclose the verbal description of a design patent.  As the Federal Circuit held, "[w]hile it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out, either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art."

*Egyptian Goddess*, 543 F.3d at 680.  Nevertheless, the Court declines the invitation to describe the claimed design because, as Dawgs explains, however these features are depicted, they are part of the design.

## IV.  CONCLUSION

Accordingly, the patent claim terms presently at issue shall be construed in accordance with the foregoing.

DATED March 11, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

14