IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-KMT
   (Consolidated with Civil Action No. 16-cv-02004-PAB-KMT)

---

Civil Action No. 06-cv-00605-PAB-KMT

CROCS, INC.,

   Plaintiff,

v.

EFFERVESCENT, INC., et al.,

   Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC., et al.,

   Plaintiffs,

v.

RONALD SNYDER, et al.,

   Defendants.

---

## ORDER

---

This matter is before the Court on the magistrate judge's Recommendation on U.S.A. Dawgs, Inc. and Double Diamond Distribution Ltd. (individually and/or collectively, with Mojave Desert Holdings, LLC, referred herein as "Dawgs") Motion for Leave to File Third Amended Answer and Counterclaims Against Crocs and First Amended Complaint Against the Individual Defendants [Doc. No. 897] entered on October 27, 2020. Specifically, Dawgs seeks to add claims against Crocs for deceptive

trade practices under the Colorado Consumer Protection Act. Docket No. 849 at 1. Magistrate Judge Kathleen M. Tafoya recommends that Dawgs's motion [Docket No. 849] be denied.

## I. BACKGROUND

The background facts and procedural history of this fourteen-year dispute are set out in the Court's previous orders, *see, e.g.*, Docket No. 673, and in the magistrate judge's recommendation, Docket No. 897, and will not be repeated unless necessary for purposes of this order.

This case involves infringement and other claims related to three patents on Crocs's shoes. Due to various reasons – including three administrative closures, one in 2006 during proceedings before the United States International Trade Commission, Docket No. 31, one from 2012 to 2016 during *inter partes* review by the United States Patent and Trademark Office, Docket No. 139, and one in 2018 due to U.S.A. Dawgs, Inc.'s bankruptcy, Docket No. 821 – the deadline for the amendment of pleadings in Case No. 06-cv-00605 ("the 2006 case") was June 28, 2016. *See* Docket No. 201. Dawgs, however, also filed a separate complaint against individual principals of Crocs, Case No. 16-cv-02004 ("the 2016 case"), alleging, among other things, that individual Crocs defendants violated the Lanham Act, 15 U.S.C. § 1125(c). The 2016 case was consolidated with the 2006 case on January 27, 2017. Docket No. 426. Crocs then filed a second amended complaint in the 2016 case, Docket No. 473, to which Dawgs filed its second amended answer and counterclaims ("SAAC"). Docket Nos. 487, 488. Dawgs's SAAC contained, among other things, a Lanham Act counterclaim regarding

the material used in Crocs's shoes, Croslite. Docket No. 487 at 107–08, ¶¶ 340–47. Dawgs later sought to add claims under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105, for deceptive trade practices. Docket Nos. 677, 723. While the motions were pending, the Court administratively closed the consolidated case due to U.S.A. Dawgs, Inc.'s bankruptcy and denied all pending motions without prejudice. Docket No. 821. Over a year later, Dawgs sought to reopen the case, Docket No. 832, and add Mojave Desert Holdings, LLC. Docket No. 833. The Court reopened the case on July 14, 2020 and granted the motion to add Mojave. Docket No. 842.

Dawgs alleges that "Crocs has, for most of its existence, promoted its footwear products as technologically superior to the competition" in part because "its products are made of a patented material," Croslite; however, Dawgs contends, Crocs "subsequently admitted[] it does not actually have a patent on its shoe material and never did." Docket No. 849 at 2. Dawgs, therefore, now seeks to add a claim for deceptive trade practices under the CCPA based on Crocs's "false advertising conduct." *Id.*

Magistrate Judge Tafoya recommends that Dawgs's motion be denied. Docket No. 897. On November 10, 2020, Dawgs timely filed objections to the magistrate judges's recommendation. Docket No. 900. On November 24, 2020, Crocs and the individual defendants filed a response to Dawgs's objections. Docket No. 908. On December 8, 2020, Dawgs filed a reply in support of their objections. Docket No. 912.

## II. STANDARD OF REVIEW

The Court must "determine de novo any part of the magistrate judge's disposition

that has been properly objected to."[1]  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id.*   In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

Rule 15(a) of the Federal Rules of Civil Procedure generally addresses amendment of pleadings prior to trial and provides that a court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "when the deadline for amendment of pleadings in the scheduling order has passed, Rule 16(b) applies and states that a scheduling order deadline 'may be modified only for good

---

[1] "Timely objections to magistrate judge *recommendations* are reviewed de novo pursuant to Rule 72(b), rather than under the clearly erroneous/contrary to law standard applied to magistrate judge *orders* by Rule 72(a)."  *Gordanier v. Montezuma Water Co.*, No. 08-cv-01849-PAB-MJW, 2010 WL 935665, at *1 (D. Colo. Mar. 11, 2010). However, "there is some confusion over whether a motion to amend falls within Rule 72(a) or Rule 72(b)."  *Id.* (citing *Brown v. Nagem*, No. 05-cv-1408-WYD-MJW, 2006 WL 2164421, at *1 (D. Colo. July 28, 2006) ("A motion to amend is normally a nondispositive motion entitled only to a clearly erroneous or contrary to law standard of review.  However, many courts have held that a recommendation to deny a motion to amend . . . should be viewed as a dispositive ruling because it precludes the filing of certain claims.").  Magistrate Judge Tafoya construed the motion at issue as dispositive of Dawgs's proposed additional claim, and therefore *recommended*, rather than *ordered*, that the motion be denied.  The Court will review the matter de novo.

cause and with the judge's consent.'" *White v. Deere & Co.*, No. 13-cv-02173-PAB-NYW, 2016 WL 336871, at *1 (D. Colo. Jan. 28, 2016) (quoting Fed. R. Civ. P. 16(b)(4)). "Although the Tenth Circuit has not adopted a rule on the interaction between Rule 15(a) and Rule 16(b), courts in this district have applied the framework articulated in *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001), to cases where the scheduling order deadline has passed." *Texas Instruments, Inc. v. BIAX Corp.*, No. 07–cv–02370–WDM–MEH, 2009 WL 3158155, at *1 (D. Colo. Sep. 28, 2009) (citations omitted).

Under that framework, plaintiff must "first demonstrate . . . that it has 'good cause' for seeking modification of the scheduling deadline." *Pumpco*, 204 F.R.D. at 668 (quotations and citation omitted). Good cause "means that scheduling deadlines cannot be met despite a party's diligent efforts." *Id.* (quotations and citation omitted). If plaintiff can show good cause, the Court turns to the Rule 15(a) standard. *See id.* at 669. Pursuant to Rule 15(a), "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). There is a "rough similarity between the 'good cause' standard of Rule 16(b) and [the Tenth Circuit's] 'undue delay' analysis under rule 15." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n. 4 (10th Cir. 2006). Therefore, a motion to amend the complaint after the scheduling order deadline for amendment of pleadings has passed requires a party to demonstrate (1) good cause for seeking modification under Fed. R. Civ. P.

5

16(b)(4) and (2) that the amendment satisfies Fed. R. Civ. P. 15(a). *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).

### III. ANALYSIS

There is no dispute that the additional claim Dawgs seeks to add "is based on the same alleged core false advertising conduct that Dawgs has already alleged in its Lanham Act claim filed against Crocs" in Dawgs's SAAC. Docket No. 900 at 2. However, Dawgs's motion to amend purports to add claims based on new evidence uncovered during the discovery phase of this litigation. For example, Dawgs explains that, after it filed its original false advertising counterclaims, and after the deadline for amended pleadings, Crocs "produced documents and deposition transcripts detailing some of the specific origins and intent behind its false promotion campaign, as well as the individuals involved." Docket No. 849 at 5. Dawgs also points to interrogatory responses and a deposition transcript that purport to show that Crocs "has . . . now admitted that the advertising [behind Croslite] was false, and one recently-produced confidential deposition transcript from another case proves that Crocs has known that fact all along." *Id.* Dawgs insists that it has satisfied the requirements under Rule 15(a) and cites *Gorsuch*, 771 F.3d at 1240, for the proposition that it has also shown good cause under Rule 16 because it learned new information in discovery. *Id.* at 5–7.

The magistrate judge determined that, while the evidence that Dawgs relies upon to establish good cause to amend "may bolster the allegations of knowing false representation by Crocs," this evidence is "not enough to support Dawgs's position that

6

it could not have brought a CCPA claim" when it filed the original complaint against the individual defendants in 2016 or when it filed its second amended complaint in the 2006 case in 2017. Docket No. 897 at 10. The magistrate judge explained that "[i]t is not and has never been disputed that there is no patent for Croslite as a material compound." *Id.* at n.1. Dawgs "is simply changing its strategy now that the District Court has dismissed the majority of its other claims to allow Dawgs to pursue avenues previously rejected," *id.* at 10, and is seeking "another bite at this withering apple, even though it means at least half a year of further discovery, untold judicial resources as the parties once more file endless discovery motions, and at least another year before the case will be ready for trial." *Id.* at 11.

Dawgs relies on many of the same facts and arguments in its objections that it relied upon in its motion. Some of these arguments are even repeated verbatim. While the Court need not consider these "objections,"[2] the Court would overrule them even if they were not identical to Dawgs's motion. Dawgs objects that, "unlike the Lanham Act claims, the claims under the CCPA must be pled with particularity" under Fed. R. Civ. P. 9(b) and that, "[a]t the time Dawgs added the Lanham Act claim in 2016 and amended its complaint against Crocs in 2017, it did not have evidence from Crocs sufficient to plead the CCPA claim with the requisite particularity." Docket No. 900 at 2. Dawgs

---

[2] "In objecting to the magistrate judge's recommendation, plaintiffs must raise specific arguments addressing purported errors in the recommendation; plaintiffs may not reiterate its identical arguments hoping to get a different outcome." *Saleh v. Silco Oil Co.*, No. 19-cv-02973-PAB-NRN, 2020 WL 4915604, at *3 (D. Colo. Aug. 20, 2020) (citing *Vester v. Asset Acceptance, L.L.C.*, No. 08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) ("An 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers.")).

argues that "Judge Tafoya's recommendation does not explain how Dawgs could have pled a CCPA claim prior to the pleading deadline" – because of the "lack of relevant document production from Crocs at that point" – or why "adding the CCPA claim would add 'at least half a year of further discovery'." *Id.* at 3 (quoting Docket No. 897 at 11). Nor does the magistrate judge, on Dawgs's reading, "adequately consider the heightened pleading standard required to plead a CCPA claim as opposed to a Lanham Act claim." *Id.* at 8–9. Dawgs maintains that, because it has shown that it could not adequately plead the CCPA claim without "the newly-produced evidence," it has adequately established good cause under Fed. R. Civ. P. 16(b) and should be permitted to add the CCPA claim. *Id.* at 3. Dawgs also contends that the addition of a virtually "mirror image" CCPA claim will "neither expand the scope of discovery nor delay adjudication on the merits" and that, therefore, Crocs will suffer no prejudice if Dawgs is permitted to add the CCPA claim. *Id.* Dawgs insists that it has met the requirements under Rule 15(a) because "there is no reason that Crocs will have 'undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party.' Nor can Crocs advance any credible arguments as to futility." *Id.* at 10 (citing *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009)).

Crocs and the individual defendants agree with the magistrate judge that the case has proceeded "as one between competitors for more than a decade" and that "[n]o part of Dawgs's prior claims involved seeking redress for harm to consumers, the focus of the CCPA." Docket No. 908 at 3. They also argue that, while the new information Dawgs's wishes to rely upon for its amended complaint "might be relevant

to its Lanham Act claim, Dawgs has not shown that it could [not] have brought a CCPA sooner." *Id.* Further, Crocs and the individual defendants argue that permitting Dawgs to amend its complaint again "would prejudice Crocs and the Court by extending and expanding what has already been a long-running and contentious process that should be drawing to a close." *Id.*[3]

The Court finds Dawgs's objections unconvincing. A plaintiff may bring a claim under either, or both, the Lanham Act or the CCPA when a misrepresentation is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). Yet, as the magistrate judge explained, the two laws have different purposes. The Lanham Act was enacted to prevent unfair competition, while the CCPA was enacted to regulate commercial activities that harm the public. Docket No. 897 at 6–7. Dawgs disputes neither of these points of law.

Rather, Dawgs relies on its discovery of "new" evidence that relates mostly to the fact that Croslite is not and has never been patented. Dawgs explains that it learned – after it filed its original false advertising counterclaims and after the deadline for amended pleadings – of "the specific origins and intent behind [Crocs's] false promotion campaign, as well as the individuals involved." Docket No. 849 at 5. In particular,

---

[3] Crocs and the individual defendants also argue that Dawgs has identified no legal or factual error in the magistrate judge's recommendation and that, because Dawgs has raised almost no specific objections, the Court should review the recommendation for clear error. *Id.* at 4. As explained above, the Court would overrule Dawgs's objections even if they raised new facts or arguments.

Dawgs claims that it learned, among other things, of Crocs's efforts to differentiate Croslite "from a technical perspective[,] because the attributes for their actual material – closed cell foam – 'are not unique to Croslite'," after the deadline for amending pleadings passed.  *Id.* (quoting Docket No. 849-2).  Dawgs repeats some of these arguments in its reply.  Docket No. 912.   However, this is not the case.  Dawgs has consistently made false advertising arguments since 2016, alleging, among other things, that "Crocs has consistently and persistently falsely claimed in promotional materials over the course of thirteen years, that Crocs owns patent rights in the Croslite material, including for example the statement on its website that 'Built for your job with the comfort of our patented Croslite material, Crocs comfortable work shoes help support your feet for those long hour shifts.'"  Case No. 16-cv-02004, Docket No. 1 at 22, ¶ 22 (quoting Crocs's website) (internal quotation omitted).  Dawgs further alleged that Crocs and the individual defendants falsely advertised Croslite "purposefully and with the knowledge that its statements are false."  *Id.* at 23, ¶ 22.  And, as Crocs and the individual defendants explain, Dawgs, in its SAAC, already alleged the contents, identity, time, place, and consequences of the fraud.  Case No. 06-cv-00605, Docket No. 908 at 7, 7 n.1 (citing SAAC at 107–08, ¶¶ 341–45).  As such, where, as here, "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  *Stanerson v. Colo. Blvd. Motors, Inc.*, No. 06-cv-00856-WYD-MEH, 2006 WL 3190520, at *1 (D. Colo. Nov. 2, 2006) (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)).

This Court, like the court in *Stanerson,* finds *Trustmark Ins. Co. v. Gen. Cologne Life Re. of Am.*, 424 F.3d 542, 553 (7th Cir. 2005), persuasive. In that case, Trustmark requested leave to amend the scheduling order despite "harbor[ing] suspicions" of misrepresentation, which it confirmed during discovery. *Id.* In affirming the district court's denial of Trustmark's motion to amend, the Seventh Circuit held that "Trustmark was, or should have been, aware of the facts underlying" its claim far earlier, *id.*, and should have been more diligent. *Stanerson*, 2006 WL 3190520, at *2. Dawgs, too, was aware of the facts underlying its intended CCPA claim far earlier, at least since 2016, and as such has not shown good cause sufficient to meet Rule 16's "more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

Furthermore, denial of leave to amend under Rule 15(a) may be "justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank*, 3 F.3d at 1365 (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)); *accord Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). While delay alone is an insufficient ground to deny leave to amend, "[a]t some point . . . delay will become undue." *Minter*, 451 F.3d at 1205 (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004)). The longer the delay, the more likely the motion to amend will be denied because "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to

11

withhold permission to amend." *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). Delay is undue where "the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Asten v. City of Boulder*, No. 08-cv-00845-PAB-MEH, 2010 WL 5464297, at *1 (D. Colo. Dec. 29, 2010) (citing *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)). As described above, the Court finds the motion is untimely because Dawgs could have, but chose not to, allege the CCPA claims in its earlier complaint. In its reply in support of its motion for leave to amend, Dawgs admits to Crocs's characterization that Dawgs's "new counsel sees the arguments and issues slightly differently than prior counsel, and therefore modified the prior pleadings and briefing." Docket No. 865 at 3 n.1. Had Dawgs's previous counsel seen the arguments and issues as its present counsel does, presumably Dawgs would have raised a CCPA claim earlier. That Dawgs's former counsel failed to see the supposed benefits of pleading a CCPA violation does not provide good cause for its current counsel to amend its complaint years later. Thus, the Court finds that the denial of the proposed amendment based on undue delay is appropriate here.

In the Tenth Circuit, one of the "most important [] factor[s] in deciding a motion to amend the pleadings [] is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. While discovery is still open, Docket No. 844 at 8; Docket No. 925 at 9, the Court agrees with the magistrate judge that the parties "are finally poised to bring an end to this long running dispute." Docket No. 897 at 10. Indeed, Dawgs stated that, on September 8, 2020, "Crocs made what was supposed to be its near-final production . . . covering a 16-year period" although Dawgs insists there

are "large time and subject matter gaps in the production." Docket No. 880 at 8. Permitting Dawgs to amend its complaint by adding another claim at this stage of the fourteen-year-long litigation would cause undue prejudice to Crocs because it would extend discovery by at least six months according to Dawgs's submission in the parties' joint status report. Docket No. 844 at 6[4]

Undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208. This is the case here. Dawgs's proposed CCPA claim requires proof that Crocs's practice "significantly impacted the public as actual or potential consumers of the defendant's goods, services, or property." *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1114 (D. Colo. 2004). This consumer-focused element is absent from a plaintiff's burden under the Lanham Act. *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002). If the Court granted the motion, Dawgs agrees that the parties would need to engage in an extended period of discovery. Docket No. 880 at 10–11. This would cause undue prejudice to Crocs. *See Gorsuch*, 771 F.3d at 1235; *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1988) (affirming district court's denial of a motion to amend as the case was "near resolution and discovery had been completed"); *Semsroth v. City of Wichita*, 2006 WL 2570557, at *5 (D. Kan. Sept. 5,

---

[4] Dawgs claims in reply that the timeline set forth in the joint status report "had nothing to do with the CCPA claim," but rather that "fact discovery will take that long regardless of whether the CCPA claim is added." Docket No. 912 at 3. This seems unlikely, however, as it was Dawgs that asked for additional time in the joint status report and seeks discovery on consumer information, central to a CCPA claim. Docket No. 844 at 6, 12–13.

2006) (denying motion to file amended class action complaint because significant discovery had occurred, written discovery requests had been served, and the proposed complaint contained new factual allegations). The Court will therefore deny Dawgs's motion.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 897] is **ACCEPTED**. It is further

**ORDERED** that Counterclaim Plaintiffs' Objection to Magistrate Judge Kathleen Tafoya's Report and Recommendation Recommending Denial of Motion for Leave to File Third Amended Answer and Counterclaims against Crocs and First Amended Complaint Against the Individual Defendants [Docket No. 900] is **OVERRULED**. It is further

**ORDERED** that Dawgs's Motion for Leave to File Third Amended Answer and Counterclaims Against Crocs and First Amended Complaint Against the Individual Defendants [Docket No. 849] is **DENIED**.

DATED March 11, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge