IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-KMT
(Consolidated with Civil Action No. 16-cv-02004-PAB-KMT)

---

Civil Action No. 06-cv-00605-PAB-KMT

CROCS, INC.,

      Plaintiff,

v.

EFFERVESCENT, INC., et al.,

      Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC., et al.,

      Plaintiffs,

v.

RONALD SNYDER, et al.,

      Defendants.

---

**ORDER**

---

This matter is before the Court on (1) the Motion for Summary Judgment of

Lanham Act Claim [Docket No. 909] filed by Crocs, Inc. ("Crocs") and the Individual

Defendants;[1] (2) the motions to dismiss filed by U.S.A. Dawgs, Inc. and Double

---

[1] The "Individual Defendants" include Ronald Snyder, Lyndon Hanson, Daniel Hart, Sara Hoverstock, Jeffrey Lasher, Donald Lococo, Michael Margolis, John P. McCarvel, and Erik Rebich (together with Crocs, "Crocs").

Diamond Distribution Ltd. (individually and/or collectively, with Mojave Desert Holdings, LLC, referred herein as "Dawgs") pursuant to Federal Rule of Civil Procedure 41(a)(2) [Docket Nos. 997, 1019];[2] and (3) Dawgs's Motion for Leave to File Supplemental Opposition to Crocs, Inc.'s Motion for Summary Judgment in View of New Survey Evidence from Both Parties [Docket No. 1002].  The Court first considers Crocs's motion for summary judgment, then Dawgs's motion to file a supplemental summary judgment response, and finally Dawgs's motions to dismiss.

## I.  CROCS'S MOTION FOR SUMMARY JUDGMENT

### A.  Background[3]

In its Lanham Act counterclaim against Crocs, Dawgs alleges, among other things, that Crocs falsely marketed its shoes in violation of the Lanham Act by advertising Croslite, the foam material that Crocs shoes are made from, as "patented," "proprietary," and "exclusive."  Docket No. 909 at 2, ¶ 1 (citing Docket No. 487 at 107–08, ¶¶ 341–47).  Dawgs also asserts that the Individual Defendants are liable under the Lanham Act for, among other things, causing Crocs to make statements that Croslite is patented, proprietary, and exclusive.  *Id.*, ¶ 2 (citing Docket No. 487 at 105–06, ¶¶ 255–62).  When asked in an interrogatory why Dawgs lost sales due to Crocs's advertising, Dawgs stated that it "received numerous inquiries from its

---

[2] The Court also considers Dawgs's Unopposed Motion for Leave to File Amended Reply in Support of its Motion to Dismiss [Docket No. 1018].

[3] All facts are undisputed unless otherwise noted.  The Court assumes familiarity with this fifteen-year-long dispute and will not detail the procedural history or background facts beyond what is necessary to resolve this motion for summary judgment.  Additional background can be found in previous orders and recommendations.  *See, e.g.*, Docket Nos. 673, 897.

customers and potential customers regarding Dawgs'[s] foam material in comparison with Croslite" and that these inquiries "have consistently revealed a concern that Croslite is superior *because it is held out as patented, exclusive*[,] *or proprietary* such that[,] in the mind of the customer, Crocs is *perceived to have invented* a superior [ethyl vinyl acetate ("EVA")] material that no other manufacturer can match." *Id.* at 2–3, ¶ 3.

Crocs admits that its advertisements have "linked" such terms as "patented," "proprietary," and "exclusive" to features, characteristics, and qualities of the product material, Docket No. 913 at 4, ¶ 1,[4] and that Crocs's goal in its Croslite messaging was to imply that its products have "superior characteristics, qualities, and features." *Id.* at 5, ¶ 2.[5]

---

[4] The parties dispute the effect of these advertising terms. Dawgs states that the terms were "leveraged . . . in order to drive a price premium and an image of product superiority." *Id.* Crocs disagrees with the implication that the terms "drove a 'price premium' or 'image of product superiority.'" Docket No. 916 at 2, ¶ 1. Dawgs also insists that customers have been misled into believing that Crocs's shoe material is better than competitors', Docket No. 913 at 5–6, ¶ 3, which Crocs disputes. Docket No. 916 at 3, ¶ 3.

[5] Dawgs states that its false-advertising theory is found in its second amended complaint and counterclaim as well as in its response to Crocs's interrogatories. *Id.* at 6, ¶ 5. This statement is not a disputed fact that could preclude summary judgment, but rather appears to be legal argument that is not permitted in this section. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.vii. Even if this were a fact, however, Dawgs fails to support it with a specific reference to the material in the record. *See id.* at § III.F.3.b.v ("Each separately numbered and paragraphed fact shall be accompanied by a **specific reference** to material in the record which establishes the fact or at least demonstrates that it is disputed."). Dawgs cites to its entire 112-page second amended complaint and counterclaim and its fourteen-page supplemental interrogatory response. *See* Docket No. 913 at 6, ¶ 5. The Court's practice standards state that "[g]eneral references to pleadings, depositions, or documents are insufficient if the document is over one page in length." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.ii; *see also* D.C.COLO.LCivR 56.1(c).

**B.  Legal Standard**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designaSeptember 13, 2021te "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations

4

omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### C.  Analysis[6]

The Lanham Act provides, in relevant part:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[6] The Federal Circuit has exclusive original appellate jurisdiction over patent cases pursuant to 28 U.S.C. § 1295(a)(1).  *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1323 (Fed. Cir. 2009).  In deciding whether to apply its own law or the law of the circuit from where a case arises, the Federal Circuit consults a "courtesy rule" under which it applies the law of the regional circuit on certain procedural matters and non-patent issues.  *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996).  However, the Federal Circuit applies "[its] own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right."  *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (internal quotation marks omitted); *see also Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1241 (D. Colo. 2010).  As a result, in considering the Lanham Act claims, the Court applies the law of the Tenth Circuit.  *See Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) (citations omitted).

15 U.S.C. § 1125(a)(1).  Thus, the Lanham Act "creates two distinct bases of liability; false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).

To succeed on a false advertising claim, a plaintiff must show: "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to [] the origin, association or approval of the product with or by another . . . ; and (4) injure the plaintiff." *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018).  False association claims are similar, except that in a false association claim, a plaintiff "alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *See Amazon Inc. v. Cannondale Inc.*, No. 99-cv-00571-EWN-PAC, 2000 WL 1800639, at *7 (D. Colo. July 24, 2000).  At issue here is whether Crocs's advertisements about Croslite were statements of authorship and inventorship, not covered by the Lanham Act's false advertising provisions, or statements of origin and thus within the Lanham Act's scope.

Dawgs's Lanham Act claim against the Individual Defendants is that the Individual Defendants have misled "the public and consumers by claiming that Crocs footwear is made of an exclusive and proprietary closed-cell resin that they call 'Croslite,' when, in fact, 'Croslite' is merely the common ethyl vinyl acetate used by many footwear companies around the world."  Docket No. 273-1 at 106, ¶ 256.  Dawgs

argues that these statements, referring to Croslite as "exclusive," "proprietary," or "patented," are false and misleading, are prohibited by the Lanham Act, and have induced customers into believing that Crocs's footwear is made of a material "different than any other footwear" and that Crocs "owns the rights to such material." *Id.*, ¶¶ 257, 259.  Similarly, Dawgs's Lanham Act claim against Crocs is that Crocs has made the same statements and that its false advertising "explicitly and implicitly attempts to, and does, deceive consumers and potential consumers into believing that all other molded footwear, including molded footwear sold by [Dawgs], is made of inferior material compared to Crocs'[s] molded footwear."  Docket No. 487 at 108, ¶ 345.

Crocs seeks summary judgment on Dawgs's Lanham Act counterclaim against Crocs as well as Dawgs's Lanham Act claim against the Individual Defendants.  *See generally* Docket No. 909.  Crocs argues the terms "patented," "proprietary," and "exclusive" say "nothing about the *material* itself, but instead refer to *authorship* or *inventorship*," which "are not within the scope of the false advertising provision of the Lanham Act."  *Id.* at 1–2.  Crocs argues that neither § 1125(a)(1)(A) nor § 1125(a)(1)(B) is implicated by its advertising.  *Id.*

As to § 1125(a)(1)(A), which concerns false statements regarding the "origin, sponsorship, or approval" of goods, Crocs relies on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  In *Dastar*, the producer and several distributors of a television series about General Eisenhower's military campaign in Europe during World War II, that is now in the public domain, alleged that Dastar violated § 1125(a)(1)(A) when it sold, as its own product and without attribution to the creator, a

lightly edited version of the television series.  539 U.S. at 26–28.  The respondent

argued that, in marketing and selling the new series as its own without acknowledging

the nearly "wholesale reliance" on the earlier series, petitioner made a "false

designation of origin, false or misleading description of fact, or false or misleading

representation of fact."  *Id.* at 31.  The Court held that application of the term "origin" of

goods in the Lanham Act is not limitless.  *Id.* at 29.  "Origin" is "incapable of connoting

the person or entity that originated the ideas or communications that 'goods' embody or

contain."  *Id.* at 31–32.  That is, the term "origin of goods" does not refer to the producer

of the earlier television series.  The Court concluded that "the phrase [origin of goods]

refers to the producer of the tangible goods that are offered for sale, and not to the

author of any idea, concept, or communication embodied in those goods."  *Id.* at 37.

The Court determined that, because there was no dispute as to the origin of the

tangible goods, i.e., the newer series that was offered into the market by Dastar, there

was no Lanham Act violation.  Even if Dastar's representation of itself as the "producer"

of its videos "amounted to a representation that it originated the creative work conveyed

by the videos, allowing a cause of action under [the Lanham Act] for that representation

would create a species of mutant copyright law."  *Id.* at 34 (internal citation and

quotation omitted).  Crocs argues that because there is no dispute that it is the

producer of the tangible item, Crocs's shoes, there is no § 1125(a)(1)(A) violation under

*Dastar*.  Docket No. 909 at 6.

The Court finds that there are no genuine issues of material fact as to the

§ 1125(a)(1)(A) issues because there is no dispute regarding the origin of the tangible

goods, i.e., Crocs shoes, that are offered for sale, and *Dastar* holds that the Lanham Act does not provide a cause of action for claims concerning authorship.  *See Dastar*, 539 U.S. at 37.  That is, there is no dispute that Crocs produced Croslite and the shoes, just as there was no dispute that Dastar produced the video series.  *See also Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. 2009) (holding that because Baden had not argued that someone other than Molten produced the allegedly infringing basketballs, and nothing in the record indicated as such, Baden's claims were not actionable under § 1125(a)(1)(A) because they do not "cause confusion . . . as to the origin" of the basketballs).  Dawgs appears to concede this and focuses its argument on § 1125(a)(1)(B).  *See* Docket No. 913 at 10 (arguing that Crocs's conduct "goes to the heart of the Lanham Act's prohibition on false advertising regarding the 'nature, characteristics, or qualities' of a product" (citing § 1125(a)(1)(B))).  Thus, the Court finds that, as held in *Dastar*, § 1125(a)(1)(A) of the Lanham Act does not prohibit the conduct complained of here.  *See MDM Grp. Assocs., Inc. v. ResortQuest Int'l, Inc.*, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *6 (D. Colo. Oct. 1, 2007).[7]

As to § 1125(a)(1)(B), which concerns false statements about the "nature, characteristics, qualities, or geographic origin" of goods, Crocs relies on *Baden Sports*. In *Baden Sports*, Baden, a basketball manufacturer, argued that Molten had engaged in false advertising when Molten claimed that its basketballs were "innovative," "exclusive,"

---

[7] Because the Court has found no genuine dispute of material fact as to Dawgs's false designation of origin claim, any issue about whether the statements caused consumer confusion under § 1125(a)(1)(A) is immaterial.  In other words, because there is no dispute about the origin of Crocs's shoes or Croslite, there can be no confusion on that issue.

and "proprietary" when its "innovative" layer of padding beneath the cover was invented by Baden, not Molten.  556 F.3d at 1303.  The district court granted Molten's motion for summary judgment, finding that "exclusive" and "proprietary" were terms that conveyed that Molten invented and owned the basketball technology, and  held that those terms were excluded from Lanham Act liability under *Dastar*.  *Id.*  However, the court denied summary judgment on Molten's use of the word "innovative" because, the district court held, that term does not necessarily connote inventorship, but rather could describe the "nature, characteristics, or qualities of the basketballs themselves."  *Id.* (internal citation omitted).

The Federal Circuit reversed, holding that § 1125(a)(1)(B) did not bar the statements because "[n]o physical or functional attributes of the basketballs [were] implied by Molten's advertisements."  *Id.* at 1307.  Rather, the court held that use of the terms "innovative," "exclusive," and "proprietary" involves a "false designation of authorship," but "authorship, like licensing status, is not a nature, characteristic, or quality as those terms are used in [§ 1125(a)(1)(B)]."  *Id.*  Similarly, the Sixth Circuit in *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, applied *Dastar* and granted summary judgment, holding that "a misrepresentation about the source of the ideas embodied in a tangible object . . .  is not a misrepresentation about the nature, characteristics, or qualities of the object" for the purposes of § 1125(a)(1)(B).  796 F.3d 576, 590 (6th Cir. 2015).

Crocs argues that Dawgs's claims are about "misrepresentations of inventorship" or the "source of the ideas" (Croslite) "embodied in a tangible object" (Crocs shoes), which are not actionable under the Lanham Act, rather than the origin or nature,

characteristics, or qualities of Crocs's shoes, which are actionable.  Docket No. 909 at 5–6 (citing *Kehoe*, 796 F.3d at 590).  In characterizing Dawgs's arguments, Crocs cites Dawgs's Lanham Act claim and counterclaim.  *See, e.g.*, Docket No. 487 at 13, ¶ 7 (Crocs's "promotional materials touted Croslite was unique enough to be 'patented,' but in truth Crocs never sought a patent.  Nor was Croslite 'proprietary' or 'exclusive' – as Crocs has claimed – when Crocs just copied it."); *id.* at 25, ¶ 46 ("After copying [the] formula Crocs named its knock-off material 'Croslite' and outrageously began touting that Croslite was 'patented,' 'exclusive' and/or 'proprietary,' when it was none of those things."); Docket No. 273-1 at 105–06, ¶ 256 (Crocs and the Individual Defendants "have been misleading the public and consumers by claiming that their footwear is made of an exclusive and proprietary closed-cell resin that they call 'Croslite' when, in fact, 'Croslite' is merely the common ethyl vinyl acetate used by many footwear companies around the world.").

Dawgs argues that Crocs has misunderstood or misconstrued Dawgs's false advertising arguments.  Docket No. 913 at 1.  Dawgs asserts that Crocs has falsely advertised Croslite as patented, proprietary, and exclusive in order to create a false impression regarding specific qualities and characteristics of its shoe material, including that its shoes are superior to competitors', that they are soft, comfortable, lightweight, odor-resistant, and non-marking, which goes to the nature, characteristics, or qualities of the products.  *Id.* at 1–2.  Dawgs asserts that this has influenced customers and their purchasing decisions, thus meeting the elements of § 1125(a)(1)(B) liability.  *Id.* at 2.  Dawgs also argues that Crocs advertised that, "as a result of the material being patented, proprietary, and/or exclusive, its shoe material has superior qualities and

11

features, and implied [that] other competitors . . . used inferior materials," which goes to the heart of the Lanham Act's "prohibition against false advertising regarding the 'nature, characteristics, or qualities' of a product."  *Id.* at 10 (quoting § 1125(a)(1)(B)). But while this may be Dawgs's argument today, Dawgs did not make these arguments in its claim or counterclaim.  In its claim and counterclaim, Dawgs argued that Croslite is merely a variation of ethyl vinyl acetate used by many footwear companies around the world and that, by Crocs claiming to have invented Croslite, Crocs has implied that Dawgs's footwear is inferior.  *See* Docket No. 487 at 107–08, ¶¶ 341, 345 (claim); Docket No. 273-1 at 105–07, ¶¶ 256, 260 (counterclaim).  Dawgs did not mention anything about Croslite being soft, comfortable, lightweight, odor-resistant, or non-marking.

      Moreover, Dawgs argues that none of the cases that Crocs relies on is relevant to Dawgs's false advertising claims because the cases only hold that "false designations of authorship, and misrepresentations about the intellectual origin of a product, are not, by themselves, within the literal scope of the Lanham Act."  Docket No. 913 at 3.  Dawgs states that it "has alleged that Crocs used false claims that its shoe material was patented, proprietary, and/or exclusive, to differentiate the qualities, properties, and characteristics of the material in the eyes of the consumer."  *Id.* at 7.

      More specifically, Dawgs seeks to distinguish *Dastar* because, Dawgs argues, in *Dastar*, the issue was whether the company had made a false designation of origin likely to cause confusion about the origin of the videotapes, while here the issue is whether Crocs's use of terms like "patented" misrepresented the nature, characteristics,

or qualities of the shoes under § 1125(a)(1)(B).  *Id.* at 8 (citing *Dastar*, 539 U.S. at 38).  Similarly, Dawgs argues that *Baden Sports* was focused "*solely* on advertising directed to the creative origin of the falsely advertised product," which the court held was "not a nature, characteristic, or quality" under § 1125(a)(1)(B).  *Id.* (citing *Baden Sports*, 556 F.3d at 1307).  Additionally, Dawgs seeks to distinguish *Baden Sports* because the Federal Circuit applied the law of the Ninth Circuit regarding the Lanham Act claim, which, Dawgs argues, makes the case less relevant.  *Id.* (citing *Baden Sports*, 556 F.3d at 1304).

The parties dispute whether consumers have been misled into believing that Crocs's shoe material, Croslite, is better than competitors' material because the consumers believe that Crocs shoes are made from superior, patented, proprietary material that no other consumer can use.  Docket No. 913 at 5, ¶ 3.  The parties also dispute whether this disagreement is material to the Lanham Act claims.  *See* Docket No. 916 at 3, ¶ 3 ("Nor is customer confusion material under *Dastar*.").[8]

 While *Baden Sports* is not binding on the Court because the Federal Circuit applied the law of the Ninth Circuit, the Court finds persuasive its reasoning that claims of authorship do not concern the nature, characteristics, or qualities of a product as those terms are used in § 1125(a)(1)(B).  *See Baden Sports*, 556 F.3d at 1307.  Moreover, though neither the Supreme Court in *Dastar* nor the Federal Circuit in *Baden*

---

[8] Crocs also argues that Dawgs's purported evidence of consumer confusion, unauthenticated screenshots from online reviews of Crocs shoes, are inadmissable double hearsay.  *Id.*  The Court agrees that the screenshots, as presented by Dawgs, are not admissible evidence and, as such, cannot create a genuine issue of material fact to overcome summary judgment.  *See* Fed. R. Civ. P. 56(c)(2).

*Sports* considered the use of the word "patented," the Court in *Dastar* held that the Lanham Act must be limited to its text and "common-law foundations" in order to avoid creating a "cause of action for, in effect, plagiarism," *see* 539 U.S. at 37, since the Lanham Act is not to be read as co-extensive with patent or copyright laws. *See id.* at 33–34. Further, the court in *Baden Sports* considered terms that the court likened to claims of inventorship. 556 F.3d at 1303. Falsely claiming to have "patented" something is akin to claiming to have "invented" it, *see id.* at 1307, and to plagiarizing or reverse passing off,[9] which *Dastar* held not to be covered by the Lanham Act's false advertising prohibition.

As in *Baden Sports*, Dawgs is attempting to "avoid the holding in *Dastar* by framing a claim based on false attribution of authorship" – that Croslite was not patented, proprietary, or exclusive, just as Baden claimed that Molten's basketballs were not innovative – "as a misrepresentation of the nature, characteristics, and qualities of a good." *See* 556 F.3d at 1307. But, as in *Baden Sports*, Dawgs has alleged nothing more than a false designation of authorship, i.e., that Crocs falsely claimed it created Croslite, when, in fact, Croslite is "merely the common ethyl vinyl acetate used by many footwear companies around the world." Docket No. 273-1 at 106, ¶ 256. The Court also finds persuasive the reasoning in *Kehoe*, where the Sixth Circuit applied *Dastar* to grant summary judgment, holding that "a misrepresentation

---

[9] "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." *Dastar*, 539 U.S. at 27 n.1 (citing *O. & W. Thum Co. v. Dickinson*, 245 F. 609, 621 (6th Cir. 1917)). "'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else' s goods or services as his own." *Id.* (citing *Williams v. Curtiss-Wright Corp.*, 691 F.2d 168, 172 (3rd Cir. 1982)).

about the source of the ideas embodied in a tangible object . . . is not a misrepresentation about the nature, characteristics, or qualities of the object."  796 F.3d at 590.  Here, even assuming that Crocs misrepresented the source of the ethyl vinyl acetate as a proprietary and exclusive foam, Croslite, *Kehoe* explains that is not enough for a Lanham Act false advertising claim under § 1125(a)(1)(B).

Dawgs argues that Crocs's advertising of its shoes as superior is indistinguishable from Crocs's advertising that Croslite is "exclusive" or "proprietary." Neither statement concerns the nature, characteristics, or qualities of the product for the reasons discussed above.  Moreover, a claim of superiority is puffery, which is not actionable under the Lanham Act.  *See Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 788–89 (10th Cir. 2016) (unpublished) (affirming dismissal of Lanham Act challenge to hospital's claim that it had "best" or "high[est] quality" care).  Therefore, the Court finds Crocs is entitled to summary judgment on Dawgs's Lanham Act claim and counterclaim.[10]

## II.  DAWGS'S MOTION FOR LEAVE TO SUPPLEMENT SUMMARY JUDGMENT RESPONSE

---

[10] Because the Court has found no genuine dispute of material fact as to Dawgs's false designation of origin, the Court need not consider whether Crocs's statements caused consumer confusion.  Moreover, because the Court has found that Dawgs has failed to establish a genuine issue of material fact that Crocs made a "false or misleading representation[] . . . in connection with the commercial advertising or promotion of its product," the Court need not consider the issue of consumer confusion. *See Digital Ally*, 882 F.3d at 978 (listing elements of a false advertising claim under § 1125(a)(1)(A): "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to [] the origin, association or approval of the product with or by another . . . ; and (4) injure the plaintiff").

Although Dawgs did not file a motion under Federal Rule of Civil Procedure 56(d) to conduct discovery before responding to the summary judgment motion, it now claims that its declaration in response to Crocs's motion invoked Rule 56(d).  Docket No. 1002 at 8.  Rule 56(d) permits the Court to, among other things, deny a premature summary judgment motion, delay ruling on such a motion, or allow additional time to take discovery or obtain information.  To succeed on a Rule 56(d) motion, "the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment."  *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (citation omitted); *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).  "Summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Id.* (alterations omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  However, "relief under Rule 56(d) is not automatic," *id.* (citation omitted), and is an alternative relief that is waived where a party responds to a motion for summary judgment.  *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) ("The protection afforded by [Rule 56(d)] is an alternative to a response in opposition to summary judgment under [56(c)] and is designed to safeguard against a premature or improvident grant of summary judgment."); *Villa v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 931 F.2d 900 (Table), 1991 WL 70714, at *4 (10th Cir. 1991) ("[Rule 56(d)] may be used only as an alternative

16

to the filing of a brief and answer under [Rule 56(c)].  And when, as here, a party has responded to a summary judgment motion under [Rule 56(c)], that party waives any option it may have had to proceed under [Rule 56(d)].").

Because Dawgs responded to Crocs's motion for summary judgment, on December 16, 2020, it waived its ability to retroactively seek relief under Rule 56(d) six months later, on June 30, 2021.  *See Pasternak*, 790 F.2d at 833; *Villa*, 1991 WL 70714, at *4.  Nevertheless, even if Dawgs had not waived its Rule 56(d) argument, the Court would find that Dawgs failed to satisfy the requirements under *Cerveny*.  In its motion for leave, Dawgs relies on three paragraphs from a declaration provided with its response to Crocs's summary judgment motion.  *See* Docket No. 1002 (citing Docket No. 913-1 at 6, ¶¶ 23–25).  The declaration states that there are likely numerous instances of Croslite, the foam material that Crocs uses to make its shoes, being falsely promoted as proprietary or patented and having superior qualities, that discovery was ongoing, that Dawgs's counsel and Crocs's counsel had not been able to meet and confer before Dawgs's deadline to respond to Crocs's summary judgment motion, that depositions were being scheduled, and that Dawgs expected to develop additional evidence.  Docket No. 913-1 at 6, ¶¶ 23–25.  This is not sufficient to raise a Rule 56(d) argument.  Even if the affidavit were sufficient to meet first three requirements in *Cerveny*, the affidavit does not show how the information would be sufficient to create a genuine issue of material fact to defeat summary judgment.  *See Cerveny*, 855 F.3d at 1110; *Campbell*, 962 F.2d at 1522.  The Court will therefore deny Dawgs's motion for leave to file a supplemental response to Crocs's summary judgment motion.

17

### III.  DAWGS'S MOTIONS TO DISMISS

The Court finally considers Dawgs's motions to dismiss four of the Individual Defendants – Jeffrey Lasher, Erik Rebich, Daniel Hart, and Sara Hoverstock – pursuant to Rule 41(a)(2).  *See* Docket Nos. 997, 1019.  Rule 41(a)(2) provides that a case may be "dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Rule 41(a)(2) is designed to prevent voluntary dismissals that adversely affect the opposing party.  *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005).  Dawgs seeks dismissal of its counterclaims against Lasher, Rebich, Hart, and Hoverstock without prejudice or conditions.  Docket No. 997 at 2; Docket No. 1019 at 2. However, Dawgs states that it would agree to dismiss the counterclaims with prejudice if the Court granted the Individual Defendants' summary judgment motion.  Docket No. 997 at 3; Docket No. 1019 at 3.  In response, Lasher, Rebich, Hart, and Hoverstock argue that the dismissal should be with prejudice and that Dawgs be ordered to pay the costs incurred by them or by Crocs.  Docket No. 1007 at 5; Docket No. 1035 at 6. However, they ask the Court to defer ruling on the issue of attorney's fees so that issue may be addressed by separate motion.  Docket No. 1007 at 5; Docket No. 1035 at 6. Because the Court will grant the summary judgment motion for the reasons discussed in Part I and will dismiss with prejudice the Lanham Act claims and counterclaims, which are the only remaining claims against Lasher, Rebich, Hart, and Hoverstock, the issue of prejudice is resolved.

The questions of costs and attorney's fees remain.  "The issue of costs is somewhat different and somewhat more complicated than the granting of a motion to

dismiss with prejudice or without and the awarding of attorney's fees." *Williams v. Proud*, No. 09-cv-00157-PAB-MJW, 2009 WL 10685274, at *2 (D. Colo. Oct. 29, 2009). This is because, rather than relying solely on the "terms and conditions" clause of Rule 41(a)(2), a defendant typically is entitled to its costs as "a prevailing party under Rule 54 when, in circumstances not involving settlement, the plaintiff dismisses its case against the defendant, whether the dismissal is with or without prejudice." *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 456 (10th Cir. 1995). This rule also applies even if the party did not prevail on every issue. *Id.* at 458 (citing *Roberts v. Madigan*, 921 F.2d 1047, 1058 (10th Cir. 1990); *Howell Petroleum Corp. v. Samson Resources Co.*, 903 F.2d 778, 783 (10th Cir.1990). Here, Dawgs has moved to dismiss its case against the individual defendants, and there is no indication that the dismissal involves a settlement. Lasher, Rebich, Hart, and Hoverstock are, therefore, prevailing parties.

Indeed, Rule 54(d)(1) creates "a presumption that the district court will award costs to the prevailing party." *Id.* at 458–59. Therefore, only where a district court can provide a "valid reason" for not awarding costs to a prevailing party will such a decision be upheld. *Id.* at 459. According to the Tenth Circuit, valid reasons for which a district court may deny costs to a prevailing party include: where a party was only partially successful; where prevailing parties were obstructive and acted in bad faith during the course of the litigation; where the damages awarded were nominal or recovery is otherwise insignificant; where the non-prevailing party was indigent; where the costs are unreasonably high or unnecessary; or where the issues are close and difficult. *Id.*

Furthermore, it is the non-prevailing party's burden to establish that a valid

reason exists for a denial of costs.  *See Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004).  In deciding whether the burden has been met, a court must keep in mind that "the denial of costs is in the nature of a severe penalty, and there must be some apparent reason to penalize the prevailing party if costs are to be denied."  *Id.* at 1190 (internal quotation marks omitted).  Dawgs, therefore, may avoid the payment of costs only if it can establish an exception to this general rule.  *See id.* As to Lasher, Rebich, and Hart, Dawgs relies on the exception mentioned in *Cantrell* that it is not an abuse of discretion for a district court to decline to award costs to a party that was only partially successful or only had nominal damages.  Docket No. 1016 at 4 (citing *Cantrell*, 69 F.3d at 459).  Dawgs insists that Lasher, Rebich, and Hart "did not actually *do* anything" and so should not be awarded costs.  Docket No. 1016 at 4.[11] The Court disagrees.  Dawgs has not overcome the presumption in Rule 54(d) for the Court to award costs, and Lasher, Rebich, Hart, and Hoverstock should not face the "severe penalty" of having costs withheld.  *See Rodriguez*, 360 F.3d at 1190.  Lasher, Rebich, Hart, and Hoverstock have been defendants in this matter for many years, *see, e.g.*, Docket No. 487, and, now that Dawgs has made the strategic decision to dismiss them from the lawsuit rather than risk losing at trial, they are entitled to the costs that they have incurred.  The Court will therefore award costs to Lasher, Rebich, Hart, and Hoverstock.

As to the issue of attorney's fees, Lasher, Rebich, Hart, and Hoverstock request

---

[11] Dawgs does not address the issues of costs with respect to Hoverstock except to note that she "barely participated as a defendant" and to ask that each side bear their own costs.  *See* Docket No. 1060 at 1, 4.

that the Court defer ruling on this issue so that they may file a separate motion or bring an action for malicious prosecution. Docket No. 1007 at 5; Docket No. 1035 at 6. A request for attorney's fees must be made by separate motion both under the Local Rules and Federal Rule of Civil Procedure 54(d)(2)(A). *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."); *see also* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). The Court therefore grants their request to defer ruling on attorney's fees until after they have filed a separate motion.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Crocs and the Individual Defendants' Motion for Summary Judgment of Lanham Act Claim [Docket No. 909] is **GRANTED**. It is further

**ORDERED** that Dawgs's seventh claim and fifteenth counterclaim are **DISMISSED with prejudice**. It is further

**ORDERED** that Counterclaim Plaintiffs' Motion to Dismiss [Docket No. 997] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that all claims against defendants Jeffrey Lasher, Erik Rebich, and Daniel Hart are **DISMISSED with prejudice**. It is further

**ORDERED** that Counterclaim Plaintiffs' Motion to Dismiss Defendant Sara Hoverstock [Docket No. 1019] is **GRANTED in part** and **DENIED in part**. It is further

ORDERED that all claims against defendant Sara Hoverstock are **DISMISSED with prejudice**.  It is further

ORDERED that Jeffrey Lasher, Erik Rebich, Daniel Hart, and Sara Hoverstock are awarded their costs, to be taxed by the Clerk of Court, pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

ORDERED that Counterclaim Plaintiffs' Unopposed Motion for Leave to File Amended Reply in Support of its Motion to Dismiss [Docket No. 1018] is **GRANTED**.[12] It is further

ORDERED that Dawgs's Motion for Leave to File Supplemental Opposition to Crocs, Inc.'s Motion for Summary Judgment in View of New Survey Evidence from Both Parties [Docket No. 1002] is **DENIED**.


DATED September 14, 2021.


BY THE COURT:


PHILIP A. BRIMMER
Chief United States District Judge

---

[12] The Court considered Dawgs's amended reply in ruling on its motion to dismiss.