IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-MEH
    (Consolidated with Civil Action No. 16-cv-02004-PAB-STV)

---

Civil Action No. 06-cv-00605-PAB-MEH

CROCS, INC.,

    Plaintiff,

v.

EFFERVESCENT, INC., et al.,

    Defendants.

---

Civil Action No. 16-cv-02004-PAB-STV

U.S.A. DAWGS, INC., et al.,

    Plaintiffs,

v.

RONALD SNYDER, et al.,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Counterclaim Plaintiffs' Objection to Magistrate Judge Kathleen Tafoya's Order (Dkt. No. 975) Awarding Sanctions in Connection with Crocs' Motion to Compel (Dkt. No. 947) [Docket No. 987], as well as the counterclaim plaintiffs', U.S.A. Dawgs, Inc. ("U.S.A. Dawgs"), Double Diamond Distribution, Ltd. ("Double Diamond"), and Mojave Desert Holdings, LLC ("Mojave"), collectively referred to as "Dawgs," Unopposed Motion to File Amended Reply to Crocs'

Opposition to Dawgs' Objections to Magistrate Judge's Sanctions Order (Dkt. 998) [Docket No. 1000].

## I.  BACKGROUND[1]

On May 11, 2021, Magistrate Judge Kathleen M. Tafoya held a hearing on a number of motions, including Crocs, Inc.'s Motion to Compel the Deposition Appearance and Testimony of Steven Mann [Docket No. 943] (the "motion to compel") and Crocs, Inc.'s Motion to Compel and for Sanctions Under Rule 37 [Docket No. 947] (the "motion for sanctions").  In her oral ruling, the magistrate judge granted both of the motions filed by Crocs, Inc. ("Crocs").  *See* Docket No. 975 at 1–3 (courtroom minutes).

### A.  Motion to Compel

In the motion to compel, Crocs explained that Steven Mann is the founder, CEO, president, and majority owner of Double Diamond and, prior to its dissolution, U.S.A. Dawgs.  Docket No. 943 at 2.  He is also a managing member of Mojave.  *Id.*  He is the "*only* Dawgs-affiliated witness that Dawgs now lists in its amended Rule 26(a) disclosures."  *Id.*  As such, Crocs served a single Federal Rule of Civil Procedure 30(b)(6) notice to cover all three Dawgs entities.  *Id.*  Dawgs designated Steven Mann as the "sole individual to speak on behalf of these entities."  *Id.*  However, as the parties were scheduling Steven Mann's deposition, and after most of the other depositions had been requested, Dawgs replaced Steven Mann as the Rule 30(b)(6) designee with Karen O'Dell, who previously worked at U.S.A. Dawgs.  *Id.* at 2–3.  In light of this, Crocs

---

[1] This fifteen-year dispute involves infringement and non-infringement claims related to three patents concerning variations of shoes made by Crocs, Inc. ("Crocs"). The background facts and procedural history are set out in previous orders and recommendation and will not be repeated here.  *See, e.g.*, Docket Nos. 673, 897.

requested a date for Steven Mann's individual deposition, but Dawgs refused to provide one on the grounds that it would be an eleventh deposition, meaning that Crocs would have to forego taking another deposition to depose Steven Mann.  *Id.*[2]

The magistrate judge ruled that Crocs would be permitted to take a two-day deposition, of up to 14 hours, of Steven Mann, regardless of previously set numerical deposition limits, and that Steven Mann's deposition will precede any Rule 30(b)(6) depositions for U.S.A. Dawgs, Double Diamond, or Mojave with each limited to seven hours of testimony time.  Docket No. 975 at 2.

**B.  Motion for Sanctions**

In the motion for sanctions, Crocs requested an order requiring counsel for Dawgs to permit Crocs to take depositions in the order of its choosing, compelling the production of documents responsive to Crocs's subpoena of James Mann, granting leave to re-depose James Mann in his personal capacity, and awarding attorney's fees and costs.  Docket No. 947 at 1–2.  Along with the issues discussed in the motion to compel regarding Steven Mann, Crocs states that it has run into issues with respect to Mojave.  Crocs states that it issued a subpoena for documents in advance of James Mann's April 16, 2020 deposition.  *Id.* at 3.  James Mann, however, never responded to the subpoena and testified that he had never seen it.  *Id.*  However, at his deposition, he confirmed that he had responsive documents.  *Id.*  After the deposition, counsel for

---

[2] Crocs disputes Dawgs's counting of the depositions.  According to Crocs, Dawgs has insisted that Crocs's Rule 30(b)(6) notice should count for three depositions, presumably since it pertains to three entities, Double Diamond, U.S.A. Dawgs, and Mojave.  *Id.*  At a previous scheduling conference, however, the magistrate judge confirmed that this would count as one deposition.  *See* Docket No. 226 at 63:1–14.

3

James Mann and Dawgs filed late responses and objections to the subpoena, but largely refused to produce documents. *Id.* Dawgs then announced that it was designating James Mann as the Rule 30(b)(6) witness for Mojave – after Crocs had already taken James Mann's deposition. *Id.* As a result, Dawgs caused the need for two Rule 30(b)(6) depositions after previously agreeing that Steven Mann would be the designee for all three entities. Second, Crocs argued that, if Dawgs intended for James Mann to be the Rule 30(b)(6) deponent for Mojave, Dawgs should have advised Crocs of this before James Mann's deposition so that Crocs could depose James Mann once, rather than twice. *Id.* Crocs argues that this conduct is sanctionable and seeks costs and fees for the additional deposition of James Mann as the Rule 30(b)(6) designee.

### C.  The Magistrate Judge's Order

The magistrate judge ruled that Crocs will be allowed to depose James Mann, or another Rule 30(b)(6) designee, for Dawgs. Docket No. 975 at 2. The magistrate judge also ordered sanctions under Federal Rule of Civil Procedure 37 in Crocs's favor as a result of Dawgs's "obstreperous and devious behavior with respect the scheduling of the depositions of James Mann, Steven Mann[,] and the three corporate depositions." *Id.*; *see also* Docket No. 980 at 43:4–19. The magistrate judge found that Dawgs's behavior was "designed to gain a tactical advantage in the litigation" and awarded to Crocs and against Dawgs (1) the reasonable costs incurred by Crocs, including reasonable attorney's fees, related to preparing the motion for sanctions and the reply brief; and (2) the increased incidental costs associated with having to depose James Mann a second time, including additional court reporter and videographer fees, but not

including attorney's fees, since the attorneys' time would have been spent regardless of Dawgs's "discovery interference."  Docket No. 975 at 2.

## II.  LEGAL STANDARD

"Timely objections to magistrate judge *recommendations* are reviewed de novo pursuant to Rule 72(b), rather than under the clearly erroneous/contrary to law standard applied to magistrate judge *orders* by Rule 72(a)."  *Gordanier v. Montezuma Water Co.*, No. 08-cv-01849-PAB-MJW, 2010 WL 935665, at *1 (D. Colo. Mar. 11, 2010).  However, when reviewing a party's objection to a magistrate judge's order on a non-dispositive matter, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997);  *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b).").

Dawgs does not argue that the magistrate judge's discovery order was dispositive, and the Court does not find it to be.  Thus, the Court will review the order under the clearly erroneous standard, which "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 365, 395 (1948)).  When applying the "clearly erroneous" standard, the Court is not entitled to reverse the magistrate judge's findings "simply because it is convinced that it would

have decided the case differently," and the Court may not decide factual issues de novo. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969)).

## III.  ANALYSIS

Dawgs objects that there is no basis to award sanctions either under Rule 37 or the Court's inherent power.  Docket No. 987 at 7.  Federal Rule of Civil Procedure 37(a)(5)(A) states that if a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[3]  That is, if a litigant is required to seek court intervention to obtain discovery responses by prosecuting a successful motion to compel, the offending party will be required to pay the costs for such unnecessary litigation.  *See also E. Colo. Seeds, LLC v. Agrigenetics, Inc.*, No. 19-cv-01885-LTB-KMT, 2020 WL 8870664, at *4 (D. Colo. Oct. 1, 2020), *report and recommendation adopted*, No. 19-CV-01885-LTB, 2021 WL 688873 (D. Colo. Jan. 21, 2021).  "Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination trial courts are accorded broad discretion."  *Gates Rubber Co. v. Bando Chem. Indust., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (internal quotation marks and further citation omitted)).

---

[3] Sanctions are not appropriate, however, if the non-response "was substantially justified"; "the opposing party's nondisclosure, response, or objection was substantially justified"; or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).  Dawgs does not argue that any of these exceptions applies.

Dawgs makes numerous arguments attempting to justify its conduct. However, these arguments are largely just a repetition of its responses to Crocs's motions and the arguments that it made at the hearing. As the Court has previously explained to Dawgs, "[i]n objecting to the magistrate judge's recommendation, [a party] must raise specific arguments addressing purported errors in the recommendation; [the party] may not reiterate its identical arguments hoping to get a different outcome." Docket No. 929 at 7 n.2 (quoting *Saleh v. Silco Oil Co.*, No. 19-cv-02973-PAB-NRN, 2020 WL 4915604, at *3 (D. Colo. Aug. 20, 2020) (citing *Vester v. Asset Acceptance, L.L.C.*, No. 08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) ("An 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers."))). This principle is especially applicable where, as here, the Court is not reviewing the magistrate judge's determination *de novo*. Nevertheless, while the Court need not consider these repeated arguments, the Court would overrule Dawgs's objection.

First, Dawgs argues that Rule 37 does not apply in this dispute because the rule authorizes sanctions only for "specific motions" listed under Section (a)(3), which include the failure of a deponent to respond to a question, the failure of a party to designate a witness under Rule 30(b)(6) or 31(a)(4), a party's failure to answer an interrogatory, and a party's failure to produce documents. Docket No. 987 at 7 (citing Rule 37(a)(3)(B)(i)–(iv). Dawgs provides no authority for its position, however, and its argument is made more unpersuasive by the fact that Rule 37 includes other instances where sanctions are permissible. *See, e.g.*, Fed. R. Civ. P. 37(b)–(f). Moreover, sanctions are permitted, as explained above, where a party prevails on a motion to

compel.  Fed. R. Civ. P. 37(a)(5)(A).

Second, Dawgs admits that it did not respond to the document subpoena regarding James Mann, but states that his was "inadvertent" and emphasizes that the error was "cured shortly thereafter."  Docket No. 987 at 7–8.  However, the documents were apparently not produced until after James Mann's deposition.  This prejudiced Crocs in deposing James Mann.

Third, Dawgs argues that, because the document subpoena was issued to James Mann in his personal capacity, sanctions for failing to respond should fall under Federal Rule of Civil Procedure 45(g) concerning contempt, not Rule 37, which applies to parties.  *Id.* at 8 n.2.  This argument is unconvincing because the Court has not sanctioned James Mann himself, but rather has sanctioned Dawgs, which is a party.  *See* Docket No. 975 at 2 (awarding costs to Crocs and against Dawgs).

Fourth, Dawgs insists that its post-deposition designation of the Rule 30(b)(6) designee is not sanctionable because Dawgs was entitled to designate whoever it wanted as its corporate representative and it offered James Mann for a second deposition.  *Id.* at 8.  The magistrate judge, however, did not dispute that Dawgs was free to designate whoever it wanted, *see* Docket No. 980 at 29:9–15, and the magistrate judge agreed that individual and Rule 30(b)(6) depositions are separate depositions in terms of counting against the total number of depositions.  *Id.* at 38:21–23.  However, by Dawgs "chang[ing] the playing field afterwards," the magistrate judge found that Dawgs had engaged in "massive game playing" and acted unfairly.  *Id.* at 40:13–20.  The Court finds no clear error in the magistrate judge's conclusion.

8

Fifth, Dawgs argues that there is no evidence of bad faith in any of its actions and states that it was Crocs that twice cancelled the Rule 30(b)(6) deposition originally scheduled for Steven Mann but changed to Ms. O'Dell.  Docket No. 987 at 9.  The most Dawgs could be faulted for, Dawgs believes, is changing the Rule 30(b)(6) deponent from Steven Mann to Ms. O'Dell, but it did so 23 days in advance of the deposition.  *Id.*  The Court disagrees.  The magistrate judge recounted the many instances of bad faith and gamesmanship.[4]

---

[4] Solely with regard to deposing James and Steven Mann, let alone Dawgs's conduct concerning the ignored subpoena, the magistrate judge explained,

> It looks to me like you are completely and totally playing games here. . . . You have told the attorneys for Crocs that Steven Mann was going to be a 30(b)(6).  He is the only witness that you really have, the only person with knowledge.  He's the guy that was in the middle of everything.

> And you let them take the deposition of his brother without telling him that "oh, by the way, we're going to change our mind and put James Mann up as the 30(b)(6)."  And you got everything scheduled, and then said "oh, no, I think we'll put up Steve Mann's wife as the 30(b)(6)."

> You can do whatever you want as far as designating who your 30(b)(6) witness is. That's totally up to you.  I can't make you be rational and reasonable about that.

> We all know, everybody knows, that it should be Steven Mann.  But if you don't want to do it because you're playing games, that's fine.

> But the alternative to that is I am going to give them Steve Mann individually for the same length of time that I would have given him for a 30(b)(6).  It's going to take more time, and I'm going to let them do it in the order that they want to, because you were the ones playing games and making these things necessary.

Docket No. 980 at 17:10–18:9.  The magistrate judge continued,

> So, to me, that's gamesmanship.  That's trying to get an advantage by lying to someone and then changing your mind.  And knowing that they're

Sixth, Dawgs asserts that parties have no right to demand depositions or discovery in a certain order. *Id.* at 9–10. Dawgs, however, fails to cite authority that the Court cannot order such a sanction, and the Court finds that, given Dawgs's behavior during discovery, such a requirement is appropriate here. *Cf. Clark v. C.I.R.*, 744 F.2d 1447, 1447 (10th Cir. 1984) ("Courts have the inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings.").

Finally, even if Dawgs's conduct did not directly violate Rule 37, the Court would affirm the magistrate judge's order under the Court's inherent authority to manage its docket and the litigation before it. *See Clark*, 744 F.2d at 1447; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ("[T]he inherent power extends to a full range of litigation abuses."). "[W]here a monetary sanction rests in substantial portion on a court's inherent authority to punish a party for bad-faith conduct unreachable by statute or rule . . . a court need not attribute a portion of the assessment to any particular statute or rule." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015) ("A district court's inherent power to sanction reaches beyond the multiplication of court proceedings and authorizes sanctions for wide-ranging conduct constituting an abuse of process."); *Guarneros v. Deutsche Bank Tr. Co. Americas*, No. 08-cv-01094-PAB-KLM, 2009 WL 1965491, at *6 (D. Colo. July 7, 2009) ("The Court may impose sanctions in the exercise of its inherent authority."). The Court finds that Dawgs's

---

pretty helpless, that there's nothing much they can do.
*Id.* at 22:22–25.

10

conduct as detailed above is sufficiently "contemptuous" of the discovery process as to be sanctionable. *Farmer*, 791 F.3d at 1258.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Dawgs' Unopposed Motion to File Amended Reply to Crocs' Opposition to Dawgs' Objections to Magistrate Judge's Sanctions Order (Dkt. 998) [Docket No. 1000] is **GRANTED**.[5]  It is further

**ORDERED** that Counterclaim Plaintiffs' Objection to Magistrate Judge Kathleen Tafoya's Order (Dkt. No. 975) Awarding Sanctions in Connection with Crocs' Motion to Compel (Dkt. No. 947) [Docket No. 987] is **OVERRULED**.

DATED March 28, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] The Court considered Dawgs's amended reply when ruling on Dawgs's objections to the magistrate judge's sanctions order.

11