IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-MDB

CROCS, INC.,

    Plaintiff,

v.

DOUBLE DIAMOND DISTRIBUTION, LTD., and
U.S.A. DAWGS, INC.,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Individual Defendants' Motion for Attorney's Fees [Docket No. 1081]. Defendants Double Diamond Distribution, Ltd. ("Double Diamond") and U.S.A. Dawgs, Inc. ("U.S.A. Dawgs" and, collectively with Double Diamond, "Dawgs") responded, Docket No. 1093, and the Individual Defendants replied. Docket No. 1096.[1]

## I. BACKGROUND

The Court assumes familiarity with this dispute and will not discuss the procedural history or background facts beyond what is necessary to resolve this motion. Additional background facts can be found in previous orders and recommendations.

---

[1] With the exception of George Boedecker, who settled separately, Docket No. 1081 at 2 n.2, the "Individual Defendants" are the eighteen current or former directors of plaintiff Crocs, Inc. ("Crocs") who Dawgs sued in Case No. 16-cv-02004, which the Court consolidated with this action on January 27, 2017. *See* Docket No. 426. All cites to docket entries without a case number refer to filings in Case No. 06-cv-00605.

*See, e.g.*, Docket Nos. 673, 897.[2]

On May 31, 2016, Dawgs asserted patent, false-advertising, antitrust, and state-law tort counterclaims against Crocs. *See generally* Docket No. 209. Shortly thereafter, Dawgs filed Case No. 16-cv-02004 against the Individual Defendants. Dawgs's claims against the Individual Defendants were almost verbatim copies of its counterclaims against Crocs. *Compare* Case No. 16-cv-02004, Docket No. 1 *with* Case No. 06-cv-00605, Docket No. 487. Sixteen of the eighteen defendants moved to dismiss. Case No. 16-cv-02004, Docket No. 31. Before ruling on that motion, the Court stayed discovery in Case No. 16-cv-02004 pending the outcome of the motion to dismiss. Case No. 16-cv-02004, Docket No. 63. The Court consolidated the two cases, Case No. 16-cv-02004, Docket No. 66; Case No. 06-cv-00605, Docket No. 426, and granted in part and denied in part the Individual Defendants' motion to dismiss. Docket No. 673. The Court dismissed all of Dawgs's claims except for the Lanham Act claim, which the Court found Dawgs plausibly alleged. *Id.* The parties proceeded to discovery, which was interrupted by an administrative closure related to U.S.A. Dawgs's bankruptcy between March 19, 2018 and July 14, 2020. Docket Nos. 821, 842.

On March 11, 2021, the Court dismissed Raymond Croghan, Ronald Frasch, Prakash Melwani, Michael Marks, Thomas Smach, Andrew Rees, Gregg Ribatt, and Andrew Reddyhoff for lack of personal jurisdiction. Docket No. 928. On March 23, 2021, as mentioned previously, the Court dismissed Mr. Boedecker pursuant to a

---

[2] The remaining claims in Case No. 06-cv-00605-PAB-MBD were set for a five-day jury trial to begin July 11, 2022. Docket No. 1104. On July 9, 2022, the parties notified the Court that Dawgs accepted Crocs's Federal Rule of Civil Procedure 68 offers of judgment. Docket Nos. 1177, 1178, 1179. The Court vacated the trial, Docket No. 1180, and entered final judgment. Docket No. 1182.

stipulation of dismissal.  Docket No. 931.  On September 14, 2021, the Court granted the motion for summary judgment filed by Ronald Snyder, Lyndon Hanson, Daniel Hart, Sara Hoverstock, Jeffrey Lasher, Donald Lococo, Michael Margolis, John P. McCarvel, and Erik Rebich, dismissing Dawgs's Lanham Act claim against those defendants. Docket No. 1071 at 2–15.  On July 1, 2022, the Court denied Dawgs's motion for reconsideration of that order.  Docket No. 1165.

The Individual Defendants argue that they are entitled to attorney's fees because Dawgs's suit "never had an objective basis in law or fact, was filed for an improper purpose, and was pursued in an unreasonable and vexatious manner."  Docket No. 1081 at 5–6.  Dawgs opposes the motion.  Docket No. 1093.  Dawgs argues that the motion is premature because final judgment has not entered and because the case is not "exceptional" under the Lanham Act.  *Id.* at 3.

## II.  LEGAL STANDARD

"'Our basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010).  The Lanham Act and Patent Act provide statutory bases for attorney's fees and provide that the "court in exceptional cases may award reasonable attorney fees to the prevailing party."  *See* 15 U.S.C. § 1117(a); 35 U.S.C. § 285.  The leading case on attorney's fees in § 285 Patent Act cases is *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), whose standards the Tenth Circuit has extended to § 1117(a) Lanham Act cases.  *See Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1246 (10th Cir. 2021) ("Based on the above, we conclude that the *Octane* standard applies to fee-shifting

3

disputes under the Lanham Act.").

> The Court may shift attorney's fees under § 285 in a case
>
> that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane*, 572 U.S. at 554 (footnote omitted). The Court should take into account equitable considerations, such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation omitted). The Tenth Circuit has explained that "a case may be deemed exceptional because of "(1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 592 (10th Cir. 2007) (listing factors that could make a Lanham Act case exceptional); *Derma Pen*, 999 F.3d at 1245 (noting that court could affirm Lanham Act fee award under *King* or *Octane* because the "*Octane* standard applies to fee awards for exceptional cases under the Lanham Act"). Ultimately, a court considers the "objective strength of a plaintiffs [sic] Lanham Act claim and the plaintiff's subjective motivations." *Id.* at 1244.

III.  ANALYSIS[3]

    A.  **<u>Dawgs's Antitrust Claims</u>**

The Individual Defendants seek attorney's fees for what they call "Dawgs's patent-related antitrust claims."  Docket No. 1081 at 7–8.  Federal Rule of Civil Procedure 54(d)(2)(B)(ii) requires a party seeking fees to "specify the . . . statue, rule, or other grounds entitling the movant to the award."  The Individual Defendants rely on *Octane*.  Docket No. 1081 at 7–8.  Dawgs, however, disputes whether *Octane*, a Patent Act case, can entitle the Individual Defendants to fees for Dawgs's antitrust claims brought under the Sherman Act.  Docket No. 1093 at 10–11.

The Individual Defendants argue that *Octane* applies because Dawgs's antitrust claims are "tag-along" claims that are related to Dawgs's allegations regarding Crocs's "acquisition and assertion of patent rights."  Docket No. 1081 at 7 n.5 (citing *Procaps S.A. v. Patheon Inc.*, 2017 WL 3536917, at *1 (S.D. Fla. Aug. 17, 2017)).  Dawgs argues that the Individual Defendants cannot recover for the Court's dismissal of Dawgs's antitrust and state-law claims "under the Patent Act" because Dawgs did not allege "patent infringement claims."  Docket No. 1093 at 10–11.[4]

Dawgs is correct that it did not bring patent claims against the Individual Defendants.  *See generally* Case No. 16-cv-02004, Docket No. 1.  However, the

---

    [3] As noted previously, Dawgs contends that the Individual Defendants' motion is "premature" because final judgment has not entered.  Docket No. 1093 at 4–5.  Although the parties had not settled the case when the Individual Defendants filed their motion, and thus the Court had not entered final judgment, the Court has now done so.  Docket No. 1182.  Thus, this argument is now moot.

    [4] The Individual Defendants do not appear to ask for attorney's fees related to Dawgs's state-law claims, as they identify no basis to recover those fees and do not discuss those claims in their motion.  Rather, their motion concerns Dawgs's "patent-related antitrust claims" and its Lanham Act claim.  *See generally* Docket No. 1081.

Individual Defendants are correct that Dawgs's antitrust claims were related to Crocs's patents. As the Court noted in its September 25, 2017 order, "[t]he anticompetitive conduct discussed in [Dawgs's] complaint relates to a pattern of sham litigation and the enforcement of fraudulently procured patents." Docket No. 673 at 19 (quoting Case No. 16-cv-02004, Docket No. 1 at 70–75, ¶¶ 162–63). Additionally, the attempted monopolization and conspiracy to monopolize claim also related to the Individual Defendants "seeking and enforcing" Crocs's patents. *Id.* at 23 ("Such actions by defendants are the only potentially predatory conduct described in the second and fourth claims for relief." (citing Case No. 16-cv-02004, Docket No. 1 at 85, ¶ 193; 92–93, ¶ 216)). Similarly, the Court noted that the objective of the alleged conspiracy to restrain trade claim that Dawgs's brought was "alleged to be the defense and enforcement of [Crocs's and the Individual Defendants'] patents." *Id.* at 24. Dawgs's only other claims, aside from its Lanham Act claim, were for unlawful exclusive agreements with buyers and distributors. *See id.* at 25–29. Thus, the Court agrees that Dawgs's antitrust claims, while not patent claims, are related to Crocs's patents.

The Individual Defendants provide no analysis, beyond a one-sentence footnote with a citation to *Procaps*, an out-of-circuit case, explaining why the Court should apply *Octane* and its progeny to determine the appropriateness of attorney's fees in a dispute not involving the Patent Act or Lanham Act. *See* Docket No. 1081 at 7 n.5. Generally, the Court does not credit such perfunctory argument. *See, e.g.*, *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

Nor is *Procaps* persuasive. In that case, the court extended Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") to authorize a fee award to a prevailing defendant when most of the plaintiff's FDUTPA claim involved the same facts at issue in the plaintiff's unsuccessful federal antitrust claims. *Procaps*, 2017 WL 3536917, at *1. The court did so based on a federal antitrust statute authorizing an award to a prevailing plaintiff, but not to a prevailing defendant. *Id.* ("[T]he issue is whether Procaps, which had an adverse summary judgment entered against it affirmed on appeal, is required to pay fees and costs when its FDUTPA claim is what Procaps deems a so-called 'tag-along' claim – i.e., based mostly (though not entirely) on the same circumstances at issue in its federal Sherman Act antitrust claim (which does not authorize fees and non-taxable costs to Patheon even though it prevailed).").

But *Procaps* differs in crucial respects. First, *Procaps* did not apply *Octane*, § 1117(a), or § 285, which the Individual Defendants invoke here. Second, in *Procaps*, the court found that the defendant was entitled to fees under the FDUTPA because the plaintiff had not established that the time incurred in defending the antitrust claim was unrelated to the defense of the FDUTPA claim. *Id.* Instead, the court noted that the "antitrust claims inherent in the FDUTPA claim were based on the same facts as the federal statutory antitrust claims" because the "FDUTPA claim was dependent on the antitrust claim." *Id.* Here, however, although the antitrust claims are patent related, neither party argues that those claims are "inherent" to a claim brought under a fee-enabling statute like the Patent Act – nor could the claims be "inherent" to a Patent Act claim because Dawgs did not bring a Patent Act claim.

Third, in *Procaps*, the claim under the FDUTPA, which authorized the fee, was apparently "dependent" on the antitrust claim, *see id.*, while here the reverse is true.

7

The Individual Defendants argue that Dawgs's claims brought under the Sherman Act, which would not permit attorney's fees for Dawgs, were dependent on the patent issues. Regardless, the Individual Defendants do not discuss any of these issues. Because they have not provided a statute or contract authorizing the Court to depart from the "American Rule" of each party paying its own attorney's fees, *see Hardt*, 560 U.S. at 252–53, the Individual Defendants have not shown that they are entitled to such fees for Dawgs's antitrust claims.[5] Accordingly, the Court denies the Individual Defendants' motion for attorney's fees with respect Dawgs's antitrust claims.

## B.  Dawgs's Lanham Act Claim

The Individual Defendants argue that they are entitled to attorney's fees for Dawgs's Lanham Act claim. Docket No. 1081 at 8–13. As noted previously, district courts often consider four non-dispositive factors to determine if a case is "exceptional" and, therefore, if the prevailing party is entitled to attorney's fees under the Lanham Act. *See Derma Pen*, 999 F.3d at 1244; *Nat'l Ass'n of Pro. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000). These factors are (1) the case's lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which the case is prosecuted, or (4)

---

[5] The other cases that the Individual Defendants cite do not provide any support. The claims in *Bovino v. Levenger Co.*, No. 14-cv-00122-RM-KLM, 2016 WL 1597501 (D. Colo. Apr. 21, 2016), were for patent infringement only. *Reichenberger v. Pritchard*, 660 F.2d 280 (7th Cir. 1981), was brought under 42 U.S.C. §§ 1983, 1985. *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2014 WL 793090, at *4 (D. Colo. Feb. 27, 2014), *aff'd*, 627 F. App'x 682 (10th Cir. 2015) (unpublished), included Lanham Act and Colorado Consumer Protection Act claims ("CCPA"), but the CCPA provides a separate basis for fees. Finally, *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010), declined to follow *Octane*, was overruled by *LHO Chicago River, LLC v. Perillo*, 942 F.3d 384 (7th Cir. 2019), and explicitly rejected the Tenth Circuit test.  *See Nightingale*, 626 F.3d at 960 ("Given the fourth item in this list, the Tenth Circuit can hardly be said to have a test.").

8

other reasons. *King*, 485 F.3d at 592 (citing *Nat'l Ass'n of Pro. Baseball Leagues*, 223 F.3d at 1147).[6] The Individual Defendants argue that Dawgs's litigating position for its Lanham Act claim was exceptionally weak and that Dawgs prosecuted the case vexatiously. Docket No. 1081 at 8–13.

### 1. Strength of Dawgs's Litigating Position

As noted previously, Dawgs's Lanham Act claim alleged that the Individual Defendants "have been misleading the public and consumers by claiming that Crocs footwear is made of an exclusive and proprietary closed-cell resin that they call 'Croslite,'" whereas Croslite is actually the same ethyl vinyl acetate that other footwear companies use. Case No. 16-cv-02004, Docket No. 1 at 105–106, ¶ 256. Dawgs also alleged that Crocs's use of promotional materials that described Croslite as "patented," "proprietary," "exclusive," and "revolutionary" mislead and deceived customers. *Id.* at 22–24, 106–07, ¶¶ 22, 257, 260. The Court denied the portion of the Individual Defendants' motion to dismiss Dawgs's Lanham Act claim because its allegations, assumed to be true at that stage, plausibly stated a claim. Case No. 06-cv-00605, Docket No. 673 at 31–32. Three years after the Court's order on the motion to dismiss, Crocs and the Individual Defendants moved for summary judgment on the Lanham Act claim based on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Docket No. 909. The Court, applying *Dastar*, granted the motion and dismissed the

---

[6] Generally, a party may not recover fees in a Lanham Act case for work performed on non-Lanham Act claims. *Gdhi Mktg., LLC v. Antsel Mktg., LLC*, No. 18-cv-02672-MSK-NRN, 2020 WL 5793435, at *1 (D. Colo. Sept. 28, 2020) (citing *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018); *U.S. Structures, Inc. v. JP Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997), and noting an exception in the Fifth and Ninth Circuits for when the Lanham Act and non-Lanham Act claims are "inextricably intertwined," which exception does not exist in the Tenth Circuit).

claim.  Docket No. 1071 at 2–15.

The Individual Defendants argue that Dawgs's litigating position was "exceptionally weak" because Dawgs did not have a basis in fact for its Lanham Act claim.  Docket No. 1081 at 8–11.  The Court does not agree.  First, the Court cannot ignore the fact that Croslite was never patented, and yet Crocs, for a time, marketed Croslite as being so.  It was plausible, at least at the pleading stage, for Dawgs to allege that some Crocs executives were involved in marketing and advertising Croslite as patented.  Moreover, as Dawgs identifies in its response, there was some evidence of the Individual Defendants disseminating messaging that Croslite was "patented" or "proprietary."  *See* Docket No. 1093 at 9.  Thus, the Court cannot conclude that the basis of Dawgs's litigating position was exceptionally weak.  The Individual Defendants, however, are correct that the magistrate judge found Dawgs's evidence of the Individual Defendants' liability to be "decidedly skimpy."  Docket No. 922 at 3.  Nevertheless, although Dawgs's evidence may not have been sufficient to ultimately prevail in its Lanham Act claim, the Individual Defendants do not show why a "skimpy" case is necessarily an exceptionally weak one.

The Individual Defendants insist that Dawgs's position was exceptionally weak because, after discovery closed, Dawgs did not dismiss the Individual Defendants with prejudice and because Dawgs should have known as soon as discovery ended that its allegations were not supported.  Docket No. 1081 at 9 ("[Dawgs's assumptions that the Individual Defendants personally authorized or directed false statements about Croslite] were dispelled no later than when the [d]efendants answered discovery in 2017.").  But, just as the Court explained to the Individual Defendants that Dawgs was not bound to accept Crocs's answers to interrogatories, Docket No. 681 at 14, Dawgs was not bound

to accept Crocs's discovery as painting the whole picture. Ultimately, however, the Court agrees with the Individual Defendants that Dawgs's litigating position was weak and Dawgs should have dismissed the Individual Defendants when it realized that it could not prove its case. *See, e.g., Bovino*, 2016 WL 1597501, at *5 (finding Fed. R. Civ. P. 11 relevant, even though conduct need not be sanctionable under Rule 11 to be exceptional under *Octane*, and noting that "Rule 11 provides that, by presenting a pleading, an attorney certifies to the best of his or her knowledge, after an inquiry reasonable under the circumstances, that the claims are warranted by existing law and the factual contentions have evidentiary support"). Dawgs's failure to do so supports a finding that its case was weak.

Crocs and the Individual Defendants, however, did not seek summary judgment on the grounds that Dawgs could not support its Lanham Act claim with facts, but instead relied on a legal argument not previously raised. Although it is not a defendant's responsibility to ensure that baseless claims are not filed in the first place, *see id.*, the Individual Defendants' decision to present a new legal argument on summary judgment undercuts their position that Dawgs's Lanham Act claim was "always legally deficient." Docket No. 1081 at 9–10. Additionally, the mere fact that a plaintiff does not ultimately prevail does not make a case exceptional or warrant a fee award. *See Nat'l Ass'n of Pro. Baseball Leagues*, 223 F.3d at 1148; *see also Gdhi*, 2020 WL 5793435, at *1; *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[A]s the Supreme Court made clear in *Octane*, fee awards are not to be used as a penalty for failure to win a patent infringement suit. . . . In other words, fees are not awarded solely because one party's position did not prevail." (internal quotations and citation omitted)); *Hach Co. v. In-Situ, Inc.*, No. 13-cv-02201-CBS, 2016 WL 9725765, at

\*15 (D. Colo. Nov. 22, 2016) ("[A] hard-fought case is not necessarily an exceptional one." (quoting *JS Prod., Inc. v. Kabo Tool Co.*, 2014 WL 7336063, at \*5 (D. Nev. Dec. 22, 2014)). If Dawgs's Lanham Act claim were so legally deficient as to be exceptionally weak, Crocs and the Individual Defendants should have invoked *Dastar* in their motion to dismiss.

The Individual Defendants argue that, although the Court did not reach issues such as timeliness or laches, because the Court decided the summary judgment motion based on *Dastar*, Dawgs's showing on these issues also contributes to a finding that its claim was exceptionally weak. Docket No. 1081 at 10. However, courts have held that reaching issues on an attorney's fee motion that were not decided on summary judgment is inappropriate because to do so would require the Court to draw inferences from the summary judgment record, possibly against the non-moving party, on issues that may not have been fully briefed. *See, e.g.*, *Hach*, 2016 WL 9725765, at \*16 (citing *Orbit Irrigation Prod., Inc. v. Sunhills Int'l, LLC*, 2015 WL 7574766, at \*3 (D. Utah Nov. 25, 2015) (finding the movant's argument that plaintiff knew it did not have standing to sue on the patent when it brought its claim was based on speculation and would require drawing improper inferences on summary judgment)).[7]

---

[7] As the court in *Hach* noted, post-*Octane*, "courts that find a case exceptional based on frivolous litigation positions do so on the basis of undisputed facts, law of the case, or the like – not the movant's view of conflicting evidence." 2016 WL 9725765, at \*16 (citing *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (affirming district court's finding of exceptional case in part because the court found noninfringement based on the patentee's own proposed claim constructions); *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, 2016 WL 4443146, at \*1–2 (D. Del. Aug. 18, 2016) (noting that "exceptional" cases generally involve egregious facts, such as a patentee litigating contrary to law of the case or contrary to the advice of its own lawyer); *Bovino*, 2016 WL 1597501, at \*5, 8 (noting that the plaintiff sued a manufacturer whose sole products on their face did not practice the patent and plaintiff

Finally, the Individual Defendants argue that this case is an "outlier, even among 'exceptional' cases." Docket No. 1081 at 10–11. In support, the Individual Defendants rely principally on *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018), and *Spalding Labs., Inc. v. Ariz. Biological Control, Inc.*, 2008 WL 2227501 (C.D. Cal. May 29, 2008). In *Tobinick* however, the court had "ruled against Dr. Tobinick in three separate orders," 884 F.3d at 1118, while here, Dawgs prevailed on a motion to dismiss, but lost on summary judgment. Moreover, in *Tobinick*, the plaintiff "repeatedly sought to multiply the proceedings by adding new parties and claims," and the court found it especially compelling that "Dr. Tobinick responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly seeking to add parties and claims and bringing what the court viewed as baseless motions for sanctions and accusations of perjury." *Id.* at 1118–19. Although Dawgs's claim lacked sufficient factual support and Dawgs's addition of the Individual Defendants expanded the proceedings, the Individual Defendants have not identified other conduct similar to that in *Tobinick*.

In *Spalding*, the court noted that the plaintiff "insisted on pursuing a claim which was all but nullified by the Court's rulings on several vehemently contested motions in limine, and further doomed upon conclusion of the October 22, 2007 Daubert hearing" and that the plaintiff required the defendant to "litigate for 10 days in front of a jury," despite having no evidence. 2008 WL 2227501, at *1. The Individual Defendants have not shown that Dawgs's Lanham Act claim was "nullified" or "doomed" based on the Court's rulings. Although Dawgs was unlikely to prevail on its Lanham Act claim, the Court does not find that the claim was so exceptionally weak as to justify attorney's fees

"made factual assertions in his response [filed with the court] that plaintiff, if he had read the letter [from defendant] . . . knew were wrong.")

13

for the Individual Defendants.

### 2. Dawgs's Litigation Tactics

The Individual Defendants argue that they are independently entitled to attorney's fees because Dawgs litigated this matter in an unreasonable manner. Docket No. 1081 at 11–13. Dawgs insists that, under *Octane*, the Individual Defendants must show *both* that the claim was objectively baseless *and* that it was brought in subjective bad faith. Docket No. 1093 at 5. Dawgs is incorrect. The Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane*, 572 U.S. at 554 (emphasis added).[8]

The Individual Defendants identify numerous instances of what they consider Dawgs's misconduct. The Court notes that most of these instances occurred before Dawgs retained new counsel in November 2019 and do not necessarily relate to Dawgs's Lanham Act claim against the Individual Defendants. The Court recounts the

---

[8] Some courts applying *King*, notwithstanding *Octane*, do not consider litigation conduct if the litigation's basis was not extraordinarily weak. *Compare Gdhi*, 2020 WL 5793435, at *2 ("[I]n deciding whether the Defendants are entitled to fees, the Court need look only at GDHI's Lanham Act claim in order to determine whether that particular claim lacked any reasonable foundation."), *with Est. of Norman v. Lavern*, 2018 WL 4850099, at *2 (W.D. Okla. Sept. 13, 2018) ("[The Court finds that plaintiffs' Lanham Act claims did not lack 'any foundation;' to the contrary, the Court granted in part plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, specifically finding that plaintiffs had shown a likelihood of success on the merits of their Lanham Act claims. Additionally, the Court finds no bad faith on the part of plaintiffs in bringing this action."), *rev'd and remanded on other grounds*, 790 F. App'x 895 (10th Cir. 2019) (unpublished).

most persuasive instances of misconduct that the Individual Defendants have identified: (1) the magistrate judge's characterization of Dawgs's counsel's "argument" as "his usual denigrating diatribe against Crocs rather than focusing on the issues," Docket No. 1181 at 11 (citing Docket No. 441 at 3); (2) Dawgs's "fabricat[ion] [of] prior art in service of its invalidity theories," *id.* (citing Docket No. 682);[9] (3) the magistrate judge's description of Dawgs's spoliation as a "complete wild goose chase," *id.* (quoting Docket No. 703 at 178:13–21); (4) the Court's admonition of Dawgs's for its "garish rhetoric" and "bombastic self-righteousness," *id.* (quoting Docket No. 681 at 17); (6) Dawgs's refusal to produce a settlement agreement between itself and a former Individual Defendant unless all discovery limits were increased, *id.* at 12 (citing Docket No. 870 at 10), which the magistrate judge called "obstreperous" and a "colossal waste of attorney time and resources" and described as "holding the Settlement Agreement hostage, in hopes it will coerce the court into granting its motion to increase discovery limits," and for which the magistrate judge would have granted Crocs's request for reimbursement of costs had one been filed, Docket No. 919 at 2; (7) Dawgs's gameplaying in scheduling depositions, Docket No. 1081 at 12, which the magistrate judge described as "gamesmanship" and "lying to someone and then changing your mind," Docket No. 980 at 23:22–23, and for which she sanctioned Dawgs for its "obstreperous and devious" conduct that was "designed to gain a tactical advantage in the litigation which necessitated court involvement," Docket No. 975 at 2, and which the Court upheld as behavior that was "'contemptuous' of the discovery process." Docket No. 1126 at 11.

---

[9] The Court denied Crocs's and the Individual Defendants' request for sanctions on this issue because the movants failed to confer with Dawgs as required by the Local Rules and failed to show any prejudice by Dawgs's depiction of a newer version of the particular shoe. *See generally* Docket No. 682.

Moreover, Dawgs's CEO Steven Mann promised a "dramatic increase in litigation costs" because Crocs was paying the Individual Defendants' legal fees, Docket No. 995-2, which promise the Court agrees indicates Dawgs's unreasonableness.[10]

Dawgs does not meaningfully respond to most of these instances of misconduct. Rather, in response, Dawgs argues that it "served very limited discovery" on the Individual Defendants, did not depose the majority of them, and did not "press" discovery motions practice on them. Docket No. 1093 at 9. It also argues that its conduct was not unreasonable because none of the Individual Defendants produced a document from their "own files separate from what Crocs produced" and most "refused to substantively respond to discovery," and Dawgs dismissed several of the Individual Defendants. *Id.* (citing Docket Nos. 997, 1019). Dawgs may have accurately identified instances where it conducted itself properly, but the fact that its conduct was not obstreperous at all times does little to convince the Court that this case was not litigated in an unreasonable manner for the reasons the Individual Defendants identify, the record before the Court, and the "totality of the circumstances." *See Octane*, 572 U.S. at 554.[11] The Court also notes that, although Dawgs was only sanctioned once, the

---

[10] The Individual Defendants identify other purported misconduct by docket number, *see, e.g.*, Docket No. 1081 at 11 (listing Docket Nos. 393, 394, 395, 407, 511); however, they provide no explanation for why these docket entries show Dawgs's misconduct. The Court also notes that the Individual Defendants cite their own motions to compel and for sanctions as other instances of misconduct, *see generally id.*; however, the Court finds its own and the magistrate judge's rulings to be more persuasive.

[11] In a footnote, Dawgs notes that all but one of Crocs' and the Individual Defendants' sanctions motions were denied. Docket No. 1093 at 10 n.5. Although Dawgs is correct, its argument disregards *Octane*, where the Court explained that "sanctionable conduct is not the appropriate benchmark" and that a "district court may award fees in the rare case in which a party's unreasonable conduct – while not

Court and the magistrate judge repeatedly had to warn Dawgs's that its conduct was inappropriate.  Therefore, the Court agrees with the Individual Defendants that the totality of Dawgs's litigation conduct was so unreasonable and vexatious that the case is clearly an exceptional one.  Exercising its discretion, the Court thus concludes that this is an exceptional case within the meaning of § 1117(a) and that the Individual Defendants are entitled to attorney's fees.

### 3.  Amount of Fees

Having determined that Dawgs's litigation conduct was vexatious, the Court must next consider the proper amount of attorney's fees to which the Individual Defendants are entitled.  The Individual Defendants seek $295,353.75 in fees for 502 hours of work performed from 2016 to 2021, Docket No. 1081 at 13, and an additional $38,352.00 for an additional 63 hours of work to prepare this motion.  Docket No. 1096 at 10.  The Individual Defendants have broken out their fee request as follows: (1) $62,575.95 (124.1 hours) for drafting the motion to dismiss and reply in Case No. 16-cv-02004-PAB-MDB; (2) $16,174.09 (38.5 hours) for the answers to Dawgs's complaint; (3) $123,462.43 (194.4 hours) for discovery; (4) $41,869.23 (72.4 hours) for motions to compel; (5) $28,877.05 (37.2 hours) for responding to Dawgs's motion to dismiss; and (5) $25,395 (35.4 hours) for various "other tasks," including opposing Dawgs's motion to strike former Individual Defendant Andrew Reddyhoff's response, providing case status updates, and responding to Dawgs's motion to consolidate.  Docket No. 1081 at 14–15.

Dawgs argues that the Individual Defendants should not be able to recover for their motion to dismiss, which the Court partially decided against them, or for opposing

---

necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 572 U.S. at 555.

Dawgs's motion or consolidation, which the Court granted. Docket No. 1093 at 11–13. Dawgs also argues that the Individual Defendants are not entitled to fees for discovery, as Crocs was already obligated to collect documents in Case No. 06-cv-00605, or for multiple sanctions motions that were denied. *Id.* at 11–12. Dawgs further contests the Individual Defendants' entitlement to fees for Duke Hanson's deposition because, Dawgs insists, Mr. Hanson sent false messages to consumers that Croslite was patented. *Id.* at 12. Finally, Dawgs argues that the Individual Defendants should not recover for opposing Dawgs's motion to dismiss the Individual Defendants, even though Dawgs would only agree to dismiss them without prejudice. *Id.* at 13–14.

      Dawgs is partially correct, given that "recovery of fees under 15 U.S.C. § 1117(a) is limited to only those fees that were incurred in pursuing or defending the Lanham Act claims themselves," *see Gdhi*, 2020 WL 5793435, at *1, and because attorney's fees are compensatory rather than punitive. *See Gaymar*, 790 F.3d at 1373. Thus, the Individual Defendants are not entitled to fees for any work unrelated to Dawgs's Lanham Act claim. Accordingly, the Individual Defendants may not recover attorney's fees, for instance, for the portions of the answers or motion to dismiss that respond to Dawgs's antitrust or patent-related claims or for discovery and motions practice unrelated to Dawgs's Lanham Act claim, such as the Individual Defendants' opposition to the motion to consolidate. *See, e.g.*, *Bovino*, 2016 WL 1597501, at *9 (awarding fees solely for claims litigated unreasonably). However, the Court does not agree with Dawgs that the Individual Defendants are not entitled to fees for the Lanham Act portion of the motion to dismiss. The Court is awarding the Individual Defendants attorney's fees because of Dawgs's vexatious litigation conduct, rather than the substantive strength of Dawgs's litigating position, and the Individual Defendants were still the prevailing party, even if

the Court did not agree with every one of their arguments. *Cf. Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1236–37 (10th Cir. 2018) (defining "prevailing party" as for the Lanham Act as a party "'who has been awarded some relief by the court' in that the court materially altered the legal relationship between the plaintiff and the defendant" (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603–04 (2001)); *Gaymar*, 790 F.3d at 1373.

The Individual Defendants, however, have not differentiated the hours solely related to defending against Dawgs's Lanham Act claim. Rather, the Individual Defendants provide hundreds of time entries, but only mention the Lanham Act twice. *See* Docket No. 1084. Accordingly, within twenty-one days of this order, the Individual Defendants shall submit revised billing records reflecting only the hours spent on Dawgs's Lanham Act claim. Dawgs may have fourteen days to respond to the Individual Defendants' revised records and may dispute the amount, but not the fact, of the attorney's fees requested. *See Bovino*, 2016 WL 1597501, at *9 (permitting defendant to file updated billing records within 21 days and plaintiff to respond in opposition to the amount, but not the fact, of attorney's fees requested).[12]

Once the Individual Defendants have provided revised billing records, the Court will be able to calculate the "lodestar amount," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Cypress Advisors, Inc. v. Davis*, No. 16-cv-01935-PAB-MEH, 2022 WL 959775, at *5 (D. Colo. Mar. 30, 2022) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

---

[12] The Individual Defendants shall submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233–34 (10th Cir. 2000).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Individual Defendants' Motion for Attorneys' Fees [Docket No. 1081] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that the Individual Defendants shall file updated billing records on their defense of defendants' Lanham Act claim **on or before September 27, 2022**. It is further

**ORDERED** that defendants may respond to the Individual Defendants' updated billing records **on or before October 7, 2022**.

DATED September 7, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge