IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

---

Civil Action No. 06-cv-00605-PAB-KMT
    (Consolidated with Civil Action No. 16-cv-02004-PAB-KMT)

---

Civil Action No. 06-cv-00605-PAB-KMT

CROCS, INC.,

    Plaintiff,

v.

EFFERVESCENT, INC., *et al.*

    Defendants.

---

Civil Action No. 16-cv-02004-PAB-KMT

U.S.A. DAWGS, INC., *et al.*

    Plaintiffs,

v.

RONALD SYNDER, *et al.*

    Defendants.

---

**DAWGS' REPLY TO CROCS' OPPOSITION (DKT. 1059) TO
DAWGS' *DAUBERT* MOTION (DKT. 1026), SECTIONS II, IV(B) AND IV(D)**

Counterclaim Plaintiffs U.SA. Dawgs Inc., Double Diamond Distribution, Ltd., and Mojave Desert Holdings, LLC (collectively, "Dawgs") filed its motion to exclude certain testimony of Counterclaim Defendant Crocs', Inc. ("Crocs") experts (Dr. Larry Chiagouris, Ms. Sarah Butler, and Mr. Peter Schwechheimer). Dkt. 1026 ("*Daubert* Motion" or "Mot."). Crocs filed its opposition. Dkt 1059 ("Opp."). Dawgs files this reply regarding sections II, IV(B) and IV(D) of Dawgs' *Daubert* Motion. Dkt. 1222.

## INTRODUCTION

Crocs' opposition does not address or contradict the issues raised by Dawgs in its *Daubert* Motion. Instead, Crocs spends the vast majority of its argument focused on maligning **Dawgs'** experts, in what appears to be an attempt to distract the Court from the fact that its proffered expert testimony suffers from the fatal flaws of unreliability and lack of proper factual basis or knowledge.

Dr. Chiagouris cannot explain the methodology behind various document counts that he presents as his own opinions – despite the fact that he admits that Crocs' counsel conducted these counts without his input and simply supplied him the final number they expected him to testify to. He also serves as an improper mouthpiece for testimony regarding a Dick's Sporting Goods document that was provided to him by Crocs' attorney Sean Callagy – which Mr. Callagy appears to have learned third-hand himself.

Mr. Schwechheimer offers baseless and unreliable testimony that Dawgs and Crocs are not direct competitors, even after admitting in his deposition that he could not name Dawgs' competitors. This opinion is meant to backdoor in testimony that Dawgs is a "knockoff" of Crocs, testimony that has already been excluded by the Court. Additionally, Mr. Schwechheimer testifies—without any qualifications, explained methodology, or proper knowledge basis—about

1
DAWGS' REPLY TO CROCS' OPP. TO *DAUBERT* MOT., SECS. II, IV(B), & IV(D)

the ultimate issue of causation (that is, whether Crocs' false advertising caused Dawgs actual injury). He is not qualified to do so, nor does he have the proper factual basis from which to so opine.

Because both experts' opinions fail to meet the requirements of Federal Rule of Evidence 702 ("Rule 702"), the opinions should be excluded.

## ARGUMENT

I. **Dr. Larry Chiagouris' Testimony Related to Attorney-Supplied Facts and Data Should Be Excluded.[1]**

Dawgs' *Daubert* Motion identifies specific opinions in Dr. Chiagouris' Rebuttal Report which he testified were based solely on information provided to him by Crocs' counsel. Mot. at 3-4 (identifying Dkt. 1026-2 ("Ch. Reb. Rpt.") ¶¶ 69-72, including relevant footnotes). As Dawgs pointed out, Dr. Chiagouris admitted at his deposition that he had no basis, other than Crocs' attorneys, for his opinions about how many documents qualified as "foreign materials" (Ch. Reb. Rpt. ¶ 69), how many documents contained reference to "patented" material (*id.* ¶¶ 70-71), and the history behind a Dick's Sporting Goods document that he admitted he never saw (*id.* ¶ 72). Mot. at 4-5. Nor did he provide the filtering criteria, such as how to differentiate "domestic" vs. "foreign" websites, or really understand how that task was performed by Crocs' counsel. Dkt. 1026-3 ("Ch. Dep.") at 197:23–198:2, 201:6-10, 208:14–210:5.

Interestingly, Crocs does not deny that its attorneys supplied Dr. Chiagouris with "counsel's assistance" in "reviewing" and "quantifying" the documents upon which his testimony relies. Opp. at 4. Instead, Crocs spends most of its opposition focused on Dawgs' expert and why certain of his opinions should be excluded. *Id.* at 4-8. Dawgs' expert's opinions are completely different, but that is beside the point because Crocs did not raise these arguments

---

[1] Corresponds to Mot. at 3-6 (Section II).

in any of its own *Daubert* Motions. *See* Dkts. 1025, 1027, 1028, 1029. Its opposition is not the place to argue, for the first time, that Dawgs' expert's opinions should be excluded. *See, e.g.*, Opp. at 6 ("The cases Dawgs cites…illustrate why Mr. Shuster's opinions should not be admitted in the first place.").

Moreover, Crocs' arguments about Mr. Shuster's opinions in its opposition do nothing to support the reliability or admissibility of *Dr. Chiagouris'* opinions. For example, Crocs' opposition addresses the fact that Dr. Chiagouris did not personally know the number of "false hits, redundant, or simply irrelevant" documents about which he testified. Opp. at 6. This was information that Dr. Chiagouris admitted he received directly from Arnold & Porter, based on their own assessment of the documents. Mot. at 4 (citing deposition testimony in which Dr. Chiagouris acknowledged that Arnold & Porter assessed and quantified these documents without his input). However, rather than attempt to explain why this set of circumstances does not render Dr. Chiagouris' opinion unreliable and inadmissible, Crocs instead argues that "Dr. Chiagouris is not the one putting forth a sweeping unsupported opinion about the impact on the marketplace of such supposedly deceptive statements" and that "Dr. Chiagouris need not be able to rattle off exactly how many documents are flawed in each way to support" the opinion at issue. Opp. at 6. Nowhere in its argument does Crocs explain why, in this situation, Dr. Chiagouris is entitled to rely upon facts which were curated and fed to him directly from counsel, about which he has no personal knowledge, and where he hardly even knows what filtering criteria was applied.

Unfortunately, Crocs cannot escape the fact that its own expert admitted that he relied solely on counsel's analysis as the factual basis for certain of his opinions. Dr. Chiagouris admitted that he received his "opinion" that "[a]t least 2,285 out of the 4,230 documents cited by Mr. Shuster in Appendix A…are foreign materials" (Ch. Rep. Rpt. ¶ 69) directly from Arnold &

3
DAWGS' REPLY TO CROCS' OPP. TO *DAUBERT* MOT., SECS. II, IV(B), & IV(D)

Porter's assessment and calculations. Mot. at 3-4; *see also* Dkt. 1026-3 at 201:6-22 ("Q. … did you give instruction to Arnold and [P]orter on how to determine whether something was a foreign material or not? A. No. Q. So, did they tell you how they defined foreign material … ? A. My understanding was they did it based on the source of the site; that's my understanding. Q. Okay. And where does that understanding come from? A. Phone conversations with the – the attorneys from Arnold and [P]orter[.]").

Dr. Chiagouris also admitted that he was only "***informed*** that at least 628 out of the 4,230 documents cited by Mr. Shuster in Appendix A … do not contain any reference to 'patented' Croslite, resin, foam materials, etc." (Ch. Reb. Rpt. ¶ 70) (emphasis added), that he did not conduct this count either, that this number was provided to him "by counsel," and that he did not give instructions to counsel as to how they should do the count. Mot. at 4; *see also* Dkt. 1026-3 at 197:2–198:2. The best he could say was that he did "quality control checks" to see if what Arnold & Porter was "purporting to suggest" was "likely to be true." *Id.*

Finally, as to the Dick's Sporting Goods document about which Dr. Chiagouris opines, Crocs admits in its opposition that Dr. Chiagouris' "opinion" that the document was "created without any input from Crocs" and "was subsequently changed … at the request of Crocs" (Ch. Reb. Rep. ¶ 72) is based entirely on information provided to him by Crocs' counsel Sean Callagy, about which Mr. Callagy has no direct knowledge. Opp. at 7 (citing Sean Callagy's declarations, including "ECF No. 959-1," as the evidence on which Dr. Chiagouris relied). Mr. Callagy is an attorney in this case; he is not a fact witness. Moreover, the information Mr. Callagy relayed to Dr. Chiagouris is information Mr. Callagy himself received from *another* person, rendering it even less reliable.

This is all far different than the "assistance" that Rule 26 considers appropriate. Mot. at 5-6 (citing cases); *see also Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1284 (10th Cir. 2018) (quoting with approval district court's statement that "[i]t is not enough to have a knowledgeable expert leap to the conclusions a party would like the jury to be exposed to. Rather, there must be a reliable and identifiable basis for the expert's opinions, grounded in the evidence and in the practices and standards of the particular discipline involved."). First, an expert's methodology as to how they arrived at their opinion (such as how many documents he considered to be within a certain "category") must be testable and explained to the Court and the jury. Anything less than this basic requirement does not satisfy the requirements of Rule 702. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (party offering expert testimony "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements") (internal citation omitted); *see also Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1055 (10th Cir. 2021), *vacated and remanded on other grounds sub nom. Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023) (expert's opinion can be excluded, even if expert's own testimony is reliable, if "underlying data supplied" to expert is "problematic" or based on "unreliable, manufactured numbers" because the "testimony wouldn't be worth much"). Second, an expert cannot simply act as a mouthpiece for counsel in order to relay inadmissible, unreliable hearsay. *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006) (district court may exclude expert whose "opinions lacked foundation because they were based on the self-serving statements of an interested party") (cleaned up). Dr. Chiagouris cannot reliably testify about the methodology or facts underlying his opinions on document count, and he cannot

relay unreliable hearsay to the jury under the guise of an "expert opinion." The identified testimony of Dr. Chiagouris should therefore be excluded.

## II. Peter Schwechheimer's Opinion that Dawgs is Not a Direct Competitor of Crocs Should Be Excluded.[2]

Mr. Schwechheimer's opinion about competition between Dawgs and Crocs, and specifically that Dawgs is "not a direct competitor of Crocs," including "in any meaningful way," should be excluded as unreliable and without basis. Mot. at 10.

First, Mr. Schwechheimer admitted he did not know who Dawgs' competitors were. *Id.*; *see also* Dkt. 1026-9 ("Sch. Dep.") at 256:23–257:19 ("I don't have an opinion about exactly who [Dawgs'] competitors are… Q. Do you have an understanding with specifics about the names of Dawgs's competitors? [] A. Not specifically, no."). Unsurprisingly, Crocs does not engage with the fact that Mr. Schwechheimer admitted he did not know who Dawgs' competitors were. Instead, Crocs relies on his general understanding of what a "competitor" is, rather than specifics related to who Dawgs' competitors actually are. Opp. at 13. This general understanding does not explain how Mr. Schwechheimer can possibly tell the jury that Dawgs and Crocs are not direct competitors. Nor does the bare fact that Mr. Schwechheimer is offered to rebut Dawgs' expert make his testimony automatically admissible, as Crocs contends (Opp. at 12-13) – he must still have a reliable basis for his opinions, even those offered in rebuttal.

Second, Mr. Schwechheimer appears to be using this unsupported opinion to backdoor his improper opinion that Dawgs is a "knockoff" of Crocs. Mot. at 10. Crocs does not disagree with this premise, instead arguing that these two opinions are not inconsistent. Opp. at 13. But the Court has already determined that use of the terms "knockoff" and "fast follower" are to be excluded from Mr. Schwechheimer's testimony. Dkt. 1127 at 15-20; *id.* at 19 ("The Court finds

---

[2] Corresponds to Mot. at 10 (Section IV(B)).

that probative value of ['knockoff'] … is substantially outweighed by the danger of unfair prejudice."); *id.* at 20 ("Mr. Schwechheimer has not shown why he needs to use the term 'fast follower,' which he has not defined, and which could confuse the issues or mislead the jury."). Thus, any such testimony, even on a backdoor basis regarding competition, should remain excluded from Mr. Schwechheimer's testimony.

### III. Peter Schwechheimer's Opinions Regarding Causation As To Whether Crocs' False Advertising Caused Dawgs Actual Injury Should Be Excluded.[3]

Mr. Schwechheimer is not an expert on causation in the footwear market, nor does he have any qualifications that would allow him to opine on this issue. *Cf.* Dkt. 1127 at 18 ("[T]here is no indication that [Mr. Schwechheimer] is qualified to characterize Dawgs's business model."). Despite this, Mr. Schwechheimer opines in multiple parts of his report that Crocs' false advertising did not cause Dawgs actual injury. Mot. at 11-12 (citing Dkt. 1026-6 ("Sch. Reb. Rpt.") ¶¶ 19-40). He does not provide any information on the methodology he engaged in to reach these conclusions. He did not even know of or review Crocs' survey expert's reports in forming these opinions. Mot. at 12; *see also* Sch. Dep. at 13:8–14:9, 47:20–48:8 (Mr. Schwechheimer stating he had never reviewed Crocs' survey expert Ms. Butler's opening or rebuttal reports, asking "[w]ho's Ms. Butler?").

Again, instead of addressing Dawgs' basis for excluding such testimony, Crocs focuses on Dawgs' expert Mr. Malackowski, and states that Mr. Schwechheimer's opinions were made "in rebuttal" to Dawgs' expert. But the bare fact that an opinion is made "in rebuttal" does not shield it from the requirements of Rule 702. An expert cannot simply "rebut" another expert by disagreeing with them, when the rebuttal expert does not have the proper qualifications, methodology, factual basis, or knowledge to support those rebuttal opinion. Being a "qualified

---

[3] Corresponds to Mot. at 11-12 (Section IV(D)).

damages expert" (Opp. at 14) does not allow Mr. Schwechheimer to comment or opine on whether the false advertising caused the actual injury in this case.

Crocs tries to couch Mr. Schwechheimer's "opinions" as "comment[ing] on factors" that Dawgs' expert "did not consider in forming his own opinions." Opp. at 14. But Mr. Schwechheimer's opinions go far beyond commenting on telling the jury what Dawgs' expert ostensibly did not consider. He opines that there were "no economic consequences attributable to Crocs's 'patented' statements," Crocs' false advertising "had no appreciable impact on consumer behavior or other economic consequences, whether in the form of a benefit to Crocs or a loss to Dawgs," "Crocs' marketing or Croslite was more than likely a net plus for Dawgs[]," the false advertising was "effectively not seen by consumers," and even if the false advertising was seen after Dawgs entered the market, "there is no evidence" that the statements at issue, including "any statement regarding the creatorship of a shoe," are "a consideration in the purchase of casual footwear." Mot. at 11-12 (citing Sch. Reb. Rpt. ¶¶ 37-39).

With these unsupported opinions, Mr. Schwechheimer is, in fact, testifying as to the ultimate issue of causation, and is purporting to be able to tell the jury that Crocs' false advertising did not cause Dawgs any injury. Crocs does not explain in its opposition how Mr. Schwechheimer is qualified to present this testimony to the jury, how he formed his opinions without reference to Crocs' actual survey expert's data, or what methodology he used to reach these conclusions. *See Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 805, 812 (10th Cir. 2016) (expert opinion on causation not based on "any reliable methodology" properly excluded, where testimony "was unreliable based on [expert's] failure to test his theory or to eliminate other possible causes"). Crocs simply states that Mr. Schwechheimer should be allowed to testify because Crocs believes he is a "qualified damages expert." Opp. at 14. Rule 702 requires more.

## CONCLUSION

Dawgs respectfully moves that the identified portions of Dr. Chiagouris' and Mr. Schwechheimer's testimony be excluded at trial.

Respectfully submitted this 15th day of December, 2025 at Denver, Colorado,

RECHT KORNFELD, P.C.

*s/ Richard K. Kornfeld*
Richard K. Kornfeld

Co-Counsel for Defendants Double Diamond Distribution, Ltd., U.S.A. Dawgs, Inc., and Mojave
Desert Holdings LLC
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
(303) 446-9400 (fax)
Email: rick@rklawpc.com