IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00605-PAB-MDB

CROCS, INC.,

        Plaintiff,

v.

EFFERVESCENT, INC. *et al.*,

        Defendants.

---

**CROCS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF JAMES E. MALACKOWSKI (ECF NO. 1029)**

---

**I.    INTRODUCTION**

Dawgs fails to show the admissibility of any of Mr. Malackowski's challenged opinions. His lost profits theory uses his client's unverified guesses in lieu of data and an inapplicable methodology; his disgorgement calculation relies on a survey never designed to quantify impacts on sales; his corrective advertising remedy lacks any support in the law or facts; and his opinions on the definition of certain terms are the province of the Court and trier of fact.

**II.    MR. MALACKOWSKI'S LOST PROFITS OPINION IS UNSUPPORTED AND METHODOLOGICALLY FLAWED**

Mr. Malackowski's lost profits calculation rests on unsupported assumptions, guesstimates masquerading as "data," and an inapplicable methodology.

First, Mr. Malackowski *assumes* statements by Crocs caused Dawgs to lose sales, backed by no evidence whatsoever. Dawgs does not deny that its CEO Steven Mann could not identify a

single lost sale from the challenged statements, yet Dawgs vaguely promises that Mr. Mann and other unnamed witnesses "will provide factual testimony in support of causation." ECF No. 1061 ("Opp.") at 5-6. That is too little, too late; Dawgs must show that "the testimony is based on sufficient facts or data" *now*. Fed. R. Evid. 702(b). Dawgs says anonymous customer reviews reflect lost sales (Opp. at 5), but in none of the eight anecdotal reviews cited by Mr. Malackowski does a customer say they bought Crocs in lieu of Dawgs, nor that they bought Crocs *because of* a belief that Croslite was patented. *See* ECF No. 1029-2 at 26-27. Without evidence of a causal link between Crocs' statements and Dawgs' lost sales, the opinion rests on speculation. Courts exclude damages opinions like these that are "untethered from any data or methodology." *Am. Aerial Servs., Inc. v. Terex USA, LLC*, No. 2:12-cv-00361-JDL, 2015 WL 1947265, at *5 (D. Me. Apr. 29, 2015).

Second, Mr. Malackowski's market share assumptions derive entirely from figures made up by Dawgs' CEO—an interested party—with no independent verification. Bespeaking their unreliability, Mr. Mann assigns Dawgs and Skechers equal market shares despite their vast differences in revenue. These figures are unverified and not based on real-world data. Courts reject opinions that rely on unsupported approximations of an interested party. *See ZF Meritor LLC v. Eaton Corp.*, 646 F. Supp. 2d 663, 667 (D. Del. 2009); *see also* Mot. at 7 (citing cases). Mr. Malackowski has been excluded for this very reason. *See CareDx, Inc. v. Natera, Inc.*, No. 19-662-CFC-CJB, 2021 WL 1840646, at *1-4 (D. Del. May 7, 2021) (excluding Mr. Malackowski's damages opinion resting solely on deposition testimony of plaintiff's CEO). The same result should obtain here.

Dawgs' Opposition cites three cases, but none permit reliance on Mr. Mann's say-so. Opp. at 7-8. Each involved actual, verifiable ***data***. *See Cook Inc. v. Endologix, Inc.*, No. 1:09-cv-01248-TWP-DKL, 2012 WL 3948614, at *5 (S.D. Ind. Sept. 10, 2012) (third party market reports); *In re Actiq Sales & Mktg. Pracs. Litig.*, No. 07-4492, 2014 WL 3572932, at *12 (E.D. Pa. July 21, 2014) (Product Contribution Report); *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 WL 4057640, at *8 (E.D. Tex. July 20, 2020) (gross revenue data). Mr. Mann's subjective beliefs as to the size of various competitors are not data, making Dawgs' reliance on cases involving reliance on the best available data wildly inapposite.

Third, Mr. Malackowski's reallocation theory is flawed. He applies a "Mor-Flo" theory developed for patent cases, which does not fit false advertising claims. Crocs would have continued selling shoes regardless of the challenged statements, a fact that Mr. Malackowski admitted. Mot. at 8. But Mr. Malackowski's market share calculations still remove a portion of Crocs shoes from the market based on apportionment factors taken improperly from Dr. Weber's survey. *Id.* Using this methodology creates a disconnect between facts and analysis, violating *Daubert*'s "fit" requirement.

Last, Mr. Malackowski ignores critical facts, including Dawgs' bankruptcy and market exit, and the ITC's infringement findings against Dawgs for the very footwear that form the basis of his lost profits calculation. This Court has since entered judgments against Dawgs on Crocs' patent infringement claims for the very shoes underlying Mr. Malackowski's analysis. ECF No. 1182. Assuming Dawgs would have a 20% market share while ignoring years when Dawgs was either not selling anything, or sold infringing footwear, renders his opinion unreliable.

### III. MR. MALACKOWSKI'S DISGORGEMENT OPINION IS SPECULATIVE AND FAILS RULE 702's RELIABILITY STANDARD

Mr. Malackowski's disgorgement calculation is not based on reliable facts or methodology. He starts with Crocs' company-wide revenues from 2005–2021 of $15.25 billion, calculates that $6.23 billion of that was from U.S. footwear sales, applies apportionment factors of either 1.7% or 5.9% based on Dr. Weber's survey, and finally applies Crocs' average gross profit margin, arriving at a range of $54.2 to $188.1 million. ECF No. 1029-2 at 35-37. But, Dr. Weber testified that she did not ask survey respondents to place monetary value on product attributes (ECF No. 1027-5 at 49:21-50:7), nor did she purport to show that "patented" messaging yielded any specific revenues. By assuming that Dr. Weber's survey translates to apportioned sales, Mr. Malackowski "exceed[ed] the boundaries of the sources [he] relie[d] on." *See Rodman v. Otsuka Am. Pharm., Inc.*, 564 F. Supp. 3d 879, 889, at *6 (N.D. Cal. 2020). No other data supports Mr. Malackowski's calculation. He cites no empirical evidence—e.g., transactional data or econometric analysis—that "patented" messaging misled consumers and drove purchases in the assumed proportions. This "ipse dixit" creates "too great an analytical gap" between Dr. Weber's survey and Mr. Malackowski's conclusions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Mr. Malackowski has previously been excluded for such overreaches. In addition to the cases previously cited (*see* Mot. at 7, 13), a more recent case is illustrative. In *Sonos, Inc. v. Google LLC*, No. C 20-06754 WHA, 2023 WL 3933071 (N.D. Cal. June 9, 2023), Mr. Malackowski offered a reasonable royalty opinion, relying on a consumer survey as an input. *Id.* at *10. As the court recognized, the survey did not support Mr. Malackowski's opinion because it did not show how many consumers used an infringing feature. *Id.* Here, too, Dr. Weber's survey does not support Mr. Malackowski's opinion because it never tested how many consumers, if any, bought

Crocs footwear due a belief that Croslite was patented—as noted above, Dawgs has no proof that this ever occurred. It is therefore irrelevant that Mr. Malackowski purports to whittle down Crocs' gross sales via various factors, as "'[b]eginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion.'" *Id.* at *7 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)). As was aptly noted in *Sonos*:

> The imagination of trial lawyers and their paid "experts" never sleeps in search of damages theories that reach stratospheric (or subterranean) levels yet, at first blush, have surface plausibility. It is incumbent on district judges, as gatekeepers, to determine whether surface plausibility is really sleight of hand and smoke and mirrors. This was sleight of hand and smoke and mirrors.

*Id.* at *10. Mr. Malackowski's opinion here requires the same treatment—exclusion.

### IV.    MR. MALACKOWSKI'S CORRECTIVE ADVERTISING OPINION IS ARBITRARY AND UNSUPPORTED

Mr. Malackowski's corrective advertising opinion rests on false assumptions and arbitrary multiplication. He starts with Crocs' fifteen-year, global marketing expenditure ($758 million), which he fails to tie to any of the challenged statements. That renders his opinion unreliable, regardless of what comes next. *See Sonos*, 2023 WL 3933071, at *7. But the opinion is doubly unreliable because it uses the same 5.9% apportionment factor from Dr. Weber's survey. This is misplaced because Dr. Weber did not measure distribution of, or consumer exposure to, statements about Croslite in the marketplace. As such, her survey cannot be a basis to estimate the cost of correcting anything. Mr. Malackowski simply assumes—falsely—that Crocs devoted some share of its global marketing budget to the complained-of messaging, and that a quarter of that figure should be handed to Dawgs as a bounty.

Absent from Dawgs' Opposition is any defense of Mr. Malackowski's misplaced reliance on *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977). Mot. at 12. Mr. Malackowski asserts that *Big O Tires* allows Dawgs to seek 25% of Crocs' apportioned marketing expenditures. ECF No. 1029-2 at 35 & n.201, 42 & nn.251-53, App'x 2.2. Not so. The award in *Big O Tires* was tied to amounts *actually spent* on an infringing campaign that was "devastating" to the plaintiff, reduced in accordance with an "FTC rule" that allowed no more than 25% of the actual cost of an unfair campaign to be awarded to dispel the effects thereof. 561 F.2d at 1375-76. *Big O Tires* and its 25% ceiling have no applicability here because Dawgs fails to show that Crocs spent *any* portion of the $758 million to disseminate a message that Croslite is "patented." Furthermore, the challenged statements never mention Dawgs, and Dawgs itself never spent a dime to dispel any allegedly misleading messages. Thus, there is no basis in law, logic, or equity to award a corrective advertising remedy here, unless it is 25% of $0. Dawgs tacitly concedes the point by failing to cite even one case or authority that supports Mr. Malackowski's opinion. *See* Opp. at 13-14.

At its core, Mr. Malackowski's opinion is an arbitrary exercise in multiplication, just as in other instances where his opinions were excluded. *See CareDx, Inc.*, 2021 WL 1840646, at *3-4 (excluding Malackowski's "simple math calculations" for lack of a reliable basis, and as likely to cause prejudice by giving the "imprimatur of an expert" on an "undocumented and dubious damages calculation"); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 CIV. 7203 (DLC), 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006) (excluding Malackowski's corrective advertising figure as a proportion of defendant's marketing budget where he failed to explain "the relationship

between [defendant's] advertising expenses and plaintiff's corrective advertising costs"); *Sonos*, 2023 WL 3933071, at *7.  This Court should do the same.

## V.  MR. MALACKOWSKI IS NOT QUALIFIED TO RENDER OPINIONS ON THE MEANING OF THE TERMS "PROPRIETARY" AND "EXCLUSIVE"

Mr. Malackowski's opinions that Croslite is not "proprietary" or "exclusive" invade the province of the Court and jury, and offer conclusions he is unqualified to give. Mr. Malackowski is an accountant and licensing professional—not an attorney, engineer, or linguist. His simplistic reliance on a dictionary and his own licensing experience does not qualify him to interpret what these terms mean to consumers or whether they are true. Experts may not opine on legal standards or tell the jury how to decide a case. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). Mr. Malackowski's opinion that a material can only be "proprietary" or "exclusive" if it is patented or a trade secret is a naked legal conclusion, not the proper subject matter of expert opinion.

The case Dawgs cites in opposition, *Sanyo Electric Co., Ltd. v. Intel Corp.*, No. 2018-0723-MTZ (Del. Ch. 2018), is not supportive. First, the citation to *Sanyo* refers to the docket, not any court order permitting Mr. Malackowski to opine on the definition of terms. Second, the only context provided in the parenthetical is that Mr. Malackowski opined as to "terms in a licensing agreement." This case involves marketing, not contract interpretation. Dawgs cites no case permitting an accountant to render opinions concerning the meaning or truth of contested terms in a false advertising claim. This should not be the first.

Finally, whether Croslite is "reverse engineerable" is not relevant, as Crocs has shown. ECF No. 1025 at 10-11. Even if it were, this is not a question an accountant is qualified to address. Allowing Mr. Malackowski to opine on the meaning or truth of certain terms would confuse the

jury with the imprimatur of expert analysis and improperly suggest the outcome of legal conclusions.

## VI. CONCLUSION

For the foregoing reasons, Crocs respectfully requests that the Court grant the Motion.

Dated: December 15, 2025                         Respectfully submitted,

/s/ Sean M. Callagy
Sean M. Callagy

ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100
Facsimile: 415.471.3400
Email: Sean.Callagy@arnoldporter.com

*Counsel for Crocs, Inc.*

# CERTIFICATE OF SERVICE

The undersigned certifies that on the 15th day of December 2025, the foregoing **REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF JAMES E. MALACKOWSKI (ECF NO. 1029)** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                      */s/ Sean M. Callagy*
                                      Sean M. Callagy