IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-00605-PAB-MDB

CROCS, INC.,

     Plaintiff,

v.

EFFERVESCENT, INC.,
HOLEY SOLES HOLDINGS, LTD.,
DOUBLE DIAMOND DISTRIBUTION, LTD.,
USA DAWGS, INC., and
MOJAVE DESERT HOLDINGS LLC,

     Defendants.

---

**ORDER**

---

This matter comes before the Court on the Motion to Re-Open Discovery for the Limited Purpose of Producing and Addressing New Advertising Documents that Post-Date the Court's Prior Summary Judgment Ruling [Docket No. 1219], Dawgs' Status Report Regarding Rule 702 Motions [Docket No. 1222], and Crocs' Status Report Regarding Rule 702 Motions [Docket No. 1221].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case was filed on April 3, 2006, over twenty years ago, when Crocs, Inc. ("Crocs") brought five claims against a litany of defendants.  Docket No. 1.  What remains is a Lanham Act counterclaim asserted by Mojave Desert Holdings, LLC, Double Diamond Distribution, Ltd. and U.S.A. Dawgs, Inc. ("Dawgs") against Crocs on May 31, 2016, which alleges that Crocs falsely advertised Croslite—the material in some of Crocs's shoes—as being proprietary, exclusive, or patented.  Docket No. 209 at 82-83.  On September 14, 2021, the Court granted summary judgment for Crocs on the Lanham Act counterclaim.  Docket No. 1071.  On October 3, 2024, the Federal Circuit reversed the portion of the Court's September 14, 2021 order that granted summary judgment to Crocs as to defendant Dawgs's Lanham Act counterclaim under 15 U.S.C. § 1125(a)(1)(B).[2]  *See* Docket No. 1201.  The Federal Circuit held that claims that a product was "patented," "proprietary," or "exclusive" could, under the right set of facts, relate to the nature, characteristic, or quality of a good rather than solely relating to the good's authorship or inventorship.  *Crocs, Inc.*, 119 F.4th at 6.  The Federal Circuit further held that Dawgs properly alleged that Crocs's advertising statements that its product was "patented," "proprietary, and "exclusive" were directed towards the nature, characteristics, or qualities of that product, thus giving rise to a cause of action

---

[1] All facts are undisputed unless otherwise noted.  The Court assumes familiarity with this twenty-year-long dispute and will not detail the procedural history or background facts beyond what is necessary to resolve the present motion.  Additional background can be found in previous orders and recommendations.  *See, e.g.,* Docket Nos. 673, 897, 1071.

[2] Dawgs did not appeal any other portion of the Court's order, including the portion that granted summary judgment on the part of Dawgs's Lanham Act counterclaim that arose from 15 U.S.C. § 1125(a)(1)(A).  *See Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 4 (Fed. Cir. 2024).

2

under 15 U.S.C. § 1125(a)(1)(B).  *Id.* at *6-7.  The case was remanded for this Court to consider whether that cause of action will succeed under the facts of this case.  *Id.* at *7.  On October 6, 2025, the Supreme Court denied certiorari.  *Crocs, Inc. v. Double Diamond Distribution, Ltd.*, 146 S. Ct. 194 (2025).

On March 28, 2025, the parties submitted a joint status conference statement. Docket No. 1211.  Among other things, the joint statement identified a potential need for the parties to provide supplemental evidence or reopen discovery.  *Id.* at 11-14.  On November 13, 2025, the parties filed a motion to reopen the case, Docket No. 1216, which the Court granted on November 17, 2025.  Docket No. 1217.  On November 25, 2025, Dawgs filed a motion to reopen discovery, claiming it would be "for the limited purposes of: (i) producing 1,237 additional advertising documents that post-date the Court's September 2021 Summary Judgment Order (Dkt. No. 1071); and (ii) supplementing marketing and damages expert reports to address the implication of these additional advertising documents as well as the passage of time."  Docket No. 1219 at 2.  Crocs filed a response, Docket No. 1225, and Dawgs filed a reply.  Docket No. 1231.

Additionally, the March 28, 2025 joint statement asked the Court to adjudicate previously filed motions to exclude expert testimony under Federal Rule of Evidence 702, which were rendered moot when the Court closed this case.  Docket No. 1211 at 6. On November 17, 2025, the Court issued a minute order for the parties to file a status report identifying the portions of the Rule 702 motions that are relevant to the remaining Lanham Act claim.  Docket No. 1218.  On December 1, 2025, Crocs filed a status report indicating that its four Rule 702 motions, Docket Nos. 1025, 1027, 1028, and 1029,

3

remain relevant to the Lanham Act claim.  Docket No. 1221.  On December 8, 2025, Dawgs filed a status report indicating that certain portions of its Rule 702 motion, Docket No. 1026, are relevant to the Lanham Act claim.  Docket No. 1222.

## II.  LEGAL STANDARD

A court may modify its scheduling orders upon a showing of good cause.  *See* Fed. R. Civ. P. 16(b)(4); D.C.COLO.LCivR 16.1.  Whether to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion" of the court.  *Smith v. United States,* 834 F.2d 166, 169 (10th Cir.1987).  Courts consider the following factors when determining whether to reopen discovery:  "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence."  *Id.* (citations omitted).

## III.  ANALYSIS

Dawgs requests to reopen discovery for two limited purposes: "producing 1,237 additional advertising documents [the "new documents"] that post-date the Court's September 21 Summary Judgment Order" and "supplementing marketing and damages expert reports to address the implication of these additional advertising documents as well as the passage of time."  Docket No. 1219 at 2.  Dawgs has not provided the Court with these documents, but "provisionally produced the additional documents to Crocs on October 23, 2025."  *Id.*  Crocs disputes Dawgs's representation regarding the new documents.  *See generally* Docket No. 1225.  Because the nature of the new

4

documents affects the Court's analysis of the *Smith* factors, the Court will begin by describing this dispute.

### A.  Nature of the New Documents

While Dawgs asserts that the new documents "post-date the Court's September 2021 Summary Judgment Order," Docket No. 1219 at 2, Crocs states that "over 75% of the so-called 'new' documents either pre-date the prior close of fact discovery or contain no date information at all."  Docket No. 1225 at 1-2.  Crocs also asserts that over 95% of the new documents "are not from a Crocs U.S. website," and that many of the new documents "do not even reference Croslite at all."  *Id.* at 2.  Moreover, Crocs asserts that "Dawgs appears to be using its so-called request to 'supplement' the record as an opportunity to pursue entirely new theories and give its experts free reign to introduce new opinions that they never previously addressed."  *Id.*  For support, Crocs notes that some of the new documents relate to HeyDude, a footwear brand acquired by Crocs in 2021 and which is not a party in this action.  *Id.*  Other documents relate to web traffic data and excerpts of chatlogs with either a chatbot or customer service representative, which are purportedly areas which Dawgs did not pursue when discovery was open.  *Id.* at 2-3.

In reply, Dawgs clarifies that, while many of the documents were posted online prior to discovery closing in 2021, the screenshots of those documents were captured after the Court's September 14, 2021 summary judgment order.  Docket No. 1231 at 2. Dawgs asserts that "[t]he point is not about when they were *first* posted online.  Rather, these documents show that, during the years after the Court's summary judgment ruling, Crocs and its third-party retailers have allowed the admitted false advertisements to remain active on the Internet, even up through the present day."  *Id.*  Similarly, Dawgs

asserts that the documents related to HeyDude show that Crocs disseminates the same false advertising with its new products. *Id.* at 2-3. Dawgs states that "the Court and the jury should have the full picture, including evidence of what has happened in the last four years, before fashioning a remedy." *Id.* at 3. Finally, Dawgs asserts that it is "absolutely false" that Dawgs is attempting to pursue new theories of the case. *Id.* at 7.

### B.  *Smith* Factors

Informed by the above information regarding the new documents, the Court will now analyze the *Smith* factors.

### 1.  Imminence of Trial

As of now, the Court has not yet set a date for trial. Thus, trial is not imminent, and this factor weighs in favor of reopening discovery. "The fact that trial is no[t] [ ] imminent, however, does not necessarily warrant reopening discovery." *Graves v. Wirta*, No. 20-cv-03595-NYW, 2022 WL 1443058, at *6 (D. Colo. May 6, 2022) (citation and internal quotations omitted).

### 2.  Opposition

The motion to reopen discovery is opposed, which Dawgs concedes. Docket No. 1231 at 8 n.3. Thus, this factor weighs against reopening discovery. *Branch v. United Parcel Serv.*, No. 18-cv-03358-PAB-KLM, 2021 WL 4820540, at *2 (D. Colo. Oct. 14, 2021).

### 3.  Prejudice

Crocs argues that Dawgs's request to add 1,237 documents to the record and to allow two of its experts to issue new reports would likely lead to "[a]dditional discovery, depositions, and costly motion practice." Docket No. 1225 at 7. Crocs also argues that it will need to engage in responsive fact discovery, rebuttal expert reports, expert

depositions, and a new round of Rule 702 motions, which would further delay adjudication of this 20-year-old case.[3]  *Id.* at 6-7.  Furthermore, Crocs asserts that there is "a staggering range of evidentiary problems" in the new documents, which, "[a]t a minimum," would entitle Crocs "to investigate how the new materials were created and collected, and an opportunity to offer responsive information."  *Id.* at 7-8.

Dawgs, on the other hand, argues that its experts will merely need to supplement existing opinions.  Docket No. 1231 at 8-9.  Thus, Dawgs states that there will be no need for new Rule 702 motions and that supplementation should not take more than "a few weeks."  *Id.*  Dawgs denies that reopening discovery will lead to additional discovery or costly motion practice and asserts that Crocs's claimed evidentiary problems are "completely unrelated to the 'prejudice' factor."  *Id.* at 9.  Furthermore, Dawgs notes that Crocs already reviewed the new documents, reducing any delay related to document review.  *Id.* at 8-9.

The Court finds that the third factor weighs against reopening discovery.  While Dawgs asserts that reopening discovery would not be costly, "[t]here can be no doubt that allowing Plaintiff to take additional discovery requires Defendant[] to incur additional and unanticipated expenses."  *AssociationVoice, Inc. v. Athomenet, Inc.*, No. 10-cv-00109-CMA-MEH, 2011 WL 2297677, at *3 (D. Colo. June 9, 2011) (quoting *Quintana v. Edmond,* No. 06–cv–01187–WDM–KLM, 2009 WL 1798219, at *2 (D. Colo. June 23,

---

[3] The parties' arguments about delay are briefed under their analysis of the first factor.  *See* Docket No. 1225 at 6-7, Docket No. 1231 at 8-9.  However, the Court finds these arguments relate to prejudice, and not to whether there is an imminent trial date. *See Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, No. 19-cv-02075-WJM-SBP, 2025 WL 1144559 (D. Colo. Apr. 18, 2025) (discussing the imminence of a trial date under the first factor and arguments related to delaying a trial under the third factor).

2009)).  The number of new documents is substantial, and it would be prejudicial to

Crocs if the Court allowed Dawgs to introduce these documents without giving Crocs an

opportunity to conduct responsive discovery.  Moreover, "supplementing" two of

Dawgs's expert reports to account for the new documents would, at best, lead to Crocs

conducting new expert depositions and "supplementing" its rebuttal reports.  *See*

Docket No. 1231 at 8-9 (conceding that both side's experts would need to supplement

their opinions and that there would be limited expert depositions).  At worst, it would

lead to an entirely new rebuttal expert report and prompt a new round of Rule 702

motions.  Docket No. 1225 at 6-7.  As one court noted, this would cause "Defendant to

incur further costs of discovery, including a new round of expert depositions, and would

likely require Defendant to incur substantial costs in redrafting its pending motions to

contest a wholly new expert report.  Such a result would be fundamentally unfair to the

Defendant who has, by all accounts, dutifully complied with the demands of discovery."

*Carver v. KIA Motors Corp.*, No. 10-cv-642-JHP-PJC, 2012 WL 90090, at *5 (N.D. Okla.

Jan. 11, 2012).

Moreover, while "information within the scope of discovery need not be

admissible in evidence to be discoverable," *Valdez v. Motyka*, No. 15-cv-0109-WJM-

STV, 2019 WL 6838959, at *8 (D. Colo. Dec. 16, 2019) (alterations and citation

omitted), the evidentiary problems identified by Crocs would likely lead to discovery

disputes regarding some of the new documents, leading to further costs and delay.[4]

---

[4] Dawgs argues that Crocs's evidentiary concerns are "incorrect and premature." Docket No. 1231 at 4.  While the Court agrees that it is premature to determine the merits of potential evidentiary problems, it finds that identifying such problems as potentially increasing costs and delay is appropriate when considering whether Crocs would be prejudiced by reopening discovery.

*See* Docket No. 1225 at 7-8.  Accordingly, because reopening discovery would lead to increased costs and delay, and potentially significantly increased costs and delay, the Court finds that this factor weighs against reopening discovery.

### 4.  Diligence

The diligence of the moving party in obtaining discovery within the guidelines established by the Court is "the most important factor."  *Kearns v. Maul*, No. 23-cv-01452-CYC, 2025 WL 1684953, at *1 (D. Colo. June 16, 2025) (quoting *Graves*, 2022 WL 1443058, at *7).  In its motion to reopen discovery, Dawgs makes no argument that it was diligent in obtaining discovery, *see generally* Docket No. 1219, although Dawgs discusses diligence in its reply.  Docket No. 1231 at 9-10.  Moreover, while Dawgs describes its new documents as "advertising documents," Docket No. 1219 at 2, Crocs identifies categories of information in some of the new documents that are only tangentially related to advertising.  Docket No. 1225 at 9-10.  Specifically, Crocs notes that at least 139 documents show website traffic to various "top-level domains," such as crocs.com.  *Id.* at 9, 12.  Crocs asserts, and Dawgs does not dispute, that "Dawgs' experts never opined about website traffic."  *Id.* at 9.  Crocs also notes that Dawgs seeks to "produce chat logs where one or more unnamed persons inquire whether Croslite is patented," despite the fact that Dawgs "never sought discovery of Crocs customer service inquiries."  *Id.*  As for the advertising documents, Crocs asserts that Dawgs was not diligent because most of the documents predate the close of discovery, and thus could have been obtained when discovery was open.  *Id.* at 8-9.

Dawgs argues that, even though some of the advertising documents predate the close of discovery, the screenshots of these documents were not captured until recently, and Dawgs could not have diligently produced screenshots that did not yet

exist.  Docket No. 1231 at 9.  The Court finds this unavailing.  While Dawgs could not have captured screenshots that did not exist, Dawgs could have taken screenshots of documents that existed when discovery was open.  More convincingly, Dawgs argues that the purpose of the new documents is "to show that Crocs' false advertising remained publicly accessible up to the present day."  *Id.*  Thus, what is relevant about the new documents is not when they were first created, but that they remain publicly available.

Dawgs does not address Crocs's arguments regarding the website traffic or the chatlogs, and provides no argument why that information could not have been obtained when discovery was open.  *See generally id.*  Thus, Dawgs does not establish that it was diligent in regard to those documents.  On the other hand, the Court agrees with Dawgs that, when discovery was open, Dawgs was obviously unable to obtain information showing that Crocs's allegedly false advertising continued from the close of discovery to the present.  Moreover, the Court acknowledges that the time between discovery closing in May 2021 and the present day is substantial.  Nevertheless, the Court finds proving a party's continued misconduct is a suspect reason to reopen discovery.  As one court noted,

> That offending conduct continued during these lengthy delays is not a good cause to reopen discovery.  First, this argument could almost always be made given that months or even years may pass between the close of discovery and the pre-trial conference. . . .  Allowing discovery on the basis of continued misconduct would draw courts into a never-ending discovery death spiral.  Second, continued conduct is just more of the same, not something new.  There is no reason to believe that the prior completed discovery insufficiently covered this same conduct.

*Xereas v. Heiss*, 2021 WL 4698420, at *1 (D.D.C. Sept. 24, 2021) (footnote omitted).

Thus, while the Court agrees that no amount of diligence could have caused Dawgs to

10

obtain information which did not yet exist, the Court also finds that the suspect purpose of the information diminishes the importance of this factor as to the advertising documents.

### 5. Foreseeability

The fifth factor addresses the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court. *Smith*, 834 F.2d at 169. As with diligence, this analysis differs when applied to advertising documents captured after the close of discovery and when applied to the customer service chatlogs and website traffic data. As for the advertising documents, it is foreseeable that Dawgs would want discovery as to Crocs's continued advertising after the close of discovery. It would have been impossible for Dawgs to obtain that information before discovery closed. Thus, while it is foreseeable that Dawgs would want this information, this factor does not weigh against reopening discovery because Dawgs had no means of obtaining the information. Therefore, the Court finds this factor weighs in favor of reopening discovery as to the advertising documents.

It is also foreseeable that Dawgs would want discovery as to whether Crocs's customer service representatives falsely claimed that Croslite was patented and would want website traffic information to determine whether Crocs's advertising was reaching consumers. Unlike the screenshots of the advertising documents, there is no indication that Dawgs could not have obtained this information prior to the close of discovery. Thus, this factor weighs against reopening discovery as to the customer service and website traffic documents. When considering both categories of documents, i.e., advertising documents and customer services/website traffic documents, the Court finds that this factor is neutral.

### 6. Relevance

When it comes to the sixth factor, "[r]elevancy is broadly construed, and a request for discovery should be considered if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Branch*, 2021 WL 4820540, at *3 (citation omitted).  Here, Dawgs argues that the new documents "show the ongoing falsity in the marketplace."  Docket No. 1219 at 6.  Thus, Dawgs argues that it is relevant towards "damages to which Dawgs is entitled, and evidence necessary to defeat Crocs' laches defense."  Docket No. 1231 at 10.

The Court agrees that advertising documents allegedly showing Crocs's continued misconduct are relevant to damages.  As explained above, however, discovery into continued misconduct is not a compelling reason to reopen discovery. *Xereas*, 2021 WL 4698420, at *1.  Moreover, Crocs asserts that many of the new documents are entirely irrelevant.  Docket No. 1225 at 11-13.  For instance, some of the new documents relate to other brands, such as New Balance, Converse, and Birkenstock, and do not mention Crocs.  *Id.* at 11; *see also* Docket No. 1225-6 at  2, 9, 13.  Other documents shows screenshots of camping supplies, with no apparent link to Crocs's shoes.  Docket No. 1225 at 11; *see also* Docket No. 1225-9 at 2-19. Furthermore, Crocs asserts that the website traffic data is not linked to webpages with specific advertisements, but to the "crocs.com top-level domain, Codes of Ethics, and Wholesale Terms sheets," making its relevance questionable.  Docket No. 1225 at 12. While Dawgs asserts that the documents contain "information about the essential questions that the Court and jury will need to consider," it does not explain how the aforementioned documents have any bearing on the issues in this case.  Docket No. 1231 at 6.  In sum, many of the new documents appear to be irrelevant, but others have

some relevance to damages and laches. Thus, the Court finds this factor weighs slightly in favor of reopening discovery.

Weighing the *Smith* factors, the Court finds that the first and sixth factors weigh in favor of reopening discovery, although only slightly in favor as to the sixth factor. The fifth factor is neutral. The second and third factors weigh against reopening discovery. The fourth factor—the diligence of the moving party—weighs against reopening discovery as to the documents regarding website traffic data and chatlogs. However, it weighs in favor of reopening discovery as to the screenshots of the advertising documents. Dawgs's arguments for reopening discovery, however, are undermined by the Court's finding that information about Crocs's continued alleged misconduct is not a compelling reason to reopen discovery. *See Xereas*, 2021 WL 4698420, at \*1-2. Accordingly, after weighing all of the *Smith* factors, the Court will deny the motion to reopen discovery.[5]

### C. Rule 702 Motions

Because the Court will deny the motion to reopen discovery, there is no new information for the expert witnesses to consider. Thus, the Court finds it appropriate to reinstate the Rule 702 motions identified by the parties.

## IV. CONCLUSION

Therefore, it is

---

[5] To the extent Dawgs is moving to reopen discovery under Federal Rule of Civil Procedure 16(b)(4), the Court notes that, "[i]n a true motion to reopen discovery, the Court concludes that the *Smith* factors effectively replace rule 16's 'good cause' standard—or, perhaps more accurately, the *Smith* factors are dispositive as to how good cause applies in motion to reopen; either way, no separate good cause analysis is needed." *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 440-41 (D.N.M. 2015).

13

**ORDERED** that the Motion to Re-Open Discovery for the Limited Purpose of Producing and Addressing New Advertising Documents that Post-Date the Court's Prior Summary Judgment Ruling [Docket No. 1219] is **DENIED**.  It is further

**ORDERED** that Crocs, Inc.'s Motion to Exclude Expert Opinions of Bowdie Isanhart [Docket No. 1025] is **REINSTATED**.  It is further

**ORDERED** that Crocs, Inc.'s Motion to Exclude Expert Opinions of Stephen E. Shuster [Docket No. 1027] is **REINSTATED**.  It is further

**ORDERED** that Crocs, Inc.'s Motion to Exclude Expert Opinions of Dr. Lynne J. Weber [Docket No. 1028] is **REINSTATED**.  It is further

**ORDERED** that Crocs, Inc.'s Motion to Exclude Expert Opinions of James E. Malackowski [Docket No. 1029] is **REINSTATED**.  It is further

**ORDERED** that Counterclaim Plaintiffs' Motion to Exclude Certain Expert Testimony [Docket No. 1026] is **REINSTATED**.

DATED May 8, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge